STEPHEN M. HARBER, STATE BAR #119830
AMY A. EVENSTAD, STATE BAR #305828
McCUNE & HARBER, LLP
515 South Figueroa Street, Suite 1100
Los Angeles, California 90071
Telephone: (213) 689-2500
Facsimile: (213) 689-2501
sharber@mccuneharber.com and aevenstad@mccuneharber.com

Attorneys for Defendant, THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| JACKLINE MUTHOKA,<br><br>Plaintiff,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendant. | Case No: 8:23-CV-01333 FWS (JDEX)<br>Assigned to Hon. Judge Fred W. Slaughter<br>(Complaint filed on July 24, 2023)<br><br>**DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE: November 9, 2023<br>TIME: 10:00 a.m.<br>DEPT.: 10D |

TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 9, 2023 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 10D of the above-entitled court located at 411 West 4th Street, Santa Ana, California, Defendant THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ("The Regents") will present this Motion to Dismiss the causes of action asserted against it in the Complaint filed by Plaintiff JACKLINE MUTHOKA ("Plaintiff").

-1-

24100127  Defendant The Regents Of The University Of California's Notice Of Motion And Motion To Dismiss Plaintiff's Complaint

## MOTION TO DISMISS - CLAIMS TO BE DISMISSED

Defendants request dismissal of the following from the Complaint [ECF Dkt. No. 1]:

(1) First cause of action for discrimination based on race in violation of Title VI;

(2) Second cause of action failure to provide reasonable accommodation based upon disability in violation of Title II of the Americans with Disabilities Act ("ADA"); and

(3) Third cause of action for retaliation in violation of Title V of the ADA.

This Motion is being made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that these claims fail to state claims upon which relief can be granted against The Regents due to a lack of sufficient factual support for such claims and/or because Plaintiff's claims are barred by the applicable statute of limitations.

## MEET AND CONFER

This Motion is made following the meet and confer conference of counsel on the issues herein, which took place on October 3, 2023. Despite the parties' good faith meet and confer efforts to resolve the remaining issues without Court intervention, no agreement on said issues have been reached.

## DEMAND FOR JURY TRIAL

Defendants demand a jury trial pursuant to Federal Rule of Civil Procedure 38(a).

This Motion is based upon this notice, the Complaint [ECF Dkt. No. 1], the attached memorandum of points and authorities, the pleadings, records, and matters on file in this case and upon such oral and documentary evidence as may be presented at the hearing of this matter.

///
///

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

| | | |
|---|---|---|
| DATED: | October 27, 2023 | McCUNE & HARBER, LLP |

By: _____
STEPHEN M. HARBER, ESQ.
AMY A. EVENSTAD, ESQ.
Attorneys for Defendant, THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

-3-

24100127   Defendant The Regents Of The University Of California's Notice Of Motion And Motion To Dismiss Plaintiff's Complaint

# TABLE OF CONTENTS

**PAGE(S)**

I.  INTRODUCTION ...................................................................................................7

II. STATEMENT OF FACTS ......................................................................................8

   A.  ALLEGED RACE DISCRIMINATION IN THE 2016-2018 TIME FRAME ...........................................................................................................8

   B.  ALLEGED ACCOMMODATION REQUESTS ...........................................9

      1. *Plaintiff requested outside accommodations for the Step 1 exam that was not administered by UCI.* ...............................................9

      2. *Plaintiff was placed on academic probation after a hearing.* ............10

      3. *Plaintiff does not plausibly allege UCI denied her authorized disability accommodations (time and a half on tests)* ......................10

      4. *Plaintiff failed her Step 2 exam, but not due to any failure to provide accommodations by UCI.* ....................................................11

      5. *Plaintiff graduated at the time she requested.* ...................................11

   C.  UCI INVESTIGATED PLAINTIFF'S DISCRIMINATION ALLEGATIONS BUT FOUND NO DISCRIMINATION .........................12

   D.  PLAINTIFF'S CONCLUSORY ALLEGATIONS DO NOT ESTABLISH RETALIATION. ....................................................................12

III. STANDARD FOR GRANTING A MOTION TO DISMISS ...............................13

IV. LEGAL ARGUMENT ..........................................................................................14

   A.  THE FIRST CAUSE OF ACTION FOR RACE DISCRIMINATION UNDER TITLE VI FAILS. ...........................................................................14

   B.  THE SECOND CAUSE OF ACTION FOR FAILURE TO PROVIDE REASONABLE DISABILITY ACCOMMODATIONS UNDER TITLE II OF THE ADA FAILS. .....................................................................15

   C.  THE THIRD CAUSE OF ACTION FOR RETALIATION IN VIOLATION OF TITLE VI OF THE ADA FAILS. ..................................17

   D.  PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS. ...................................................................19

V.  CONCLUSION .....................................................................................................20

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

## TABLE OF AUTHORITIES

**PAGE(S)**

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

**Cases**

*A.G. v. Paradise Valley Unified Sch. Dist.*
 *No. 69,* 815 F.3d 1195, 1204 (9th Cir. 2016) ................................................... 16

*Alvarado v. Cajun Operating Co.*
 588 F.3d 1261, 1270 (9th Cir. 2009) ................................................................ 19

*Ashcroft v. Iqbal*
 556 U.S. 662, 678 (2009) .................................................................................. 13

*Bell Atl. Corp. v. Twombly*
 550 U.S. 544, 570 (2007) .................................................................................. 13

*Bonelli v. Grand Canyon University*
 28 F.4th 948, 952–953 (9th Cir. 2022) ............................................................. 19

*Clarke v. Upton*
 703 F. Supp. 2d 1037, 1050 (E.D. Cal. 2010) .................................................. 14

*Davis v. Monroe Cnty. Bd. of Educ.*
 526 U.S. 629, 640 (1999) .................................................................................. 15

*Duvall v. Cty. of Kitsap*
 260 F.3d 1124, 1135, 1139 (9th Cir. 2001) ................................................ 15, 16

*Gebser v. Lago Vista Indep. Sch. Dist.*
 524 U.S. 274, 285-286 (1998) ............................................................... 7, 14, 15

*Guardians Ass'n v. Civil Service Com'n of City of New York*
 463 U.S. 582, 584 (1983) .................................................................................. 14

*Joseph v. Boise State Univ.*, 998 F. Supp. 2d 928, 944
 (D. Idaho 2014), *aff'd,* 667 F. App'x 241 (9th Cir. 2016) ............................... 14

*K.H. by and through Humphrey v. Antioch Unified School District*
 424 F. Supp. 3d 699, 701 (N.D. Cal. 2020) ..................................... 15, 16, 17, 18

*Karasek v. Regents of Univ. of California*
 956 F.3d 1093, 1105 (9th Cir. 2020) ................................................................ 15

*Lovell v. Chandler*
   303 F.3d 1039, 1057 (9th Cir. 2002) ............................................................................. 18

*T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*
   806 F.3d 451, 467 (9th Cir. 2015) ......................................................................... 16, 18

*Taylor v. Regents of University of California*
   993 F.2d 710, 712 (9th Cir. 1993) ................................................................................. 19

*United States v. County of Maricopa, Arizona*
   889 F.3d 648, 652 (9th Cir. 2018) ................................................................................. 14

**Statutes**

California Code of Civil Procedure
   Section 335.1 ................................................................................................................. 19

Title VI
   Section 1983 .................................................................................................................. 14

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.     **INTRODUCTION**

Plaintiff was a medical student at University of California, Irvine ("UCI" or the "University"). She alleges discrimination and retaliation and although the Complaint contains various conclusory allegations or purported acts or omissions of University employees at unspecified times, none of those allegations actually establish discrimination or retaliation, nor are they indicative of the same.

First, Plaintiff alleges race discrimination in violation of Title VI, however, she fails to allege facts to support the elements of such a claim. Specifically, as explained herein, *respondeat superior* liability is insufficient to establish a Title VI claim for race discrimination, and UCI cannot be vicariously liable for any alleged discrimination by its employees. *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 285-286 (1998). Rather, Plaintiff must establish that she gave actual notice of specific discrimination which UCI responded to with deliberate indifference, but there are insufficient specific allegations in the Complaint to establish these elements. Even assuming the allegations Plaintiff complains of in the 2017-2018 school year were sufficient to establish race discrimination, an allegation that UCI denies, Plaintiff does not establish when she complained about this to UCI, and there are no plausible allegations of deliberate indifference or race discrimination thereafter.

Plaintiff also alleges a failure to provide reasonable disability accommodations, but the Complaint does not establish any occasion where UCI denied her reasonable accommodations, as UCI granted her time and a half on tests immediately after she requested this accommodation during enrollment, and she does not allege that she was ever denied time and a half thereafter.

Plaintiff alleges retaliation in violation of the ADA, but again, she does not allege sufficient facts to support such a claim. There is no evidence that anyone involved in her discrimination complaint subjected her to an adverse action thereafter.

-7-

24100127                     Defendant The Regents Of The University Of California's Notice Of Motion And Motion To Dismiss Plaintiff's Complaint

Moreover, Plaintiff filed this lawsuit on July 24, 2023, but the only plausible allegations in her Complaint refer to acts or omissions between 2017 and 2020, and such matters are barred by the applicable two-year statute of limitations where, as here, Plaintiff seeks monetary damages for the complained of conduct. Thus, this motion should be granted and Plaintiff's Complaint should be dismissed.

## II. STATEMENT OF FACTS

### A. ALLEGED RACE DISCRIMINATION IN THE 2016-2018 TIME FRAME

Plaintiff was a first-year medical student at UCI in the 2016-2017 school year. Complaint, ¶6. Students were encouraged to create research projects addressing world medical issues and Plaintiff proposed a project to provide medical services in Kenya. *Id*. at ¶¶8-9. She followed the requisite process and requested funding to do the project in the summer of 2017. *Id*. She claims that UCI failed to authorize her project in 2017 because Kenya "was on the Travel list on the State Department website." *Id*. at ¶10. Plaintiff nevertheless travelled to Kenya for her project that year. *Id*. at ¶11. While on this Kenya trip, Plaintiff claims that she was mistreated by an unknown person when she was sent the same research edits over and over until the end of her trip, which allegedly caused a delay in publication of her work. *Id*.

Dr. Julianne Toohey was the Associate Dean of Academic Affairs for the Medical School at UCI at the time. Complaint, ¶15. Dr. Toohey allegedly told Plaintiff to withdraw her Kenya project in 2018 in an email sent to Plaintiff and one other student, who were the only two black students in this class of 104 students. *Id*. at ¶12. Plaintiff claims that the University funded similar projects by non-black students, including one seeking to travel to Kenya in 2018. *Id*.

Plaintiff also claims she was the only black student in the Internal Medicine rotation and an unidentified faculty member made racist statements of an unidentified nature at an unidentified time. Complaint, ¶34.

-8-

24100127      Defendant The Regents Of The University Of California's Notice Of Motion And Motion To Dismiss Plaintiff's Complaint

## B. ALLEGED ACCOMMODATION REQUESTS

Plaintiff registered with the UCI Disability Service Center ("DSC") for two disabilities: a neurodevelopmental disorder and anxiety disorder, and was granted an accommodation in 2017 where she was allowed time and a half to take exams. Complaint, ¶¶14-15. She does not allege that she was ever denied such extended test time. Rather, her allegations are largely ambiguous and conclusory, and do not establish a failure to accommodate. For example, in an ambiguous allegation, Plaintiff claims that Dr. Toohey refused to recognize her accommodations in some unidentified manner. *Id*. at ¶¶14-15. She also claims she "later requested additional accommodations," which were eventually granted after she involved her lawyers. *Id*. at ¶35. Her other allegations are similarly conclusory or otherwise legally insufficient to support her claims against UCI.

### 1. **Plaintiff requested outside accommodations for the Step 1 exam that was not administered by UCI.**

Plaintiff claims the DSC had a practice of facilitating the process to take the National United States Medical Licensing Step 1 Exam through the National Board of Medical Examiners ("NBME"), and she allegedly asked for help from the DSC for ten months. Complaint, ¶16. She claims the DSC delayed her receipt of accommodations for this (non-UCI) test. *Id*. She complains that DSC employee Rosezetta Henderson said she spoke with NBME, but did not actually do so. *Id*. at ¶12. However, Plaintiff refused to give consent for UCI to speak with the NBME on her behalf; she states: "the plaintiff must provide consent to the NBME for them to speak with a third party, such as the defendant. The plaintiff...did not give the NBME consent to speak with the defendant." *Id*. at ¶18. It is therefore not plausible that Plaintiff expected Dr. Toohey, Ms. Henderson, or UCI to advocate on her behalf to the NBME. However, Plaintiff later states that the NBME allowed her to take breaks during exams without concern. *Id*. at ¶35. Plaintiff claims that an unidentified psychiatrist provided substandard documentation to the NBME. *Id*. at ¶12. Plaintiff took the Step 1 exam without accommodations from the NBME in May 2018 and failed. *Id.*

-9-

24100127   Defendant The Regents Of The University Of California's Notice Of Motion And Motion To Dismiss Plaintiff's Complaint

In a meeting after the exam, Dr. Toohey said she would follow up with NBME about accommodations for Plaintiff, and wrote an email stating that Plaintiff had "language issues." Complaint, ¶17. Dr. Toohey recommended that Plaintiff find a tutoring program to help her language issues, which Plaintiff claims was discriminatory and against an unarticulated school policy. *Id.* at ¶19. Dr. Toohey later said that NBME denied Plaintiff's requested accommodations for a second time, and Plaintiff complains that Dr. Toohey never actually spoke with NBME, despite Plaintiff's admission that she never gave consent for Dr. Toohey to speak on her behalf. *Id.* at ¶18. Plaintiff took the exam a second time and failed. *Id.* at ¶17.

### 2. <u>Plaintiff was placed on academic probation after a hearing.</u>

Because Plaintiff could not take her Step 1 test in time per policy, she had to have a hearing with the UCI Promotions and Honors Committee ("P&H"), which she said occurred "nearly a year after the policy violation." Complaint, ¶21. She complains that UCI had a lawyer present at that hearing, but she did not have a lawyer, and the school did not always have lawyers at other students' hearings. *Id.* She accuses Dr. Toohey of lying at the hearing by claiming not to know that Plaintiff had a learning disability. *Id.* at ¶22. This is the first time in the lawsuit that Plaintiff states she had a learning disability. Plaintiff was placed on academic probation after the hearing. *Id.*

### 3. <u>Plaintiff does not plausibly allege UCI denied her authorized disability accommodations (time and a half on tests)</u>

While doing the surgery portion of an exam at some unknown time, Plaintiff claims that Dr. Toohey interrupted her work, causing her to fail. Complaint, ¶19. She later claims, however, that she was placed on academic probation causing her surgery grade, which was incomplete at the time, to be converted to an F. *Id.* at ¶22.

Again, at an unknown time, Plaintiff complains that she lost test time whenever she took a break during exams because Dr. Weichmann would not let her stop the test timer during breaks. Complaint, ¶35. She does admit that she was given "scheduled break previously with no issues from the defendant." *Id.*

At some unknown point, when Plaintiff was on a leave of absence, she requested accommodation from an unknown source allowing her to remain in on-campus housing. Complaint, ¶20. Dr Toohey apparently told Plaintiff to "go back to her country if it was difficult to find housing." *Id*. Because Dr. Toohey did not provide the on-campus housing community with some unknown documentation, Plaintiff claims she became homeless. *Id*. This is despite Plaintiff's knowledge that accommodations had to be requested and authorized through the DSC – not Dr. Toohey. *Id*. at ¶¶14-15. She does not allege that she ever requested housing accommodations from the DSC, and it is not plausible that she be allowed to live on campus while she was on a leave of absence from the University.

### 4. Plaintiff failed her Step 2 exam, but not due to any failure to provide accommodations by UCI.

Plaintiff claims she failed her medical licensing Step 2 exam the first time she took it due to "multiple interruptions, [and] denial of a dedicated study time." Complaint, ¶39. She does not allege that she was granted accommodations from the NBME for this exam that UCI had notice of and then violated. Rather, she alleges that Dr. Wiechmann sent her an email during the exam, which Plaintiff then accessed during the exam. *Id*. at ¶41. She was then placed on an investigation related to the allegation that she impermissibly used or accessed her electronic device while taking her Step 2 NBME exam. *Id*. Surely, Dr. Wiechmann did not force Plaintiff to check her electronic device during an exam by sending her an e-mail, and there is no indication that this was intentional.

After failing the Step 2 exam, in January 2023, Plaintiff requested an unidentified accommodation from Dr. Toohey, who appropriately referred her to the DSC. Complaint, ¶40. However, Plaintiff then asked that the DSC, through Ms. Henderson, table the conversation until after she after taking the exam. *Id*. at ¶41.

### 5. Plaintiff graduated at the time she requested.

Plaintiff eventually passed the Step 2 exam and requested that she be cleared to graduate in 2023. Complaint, ¶44. Two weeks before graduation, UCI approved her to graduate in 2023 as she requested, but Plaintiff then asked to instead participate in the

-11-

2024 graduation to allow her family living abroad to attend. *Id.* This request was denied, and she was "forced" to attend the 2023 graduation. *Id.* She claims that her graduation materials were different at the graduation, as she was given information on a hand-written yellow card while others had a professionally-typed white card. She complains that she received a 2022 gown and tassel. *Id.* at ¶45. Notably, all medical students are given six years to complete their degrees, and because Plaintiff graduated on time in 2023 after starting medical school in 2017, she completed her medical degree on time. *Id.* at ¶37.

### C. UCI INVESTIGATED PLAINTIFF'S DISCRIMINATION ALLEGATIONS BUT FOUND NO DISCRIMINATION.

At an unidentified time, Plaintiff filed a discrimination complaint with the UCI Office of Equal Opportunity and Diversity ("OEOD"). Complaint, ¶23. She complains that the OEOD investigation was delayed, done by a non-black male investigator, and the final report said there was no unlawful discrimination. *Id*. at ¶¶24-25. In a conclusory manner, Plaintiff alleges that the investigation was flawed for five reasons: "investigative bias, denied witnesses, omission and destruction of evidence, altered testimony, and ex post facto policy application." *Id*. at ¶26. She fails to elaborate on these allegations.

### D. PLAINTIFF'S CONCLUSORY ALLEGATIONS DO NOT ESTABLISH RETALIATION.

Plaintiff claims she was retaliated against after filing the OEOD complaint at an unidentified time. Complaint, ¶27. First, she says she submitted a request for unidentified accommodations to Dr. Toohey, but Dr. Toohey told her to make the request to the DSC instead. *Id*. Plaintiff made this request to Dr. Toohey despite her knowledge that DSC is the appropriate place to obtain accommodations.

Next, Ms. Henderson of the DSC allegedly denied Plaintiff's accommodation request "in the form of being allotted more time to study and prepare for the Surgery exam" due to insufficient medical documentation. Complaint, ¶¶28-29. Plaintiff appealed the denial. *Id*. at ¶30. Once the DSC finally approved Plaintiff for these vague accommodations, the deadline to take her surgery exam had passed. *Id*. at ¶30. Yet, she

took the exam, but missed the passing mark by 6%. *Id*.

Plaintiff alleges that her peers nominated her for an award with the Gold Humanism Honor Society, but claims she was retaliated against at some unidentified time when unidentified "faculty" told the Society not to honor Plaintiff because of her litigation issues with the school. Complaint, ¶¶31-32.

Plaintiff also claims she was retaliated against (again, at unknown times) when her dual enrollment in the MBA program was rescinded without explanation, when her third year medical school schedule was reorganized leaving her no time to study, and when she was placed on a leave of absence during the pandemic, leading to an incorrect calculation of her graduation date. Complaint, ¶¶33, 36-37. However, these conclusory allegations do not plausibly indicate retaliation in light of her inability to pass her medical school examinations and her requests for more time to study. In addition, the "corrections to plaintiff's graduation period" were eventually made. *Id*. at ¶38.

At some unidentified time, Plaintiff filed a retaliation complaint with the OEOD, but claims that OEOD closed her complaint without investigating. Complaint, ¶38. These facts do not plausibly allege the elements of her three causes of action.

### III.  STANDARD FOR GRANTING A MOTION TO DISMISS

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*., citing *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This "plausibility standard" requires "more than a sheer possibility that a defendant has

-13-

24100127   Defendant The Regents Of The University Of California's Notice Of Motion And Motion To Dismiss Plaintiff's Complaint

acted unlawfully." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## IV.     LEGAL ARGUMENT

### A.     THE FIRST CAUSE OF ACTION FOR RACE DISCRIMINATION UNDER TITLE VI FAILS.

"Title IX was modeled after Title VI of the Civil Rights Act of 1964, which prohibits race discrimination in programs receiving federal funds. Both statutes condition federal funding on a recipient's promise not to discriminate, in what amounts essentially to a contract between the Government and the recipient." *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 275 (1998). For this reason, a Title VI claim has the same elements as a Title VI claim, and there is no "recovery in damages against a funding recipient where the recipient is unaware of discrimination in its programs." *Id.* at 285.

To obtain monetary damages, discriminatory intent must be sufficiently alleged. *Guardians Ass'n v. Civil Service Com'n of City of New York*, 463 U.S. 582, 584 (1983). "A motion to dismiss a Title VI claim is appropriate where a plaintiff fails to allege any evidence to indicate racial bias motivated a defendant's action and the allegations made support a finding that alleged bias was not racial in nature." *Joseph v. Boise State Univ.*, 998 F. Supp. 2d 928, 944 (D. Idaho 2014), *aff'd,* 667 F. App'x 241 (9th Cir. 2016).

In this regard, there must be sufficient, plausible allegations that that the University <u>itself</u> subjected plaintiff to discrimination based on race. *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1050 (E.D. Cal. 2010). "As to Title VI, ... an entity's liability is limited to the entity's own misconduct, as it is under § 1983. [Citations] Thus, while an entity cannot be held vicariously liable on a *respondeat superior* theory, it can be held liable under Title VI if an official with power to take corrective measures is 'deliberately indifferent to known acts' of discrimination." *United States v. County of Maricopa, Arizona*, 889 F.3d 648, 652 (9th Cir. 2018), citations omitted. This means that the University may not be liable for the acts or omissions of its employees based on principles of *respondeat superior* or

-14-

constructive notice. *Gebser,* 524 U.S. at 285-286. Rather, actual knowledge and deliberate indifferent indifference in response thereto is required. *Id.; see also K.H. by and through Humphrey v. Antioch Unified School District,* 424 F. Supp. 3d 699, 701 (N.D. Cal. 2020). The deliberate indifference must have then subjected a plaintiff or made her vulnerable to further discrimination. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999); *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1105 (9th Cir. 2020).

Here, Plaintiff does not have plausible allegations that she was subjected to racial discrimination, that she reported it to an official with authority to act on it, and that the University responded with deliberate indifference in a manner that subjected her to further discrimination. Although Plaintiff alleges that she made a discrimination complaint with the OEOD [Complaint, ¶23], she does not state *when* she made this complaint. She therefore does not establish when actual notice was given, and whether discrimination occurred thereafter.

The Complaint further indicates that the University did not respond with deliberate indifference. OEOD performed an investigation, gave Plaintiff a draft of the investigation report containing statements from witnesses, and allowed Plaintiff to submit a rebuttal. Complaint, ¶25. OEOD considered that rebuttal and then provided a final report, which did not find any discrimination. *Id*. Plaintiff does not appear to allege any discrimination on the basis of race thereafter. Therefore, the Complaint fails to state a sufficient cause of action for a violation of Title VI.

**B.    THE SECOND CAUSE OF ACTION FOR FAILURE TO PROVIDE REASONABLE DISABILITY ACCOMMODATIONS UNDER TITLE II OF THE ADA FAILS.**

To support a claim under the ADA, Plaintiff must prove that: (1) she is a qualified individual with a disability; (2) she was excluded from participation in or denied the benefits of public services, or otherwise discriminated against; and (3) the exclusion, denial, or discrimination was motivated by her disability. *Duvall v. Cty. of Kitsap,* 260 F.3d 1124, 1135, 1139 (9th Cir. 2001). Plaintiff must also establish "the requisite

knowledge (or notice) on behalf of the defendant" of the need for accommodation unless the need for accommodation is obvious. *A.G. v. Paradise Valley Unified Sch. Dist. No. 69,* 815 F.3d 1195, 1204 (9th Cir. 2016). A plaintiff may only maintain claims under ADA against a school for acts of employees "after prior notice to a person with authority." *K.H. by & through Humphrey v. Antioch Unified Sch. Dist.,* 424 F. Supp. 3d 699, 700, 702 (N.D. Cal. 2020). Therefore, where, as here, a plaintiff seeks monetary damages under the ADA, the plaintiff must prove that the defendant acted with deliberate indifference, just as she must to establish a Title VI claim. *Duvall,* 260 F.3d at 1138. "Because in some instances events may be attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction, we have stated that deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course." *Id.* at 1139. "Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* at 1139-1140. Plaintiff must therefore show that UCI acted with intent to deny her reasonable accommodations. *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 467 (9th Cir. 2015). The Complaint does not plausibly allege these elements.

Plaintiff requested accommodations in 2017 and "was granted, on paper, a reasonable accommodation" in the form of time and a half to take exams. Complaint, ¶15. She does not specifically state a single occasion where UCI denied her time and a half on tests thereafter. The University cannot be held liable for a failure to accommodate by the NBME, an outside entity independent of the University.

Further, there is no indication that Plaintiff provided the requisite paperwork to the Disability Service Center when requesting accommodations on all occasions beyond her initial enrollment in 2017, and it is unclear when she complained, if at all, that specific, necessary accommodations were not provided. The Complaint often complains in a conclusory manner that Plaintiff was not accommodated in an unspecified manner, or that

she requested vague accommodations from unspecified persons at an unarticulated time. *See e.g.* Complaint, ¶35. She admits, however, that she went around the DSC and sought disability accommodations from other sources, such as Dr. Toohey, who would then refer her to the DSC. *See e.g.* Complaint, ¶27.

Plaintiff asked for more time to study and prepare for an exam (essentially asking for a delayed exam), and she was ultimately granted the accommodation and allowed to take the exam after the deadline had passed. Complaint, ¶¶28-30. Plaintiff's allegation that she was not granted the accommodation soon enough does not establish the deliberateness required to state a failure to accommodate claim.

With regarding to housing, Plaintiff claims that Dr. Toohey provided insufficient paperwork to the on-campus housing community to allow her to continue to stay there. Complaint, ¶20. However, the responsibility for providing any disability accommodation paperwork to housing would fall on Plaintiff or the DSC, not Dr. Toohey. Complaint, ¶14.

Plaintiff also alleges she requested unspecified accommodations in January 2023 from Dr. Toohey, and when she was directed to Rosezetta Henderson at the DSC, Plaintiff requested to table the conversation until she was done with her exams. Complaint, ¶¶40-41. She claims that she was then placed under investigation for allegedly checking her emails and using electronic devices during an exam, and that this "interrupted" her Step 2 test. *Id.* Certainly, sending a student an e-mail that she was not supposed to check during an exam is not reflective of an intentional failure to accommodate, especially after Plaintiff requested to table any accommodation discussions until after the exam.

Plaintiff's vague and conclusory allegations do not establish the requisite elements of an ADA failure to accommodate claim.

### C. THE THIRD CAUSE OF ACTION FOR RETALIATION IN VIOLATION OF TITLE VI OF THE ADA FAILS.

As with Plaintiff's Title VI claim and her claim for failure to accommodate under the ADA, to establish a retaliation claim under the ADA, she must also prove that an official had actual notice of retaliation and responded with deliberate indifference. *K.H.,*

-17-

24100127   Defendant The Regents Of The University Of California's Notice Of Motion And Motion To Dismiss Plaintiff's Complaint

424 F. Supp. 3d at 701-702. In *K.H.,* the Court recently stated:

> The clear implication was that if Title IX limits *respondeat superior*, so must Title VI, and so must the ADA and Section 504. In *Lovell v. Chandler*, our court of appeals came close to so holding: "The Supreme Court has said that the purpose of requiring proof of intent as a prerequisite for the recovery of monetary damages from a public entity is to ensure that the *entity had knowledge and notice.*" 303 F.3d 1039, 1057 (9th Cir. 2002).

(Italics in original.)

In addition to establishing actual knowledge of retaliation and deliberate indifference in response thereto, to establish a retaliation claim in violation of the ADA, a plaintiff must make out a prima facie case "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." *T.B.,* 806 F.3d at 472–73. "[T]he standard for the 'causal link' is but-for causation, a more stringent test." *Id*. at 473.

Plaintiff claims the following "retaliation," which are not actually retaliatory acts at all, and none of which meet the "but-for causation" test:

- When Plaintiff requested accommodations from Dr. Toohey, Dr. Toohey referred her to the DSC [Complaint, ¶27];
- Plaintiff was unable to participate in the dual MBA and MD program at UCI [Complaint, ¶33], although the Complaint indicates that this was reasonable due to her continued failed exams and requests for time to study;
- Her schedule was re-organized in her third year of medical school [Complaint, ¶36];
- Her graduation period was not calculated "accurately" while Plaintiff was affected by the pandemic and on a leave of absence [Complaint, ¶37]; and
- Delaying processing of her requests for accommodations in an unspecified manner by an unspecified person [Complaint, ¶63].

-18-

24100127    Defendant The Regents Of The University Of California's Notice Of Motion And Motion To Dismiss Plaintiff's Complaint

These conclusory allegations do not plausibly establish the requisite elements for a retaliation claim under the ADA. Rather, there are many plausible reasons for these events, as noted above. There is no indication that anyone involved in Plaintiff's OEOD discrimination complaint subjected her to adverse actions thereafter. There is also no allegations that she was subjected to further discrimination or retaliation after she filed a retaliation complaint with OEOD at an unidentified time.

Further, only equitable relief is available in an ADA retaliation claim, and Plaintiff has already graduated and obtained her medical degree, meaning that no equitable relief is available to her. *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1270 (9th Cir. 2009) ["we conclude that ADA retaliation claims are redressable only by equitable relief"]. Plaintiff cannot recover monetary damages, and because this is all she seeks with respect to her alleged retaliation claim, her claim fails.

### D. PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

The applicable state personal injury statute of limitations determines the length of the limitation period under which to bring federal causes of action seeking monetary damages. *Taylor v. Regents of University of California*, 993 F.2d 710, 712 (9th Cir. 1993); *Bonelli v. Grand Canyon University*, 28 F.4th 948, 952–953 (9th Cir. 2022). In California, the statute of limitations for personal injury actions is two years. Cal. Code Civ. Proc., § 335.1. This lawsuit was filed on July 24, 2023. The statute of limitations is two years, meaning that Plaintiff's causes of action must have accrued on or after July 24, 2021.

Plaintiff alleges that she was discriminated against in 2017 and 2018 with respect to her Kenya medical project. She alleges she was denied reasonable accommodations at an unknown time, but after applying for and receiving accommodations for time and a half on tests in 2017. Indeed, most of the issues that she complains of appear to involve the 2017-2018 school year, although the Complaint is unclear and noticeably devoid of specific dates thereafter. The lack of such specificity means that Plaintiff's Complaint is factually deficient and does not set forth the requisite allegations to plausibly allege timely

-19-

24100127    Defendant The Regents Of The University Of California's Notice Of Motion And Motion To Dismiss Plaintiff's Complaint

claims for relief.

Plaintiff also claims she filed a retaliation complaint with the OEOD at some unidentified time, but it appears to be in 2020. Complaint, ¶38. This is because she alleges retaliatory conduct shortly before this about her expected graduation date "when the pandemic hit," and thus presumably in 2020. Complaint, ¶37.

In sum, the Complaint has no timely allegations of discrimination, a failure to accommodate, or retaliation for which she can receive monetary damages for. A request for injunctive relief would be moot because Plaintiff has already graduated and there are no allegations of continuing conduct to the present day. Thus, all of the claims in Plaintiff's lawsuit are barred by the applicable statute of limitations.

## V. CONCLUSION

For the reasons stated further herein, UCI respectfully requests that this Court grant this motion and dismiss Plaintiff's three causes of action without leave to amend.

DATED: October 6, 2023

McCUNE & HARBER, LLP

By: _____
STEPHEN M. HARBER, ESQ.
AMY A. EVENSTAD, ESQ.
Attorneys for Defendant, THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

-20-

24100127   Defendant The Regents Of The University Of California's Notice Of Motion And Motion To Dismiss Plaintiff's Complaint