Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 West Mission Street, Suite 201
Santa Barbara, California 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

Attorney for Defendant, REGENTS OF THE
UNIVERSITY OF CALIFORNIA

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

| | |
|---|---|
| JACKLINE MUTHOKA,<br><br>    Plaintiff,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>    Defendant. | CASE NO.: 8:23-cv-01333-FWS-JDE<br>*Assigned to the Hon. Fred W. Slaughter*<br><br>**DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[*Filed Concurrently with Notice of Motion, Separate Statement Of Undisputed Material Facts, Decl. of Alison M. Bernal, Decl. of Rosezetta Henderson, Decl. of Dr. Megan Osborn, and [Proposed] Order*]<br><br>DATE:    APRIL 17, 2025<br>TIME:    10:00 A.M.<br>DEPT.:    10D<br><br>Compl. Filed:    July 23, 2023<br>SAC Filed:    Jan. 22, 2024<br>Trial Date:    Sept. 23, 2025 |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**STIPULATION AND [PROPOSED ORDER] EXTENDING FACT DISCOVERY CUTOFF**

# TABLE OF CONTENTS

I.    INTRODUCTION ..............................................................................................1

II.   FACTUAL BACKGROUND ...........................................................................2

    A.    UCI SOM's Policies and Procedures .....................................................2

    B.    Plaintiff's Tenure at UCI SOM ..............................................................3

    C.    Race Discrimination Allegations ...........................................................7

III.  ARGUMENT ...................................................................................................10

    A.    Standard of Review ...............................................................................10

    B.    Plaintiff's Title VI Claim Is Untimely And Fails To State Facts To Constitute A Prima Facie Case Of Discrimination ...............................10

        1.    The disparate treatment claim is barred by the statute of limitations. ...................................................................................11

        2.    Plaintiff fails to establish a prima facie case of discrimination. ..............................................................................15

    C.    Plaintiff's Title II and Title V ADA Claims Fail for Two Reasons ......................................................................................................17

        1.    Plaintiff lacks standing. .............................................................17

        2.    Plaintiff's Title II claim is moot. ...............................................18

    D.    Plaintiff's State Law Claim Fails As A Matter Of Law And The Court Should Decline To Exercise Supplemental Jurisdiction .............20

IV.   CONCLUSION ...............................................................................................22

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**Cases**

*Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031 (9th Cir. 2011)............11

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ........................................................10, 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..................................................10

*Banga v. Kanios*, 2024 WL 1898423 (N.D. Cal. Apr. 30, 2024) ...............................18

*Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 856 (9th Cir. 2017) ..........................18

*Brewer v. Bd. of Trustees. of Univ. Illinois,* 479 F.3d 908 (7th Cir. 2007)...............11

*Burke v. Barnes*, 479 U.S. 361 (1987)..........................................................................18

*Cetacean Cmty. v. Bush*, 386 F.3d 1169 (9th Cir. 2004)............................................17

*Chapman v. Pier 1 Imports*, 631 F.3d 939 (9th Cir. 2011) ...................................2, 18

*Cherosky v. Henderson*, 330 F.3d 1243 (9th Cir. 2003).............................................13

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).......................................................19

*Collier v. City of Pasadena,* 142 Cal.App.3d 917 (1983) ....................................14, 15

*Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212 (2022) .......................2, 19

*Davis v. Monroe Cty. Bd. of Educ.,* 526 U.S. 629 (1999) ..........................................21

*Doe v. Univ. of San Francisco,* 685 F.Supp.3d 882 (N.D. Cal. 2023)......................20

*Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 579 (2008)........20, 21

*Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274 (1998)....................................21

*Ikekwere v. Governing Bd. of Foothill–DeAnza Cmty. Coll. Dist.*, 2010 WL 1948822 (N.D. Cal. May 13, 2010)........................................................................11

*Int'l Broth. of Teamsters v. United States*, 431 U.S. 324 (1977) ..............................13

*Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004) ...........................................................11

*Jones v. Univ. of Calif. Santa Cruz*, 1995 WL 39483 (N.D. Cal. Jan. 30, 1995)................................................................................................................11, 16

*Joseph v. Boise State Univ.,* 998 F. Supp. 2d 928 (D. Idaho 2014) ....................11, 16

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.,* 725 F.3d 1088 (9th Cir. 2013)..................................................................................................................13

*L.T. v. Eleanor Murray Fallon Middle Sch.,* 2024 WL 3678014 (N.D. Cal. Aug. 5, 2024)................................................................................................21

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS' MOTION FOR SUMMARY JUDGMENT**

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ............................................2, 17

*Massey v. Biola Univ., Inc.*, 2022 WL 671021 (9th Cir. Mar. 7, 2022) ...................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574, 587 (1986) ................................................................10

*Maxon v. Fuller Theological Seminary,* 549 F.Supp.3d 1116 (C.D. Cal.
   2020) .............................................................................2, 20

*Mulligan v. Lipnic*, 734 Fed. Appx. 397 (9th Cir. Apr. 30, 2018) ...........................19

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ...............................12

*Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241 (9th Cir. 1988) .............................18

*O'Neal v. City of Seattle*, 66 F.3d 1064 (9th Cir. 1995) ..................................19

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ...............................................18

*Oden v. Northern Marianas Coll.,* 440 F.3d 1085 (9th Cir. 2006) ..........................21

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011) .............................18

*Randall v. United Network Organ Sharing,* 720 F. Supp. 3d 864 (C.D. Cal.
   2024) ...................................................................................11

*Rashdan v. Geissberger*, 2012 WL 1965863 (N.D. Cal. May 31, 2012) ...................16

*Rashdan v. Geissberger,* 764 F.3d 1179 (9th Cir. 2014) ...................................15

*Rogers v. W. Univ. of Health Scis.*, 787 F. App'x 932 (9th Cir. 2019) ....................18

*Ruiz v. City of Santa Maria*, 160 F.3d 543 (9th Cir. 1998) ...............................18

*Schneider v. Chertoff*, 450 F.3d 944 (9th Cir. 2006) .....................................17

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .............................17

*Taylor v. Regents,* 993 F.2d 710 (9th Cir. 1993) ......................................1, 11

*Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981) ............................15

*Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216 (9th Cir. 1995) ......................10

*Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927 (C.D. Cal. 2015) ....................20

*Walker v. City of Pocatello*, 2020 WL 4043487 (D. Idaho July 16, 2020) ...............19

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................19

*Williams v. Owens–Illinois, Inc.*, 665 F.2d 918 (9th Cir. 1982) ..........................12

*Yu v. Idaho State Univ.*, 15 F.4th 1236 (9th Cir. 2021) .................................10

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**Statutes**

29 U.S.C. § 794a ..................................................................................................19

42 U.S.C. § 12133 ...............................................................................................19

42 U.S.C. § 2000d ...............................................................................................10

Cal. Educ. Code § 66270 .....................................................................................20

**Rules**

Cal. Civ. Proc. Code § 335.1 ..............................................................................11

Fed. R. Civ. P. 56(a)............................................................................................10

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS' MOTION FOR SUMMARY JUDGMENT**

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Jackline Muthoka ("Plaintiff") attended the University of California, Irvine, School of Medicine ("UCI SOM") from 2016 to 2023. Plaintiff failed the national licensing examinations required for all medical students multiple times. UCI SOM provided Plaintiff *every* accommodation she requested—including allowing her additional time on exams and bending its own policies to provide an entire extra year to complete her studies—and, ultimately, Plaintiff graduated after seven years and is now in her residency. After graduating, Plaintiff sued The Regents of the University of California ("The Regents"), who operates UCI SOM, alleging UCI SOM discriminated against her on the basis of race and disability. Her claims fail for multiple reasons.

Plaintiff's race discrimination claim under Title VI of the Civil Rights Act ("Title VI") fails because: (1) it is barred by the two-year statute of limitations, *Taylor v. Regents,* 993 F.2d 710, 712 (9th Cir. 1993); and (2) even if not time-barred, the allegations of disparate treatment are insufficient to establish a prima facie case of discrimination. Plaintiff filed suit on August 15, 2023, but her race discrimination claims relate to conduct which occurred before August 15, 2021. The *sole* allegation of race discrimination during the limitations period is based on Plaintiff being given a hand-written card at her graduation rather than a typed card. This does not reasonably relate to Plaintiff's race in any way, but rather was the result of Plaintiff qualifying for graduation at the very last minute, long after the rest of the graduating class. Thus, the claims are time-barred and do not constitute race discrimination.

Plaintiff's disability discrimination claims under Title II and Title V of the Americans with Disabilities Act ("ADA") fail because: (1) Plaintiff graduated from UCI SOM, has no intent to return, and thus lacks Article III standing; and similarly, (2) the Court cannot grant Plaintiff any effective relief on her ADA claims, which

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS'
MOTION FOR SUMMARY JUDGMENT**

permit only injunctive relief in the absence of intentional discrimination. *See, e.g., Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992); *Chapman v. Pier 1 Imports*, 631 F.3d 939 (9th Cir. 2011) (standing requires ADA plaintiff must have a real and immediate threat of repeated injury such that a favorable decision will redress the injury); *Cummings v. Premier Rehab Keller, PLLC,* 596 U.S. 212 (2022) (emotional distress damages are not available under the Rehabilitation Act, which is the source of damages under the ADA).

Finally, Plaintiff's claim for violation California Education Code § 66270 fails because: (1) the claim is time-barred; (2) the Court should decline to exercise supplemental jurisdiction; and (3) Plaintiff has not met the exacting requirements for finding liability based on deliberate indifference. *Maxon v. Fuller Theological Seminary,* 549 F.Supp.3d 1116 (C.D. Cal. 2020).

For these reasons, and as explained in more detail below, The Regents requests the Court enter summary judgment in its favor.

## II.    FACTUAL BACKGROUND

### A. UCI SOM's Policies and Procedures

UCI SOM admits 3.9% of applicants, with a median MCAT score of 516, and a median undergraduate GPA of 3.89. (Defendant's Uncontroverted Fact ("DF") 1.) UCI SOM has established educational objectives applicable to all students (DF 2) and requires students to: (1) achieve passing grades for all courses in the MD curriculum (DF 3), (2) pass the United States Medical Licensing Exam ("USMLE") Step 1 and Step 2CK, administered by the National Board of Medical Examiners ("NBME") (DF 4), and (3) pass the Clinical Performance Examination ("CPX") (DF 5.). The failure to pass USMLE Step 1 or Step 2CK precludes graduation without exception. (DF 6.) Students have a maximum of six years to complete their MD. (DF 7.)

Students are considered in "good standing" if they have no unremediated course or clerkship failure, timely completed Step 1 and Step 2CK, and are not under

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

2

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS' MOTION FOR SUMMARY JUDGMENT**

any formal disciplinary review by the Committee for Promotions & Honors ("P&H"). (DF 8.) Students may be referred to P&H for several reasons, including, (1) two clerkship failures, (2) failure to pass Step 1 within one year of the student's last day of their second year, (3) failure to pass Step 2CK by the deadlines in the Exam Administration and Procedures Policy, (4) two failed attempts at Step 1 or Step 2CK. (DF 9.) All students receive these policies upon matriculation at UCI SOM and they are accessible on the school's website. (DF 10.)

### B. Plaintiff's Tenure at UCI SOM

Plaintiff's MCAT scores and undergraduate GPA did not qualify her for admission to UCI SOM. (DF 11.) She was admitted to UCI SOM through a conditional program offered to students who did not meet the metrics for medical school admission. (DF 12.) Plaintiff's grades and test scores still put her on the cusp of not getting into the school even after she was admitted to the conditional program, but a UCI SOM faculty member successfully lobbied for Plaintiff's admission. (DF 13.) Plaintiff matriculated at UCI SOM in 2016. (DF 14.)

Plaintiff met with a wellness officer at UCI SOM in February 2017 (DF 15) and requested the wellness officer send a form to UCI's Disability Services Center requesting testing accommodations for Plaintiff (DF 16). The Disability Services Center then sent a letter to UCI SOM stating that Plaintiff was eligible to receive accommodations in the form of time and a half on all tests (DF 17) and from that point forward, Plaintiff received such testing accommodations on all examinations at the medical-school level, administered by UCI SOM. (DF 18.)

Plaintiff passed her coursework in her first year and second year, with courses ending March 2018 prior to a seven-week study period culminating in taking the USMLE Step 1 exam. (DF 19.)

UCI SOM does not administer or control the USMLE Step and shelf examinations. (DF 20.) The NBME administers and controls the USMLE Step and

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS'
MOTION FOR SUMMARY JUDGMENT**

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

shelf examinations. (DF 21.) The NBME decides whether students receive testing accommodations on Step and shelf examinations. (DF 22.) The student is responsible for applying for accommodations with the NBME. (DF 23). The University or Disability Services can communicate with NBME for general information but cannot discuss student specific requests. (DF 24.) Rather, the NBME communicates with the student directly. (DF 25.)

Plaintiff applied for accommodations with the NBME in 2017. (DF 26.) The NBME denied Plaintiff accommodations because "experiencing anxiety during a high stakes test is not evidence of a disability or a substantial limitation in a major life activity." (DF 27.)

On May 7, 2018, Plaintiff took the USMLE Step 1 and failed. (DF 28.)

On July 12, 2018, Plaintiff took the Surgery shelf examination and failed. (DF 29.)

From July 16, 2018, through November 4, 2018, Plaintiff was on administrative leave from UCI SOM because of her Step 1 failure. (DF 30.)

On October 30, 2018, Plaintiff took the USMLE Step 1 examination for a second time and failed again. (DF 31.)

From December 3, 2018, through December 6, 2020, Plaintiff was on administrative leave for her two Step 1 failures. (DF 32.)

In December 2018, UCI's housing office communicated to Plaintiff that she would need to reenroll at UCI SOM to continue living in University housing. (DF 33.)

On January 25, 2019, UCI re-sent Plaintiff the Notice of USMLE Policies (DF 34) and reiterated to Plaintiff that she needed to pass Step 1 by March 15, 2019, to avoid academic probation, or by March 15, 2020, to avoid dismissal (DF 35).

Plaintiff did not take Step 1 by March 15, 2019. (DF 36.) On March 21, 2019, UCI's housing sent Plaintiff notice she needed to vacate by April 30, 2019. (DF 37.) Dr. Julianne Toohey of UCI SOM sent a letter to the housing office in support of Plaintiff,

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS' MOTION FOR SUMMARY JUDGMENT**

requesting an extension of the housing deadline. (DF 38.) The UCI housing office approved the extension to March 31, 2019. (DF 39.)

After failing Step 1 twice, Plaintiff appealed her denial of accommodations from the NBME in May 2019, seeking 50% additional time, a separate room, and additional break time. (DF 40.) The NBME provided her a separate room and additional break time, but did not agree to the additional testing time. (DF 41.)

On July 12, 2019, UCI SOM notified Plaintiff that, because she had not retaken the surgery shelf exam within one year of the deadline, her grade would be changed from "incomplete" to "fail." (DF 42.)

Due to Plaintiff's academic probation and failure to pass her surgery clerkship, Plaintiff received notice on September 30, 2019, that she would need to appear before P&H. (DF 43.) While waiting for her P&H hearing date, Plaintiff requested an extension to complete her pediatric clerkship, which the University granted. (DF 44.)

The Disability Services Center supported Plaintiff by helping her write an appeal of the NBME's denial of her accommodations in 2019. (DF 45.)

Plaintiff's P&H hearing was held on March 9, 2020. (DF 46.) Although Plaintiff was eligible for dismissal due to her failure to pass the USMLE Step 1 within two years (DF 47), the P&H committee offered her an additional chance by placing her on academic probation, giving her a deadline to take the USMLE Step 1 by May 3, 2020, granting an extension on her surgery shelf exam to March 9, 2021 (with a grade change from fail to incomplete), and a deadline to complete her pediatrics rotation by November 20, 2020. (DF 48.)

In June 2020, Plaintiff sued the NBME for disability discrimination (DF 49), seeking an injunction requiring the NBME to allow her 50% additional time on the Step 1 examination. (DF 50.) The NBME resolved the lawsuit by allowing Plaintiff the additional testing time. (DF 51.) Plaintiff took Step 1 on October 12, 2020, and passed on this third attempt. (DF 52.)

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS'
MOTION FOR SUMMARY JUDGMENT**

After passing Step 1, Plaintiff resumed her clerkships and completed her pediatrics clerkship on December 27, 2020. (DF 53.) However, she did not pass the pediatrics shelf examination, placing her back on administrative leave for two incomplete clerkships (surgery and pediatrics). (DF 54.) Plaintiff remained on administrative leave from January 26, 2021, through March 21, 2021. (DF 55.)

Plaintiff requested an extension to complete the pediatric and surgery clerkship, which the P&H Committee approved through March 9, 2021. (DF 56.) On March 4, 2021, Plaintiff requested a further extension, which the committee approved through March 12, 2021, while also reminding Plaintiff of the six-year deadline for curriculum completion. (DF 57.) On March 8, 2021, Plaintiff requested another extension on the surgery shelf exam, saying she was not prepared. (DF 58.) The Committee denied the request. (DF 59.) Plaintiff did not take the surgery shelf by the deadline and took it instead on March 19, 2021. (DF 60.) Plaintiff failed the surgery shelf a second time, resulting in a final failing grade in the surgery rotation. (DF 61.)

On March 30, 2021, Plaintiff requested an extension on her six-year graduation timeline. (DF 62.) The Committee agreed to adjust Plaintiff's six-year timeline. (DF 63.)

On June 1, 2021, Plaintiff received notice she did not pass her internal medicine NBME shelf examination. (DF 64.)

On July 19, 2021, Plaintiff received notice she did not pass the neurology NBME shelf examination, and that she was placed on administrative leave for two incomplete clerkships. (DF 65.) Plaintiff retook both exams and passed the second time, with her administrative leave ending on September 27, 2021. (DF 66.)

On January 31, 2022, Plaintiff requested an extension through December 1, 2022, for her Step 2 examination. (DF 67.) The Committee reminded Plaintiff of her modified 6-year deadline and stated that she had to complete her Step 2 exam by November 6, 2022. (DF 68.)

///

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

6

Plaintiff's technical six-year deadline by which she was required to graduate was May 22, 2022. (DF 69.) Plaintiff did not complete her coursework and was eligible for dismissal at this point. (DF 70.) UCI SOM did not dismiss Plaintiff. (DF 71.) Instead, the Committee provided Plaintiff an extension of the six-year deadline to December 18, 2022. (DF 72.) Plaintiff responded to the Committee's extension offer on October 13, 2022, stating she disagreed with the deadline and that she expected four additional months. (DF 73.) The Committee provided additional time, extending the deadline to January 18, 2023. (DF 74.)

Plaintiff took the Step 2CK examination on December 12, 2023, with the accommodations the NBME had to provide following Plaintiff's lawsuit, and she still failed. (DF 75.) Plaintiff took the Step 2CK examination for the second time on April 3, 2023 and passed. (DF 76.) Because Plaintiff retook the Step 2CK exam so close in time to graduation, she found out after others in the graduating class that she was eligible to graduate. (DF 77.) This resulted in Plaintiff receiving a handwritten graduation card whereas other students—who had fulfilled the graduation requirements much earlier—received a typed graduation card. (DF 78.)

Plaintiff graduated from UCI SOM in June 2023. (DF 79.)

### C. Race Discrimination Allegations

Plaintiff contends she was discriminated against on the basis of race on a disparate treatment theory. (DF 80.) She does not contend UCI SOM violated Title VI under a disparate impact theory. (DF 81.) Plaintiff's allegations of disparate treatment are, in her own words, as follows:

| Alleged Discriminatory Act | Dates |
|---|---|
| Dr. Toohey stated that my natural hair was "unprofessional" and that I needed to straighten it to be considered professional. | August 2016 September 2016 January-March 2017 March-July 2018 |

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS'
MOTION FOR SUMMARY JUDGMENT**

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Alleged Discriminatory Act | Dates |
|---|---|
| The defendant through Dr. Toohey denied me funding and IRB support for my work in Kenya, but fully supported and funded a non-black, non-Kenyan Male medical student to conduct their research work in Kenya. | August/September 2016-July 2017<br><br>August/September 2018-July/August 2019 |
| Dr. Toohey assumed that Faith Njoku and I, the only two black students in a class of 104 medical students, were planning ultrasound trips to Kenya and Nigerian in 2018 because we both had Nigerian and Kenyan ancestry. She asked that we be excluded from meetings based on our race and country of origin even though we were not participating in these events. | September/October 2017 |
| They brought a lawyer to my P&H hearing while I was going to have family members present. The school had not brought lawyers to other nonblack medical students' hearing if they did not have their own lawyers present. This is also against school policy. | December 2019 |
| In an all Asian team during the internal medicine rotation, Dr. Nguyen made multiple racial comments about the team looking young because of "our good Asian genes" and continued to state that "I am also Asian" during a patient encounter. Dr. Nguyen later tried to prove to me that she is not racist because her sister/brother is married to a Kenyan and showed me photos during rounds. In addition, she asked me to change my mask (no one else in the team was asked to change their masks).<br><br>She was also asking me to evaluate her in the middle of the rotation (against policy), a situation that isolated and created a toxic learning environment for me, the only black student in the entire team. | March- June 2021 |
| I was severely punished for making a minor grammatical error while my colleague (Asian in an all Asian team) who copied and pasted patient's information into another patient's | March- June 2021 |

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS' MOTION FOR SUMMARY JUDGMENT**

| Alleged Discriminatory Act | Dates |
|---|---|
| discharge summary was not punished. I was the only black student in the entire team. | |
| Refused to interview the only black woman (Kelley Butler) who travelled to Kenya with me and instead only interviewed the two Asian medical students. The rest of the students had graduated despite providing him with the list of medical students who travelled to Kenya with me. | August 2020 - January 2021 |
| Created a toxic environment for me during my graduation by providing me with a handwritten yellow card during my graduation ceremony while everyone received a professionally typed white card. My graduation gown was also from 2022 while everyone received a 2023 graduation gown. | May 2023 |
| Stated that "I should consider going back to my country" if it was difficult when I requested to keep my on-campus housing. | January, February, March, April 2019 |

(*See* DF 90.) As relevant to Plaintiff's allegations of race discrimination, Plaintiff planned an ultrasound trip to Kenya for the summer of 2017. (DF 82.) UCI SOM notified Plaintiff that UCI SOM could not sponsor the trip because Kenya was subject to a travel advisory issued by the U.S. Department of State. (DF 83.) UCI SOM has never sponsored an international trip to a location with an active travel advisory because of safety and liability concerns. (DF 84.) Plaintiff contends that UCI SOM's refusal to sponsor the Kenya trip constituted racial discrimination, as non-black students were allowed to take sponsored international trips. (DF 85.) But, the other trips were not to countries subject to a travel advisory. (DF 86.)

Defendant disputes each of Plaintiff's allegations of race and disability discrimination. But, as described below, even if this Court credits every single one of Plaintiff's allegations listed above as true, Plaintiff cannot prevail on her claims.

/ / /

/ / /

/ / /

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

9

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS' MOTION FOR SUMMARY JUDGMENT**

## III.    ARGUMENT

### A. Standard of Review

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id*. at 248. The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient. *Triton Energy Corp. v. Square D Co*., 68 F.3d 1216, 1221 (9th Cir. 1995).

### B. Plaintiff's Title VI Claim Is Untimely And Fails To State Facts To Constitute A Prima Facie Case Of Discrimination

Title VI provides in part that no person "shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. While Title VI includes both a disparate impact section and a disparate treatment section, Plaintiff is proceeding only on a disparate treatment theory – Section 601. (DF 80.) Section 601 prohibits only instances of *intentional* discrimination based on race, color, or national origin in covered programs and activities. *Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001); *Yu v. Idaho State Univ.*, 15 F.4th 1236, 1242 (9th Cir. 2021) ("Private parties seeking judicial enforcement of Title VI's nondiscrimination protections must prove intentional discrimination.").

To establish a prima facie case of discrimination in the educational context, Plaintiff must show she: (1) is a member of the protected class; (2) met the school's legitimate educational expectations; (3) suffered an adverse education action; and (4) suffered worse treatment than that of similarly situated students not in the protected

10

class. *Joseph v. Boise State Univ.,* 998 F. Supp. 2d 928, 944 (D. Idaho 2014); *see also Brewer v. Bd. of Trustees. of Univ. Illinois,* 479 F.3d 908, 921 (7th Cir. 2007) (same). Additionally, the critical question is whether racial bias motivated a defendant's actions, that is, the defendant's actions must be *because of* its racial bias. *Joseph*, 998 F. Supp. 2d at 944. A "personal belief that [the University's] actions were racially motivated is conclusory and of no probative force." *Id*. at 945 (citing *Jones v. Univ. of Calif. Santa Cruz*, 1995 WL 39483 (N.D. Cal. Jan. 30, 1995)); *see also Ikekwere v. Governing Bd. of Foothill–DeAnza Cmty. Coll. Dist.*, 2010 WL 1948822 (N.D. Cal. May 13, 2010).

While The Regents disputes the veracity of Plaintiff's allegations and that there was any discriminatory intent, this Court need not analyze the discriminatory animus, or lack thereof, nor does the Court need to analyze disputed facts. Instead, the race discrimination claims are subject to summary adjudication because even assuming every allegation is true, Plaintiff's Title VI claim is untimely and fails to state a prima facie case of discrimination.

          1.   The disparate treatment claim is barred by the statute of limitations.

Plaintiff's Title VI claim is subject to a two-year statute of limitations. *See Randall v. United Network Organ Sharing,* 720 F. Supp. 3d 864, 877 n.6 (C.D. Cal. 2024) (statute of limitations for Title VI actions are the same as the statute of limitations for an action under 42 U.S.C. § 1983, i.e., California's two-year "personal injury" statute of limitations) (citing *Taylor,* 993 F.2d at 712; *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011)); Cal. Civ. Proc. Code § 335.1 (two year statute of limitations for personal injury actions in California); *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).

Here, Plaintiff filed suit on August 15, 2023 (ECF 1), leaving all claims of race discrimination prior to August 15, 2021 barred by the statute of limitations. With one exception, all of Plaintiff's allegations of race discrimination occurred prior to August

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

11

2021. *See* DF 90. The only allegation of race discrimination that falls within the limitations period—that Plaintiff received a handwritten yellow card at graduation in comparison to printed white cards given to other graduates and her graduation gown was from 2022 while others received a 2023 gown—occurred in May 2023, and in any event, fails to create a triable issue sufficient to preclude summary adjudication, as discussed below. Because Plaintiff's allegations of race discrimination are untimely, all claims of Title VI discrimination—with the exception of the May 2023 allegation—fail as a matter of law based on the statute of limitations.

> a)  *The continuing violation doctrine does not salvage Plaintiff's*
> *untimely Title VI claim.*

Nor does the continuing violation doctrine salvage Plaintiff's Title VI claim. The continuing violations doctrine extends the accrual of a claim if a continuing system of discrimination violates an individual's rights "up to a point in time that falls within the applicable limitations period." *Williams v. Owens–Illinois, Inc*., 665 F.2d 918, 924 (9th Cir. 1982). The Supreme Court rejected application of the continuing violation doctrine for discrete acts such as the May 2023 graduation allegation: "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period" and "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111–19 (2002) (interpreting continuing violation doctrine in Title VII context).

The doctrine salvages an untimely claim if the plaintiff shows a pattern or practice of discrimination creates an ongoing violation. Discrete discriminatory acts will not create a pattern of discrimination without more; pattern-or-practice claims cannot be based on "sporadic discriminatory acts" but rather must be based on "discriminatory conduct that is widespread" throughout a company or that is a routine and regular part of the workplace. *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS'
MOTION FOR SUMMARY JUDGMENT**

Cir. 2003) (citing *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)).

Here, if Plaintiff argues The Regents' actions as applied to Plaintiff were part a widespread pattern and practice that resulted in discrimination toward black students, that argument relies on the presumption that the discrete acts of which Plaintiff complains—providing Plaintiff with a handwritten card at graduation due to her last minute qualification for graduation—were undertaken pursuant to a discriminatory policy. This is a disparate impact claim—a claim that a facially neutral practice has the effect of discriminating against people of color. *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.,* 725 F.3d 1088, 1102 (9th Cir. 2013) (analyzing disparate impact ADA claim). Unlike claims brought under Title VII, Title III, or other statutes which allow this analysis for a continuing violation doctrine, there is no private right of action to enforce disparate impact claims under Title VI. *Sandoval*, 532 U.S. at 292–93.

Plaintiff's single allegation within the statute of limitations—that she received a handwritten rather than a typed graduation card and gown from the year prior—does not establish a series of related wrongful acts. The last prior purported act of race discrimination before the May 2023 graduation occurred more than two years before, in June 2021. The situation as it was reached a level of permanence after that time— the race discrimination claims were not routine and regular, they altogether stopped even if all of Plaintiff's claims are believed. Simply stated, the standalone allegation of race discrimination that falls within the statute of limitations relating to graduation cards does not demonstrate a series of wrongful acts that could evidence a pattern and practice, rendering the continuing violation doctrine inapplicable and leaving Plaintiff's Title VI claims time-barred.

/ / /

/ / /

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS'
MOTION FOR SUMMARY JUDGMENT**

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

*b)      Plaintiff's claims are not equitably tolled.*

Finally, the statute of limitations on Plaintiff's race discrimination claims is not equitably tolled by Plaintiff's decision to file an optional internal complaint with UCI's Office of Equal Opportunity and Diversity ("OEOD"). Plaintiff filed an OEOD complaint in May 2020. (DF 87.) The complaint identified two purportedly racially discriminatory events: UCI SOM not sponsoring Plaintiff's trip to Kenya in 2016-2017 and Dr. Julianne Toohey purportedly telling Plaintiff in April 2019 that she should go back to her country. (DF 88.) The OEOD office interviewed 27 witnesses before issuing its findings on January 25, 2021 and concluded the preponderance of the evidence did not support a claim that Dr. Toohey demonstrated discriminatory animus. (DF 89.) After receiving this report, Plaintiff then waited over two years and eight months to file the present lawsuit. During that time, there were no further allegations of racial discrimination, even accepting all of Plaintiff's claims as true. Instead, Plaintiff allowed the claims to sit, becoming stale, with the critical witness dying (Dr. Toohey), memories fading, and evidence being lost.

This record does not support a finding that Plaintiff's OEOD complaint equitably tolled the limitations period.  Equitable tolling is appropriate only where the record shows "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Collier v. City of Pasadena,* 142 Cal.App.3d 917, 924 (1983).

First, Plaintiff's OEOD complaint was not timely filed. Plaintiff filed the OEOD in May 2020. (DF 87.) The OEOD complaint only identified two purportedly discriminatory events—the 2017 Kenya ultrasound trip and the April 2019 purported statement related to Plaintiff going to her country. Thus, even if the OEOD complaint could equitably toll the limitations period—which it cannot—at most, it would toll the period related to the 2019 statement that occurred within two years' prior.

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS'
MOTION FOR SUMMARY JUDGMENT**

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1    Second, Plaintiff cannot satisfy the second requirement for equitable tolling,

2    which requires that the "facts of the two claims be identical or at least so similar that

3    the defendant's investigation of the first claim will put him in a position to fairly

4    defend the second." *Collier,* 142 Cal.App.3d at 925. Again, the only claims Plaintiff

5    raised with OEOD relate to the Kenya trip and the comment about her country. The

6    OEOD complaint did not put UCI SOM on notice of any of the other untimely

7    allegations Plaintiff now raises. The incidents here differ from the OEOD complaint,

8    and Plaintiff cannot meet the second element.

9    Finally, Plaintiff cannot show good faith and reasonable conduct. Plaintiff

10   waited two years and eight months after the OEOD issued its findings in January 2021

11   to file her lawsuit. And during that time, she was suing other entities, namely the

12   NBME, for similar discrimination claims. There was no reason beyond prejudicing

13   UCI SOM by allowing evidence to become lost, stale, or permanently unavailable,

14   that Plaintiff waited that time. This is especially true where the purported acts of

15   discrimination stopped, even according to Plaintiff's own allegations. Thus, the

16   statute of limitations is not tolled.

17          2.    Plaintiff fails to establish a prima facie case of discrimination.

18   Title VI follows the *McDonnell Douglas* burden-shifting framework. *Rashdan*

19   *v. Geissberger,* 764 F.3d 1179, 1182 (9th Cir. 2014). First, Plaintiff must establish a

20   prima facie case of race discrimination. If Plaintiff meets her burden, the defendant

21   may rebut that with a legitimate, nondiscriminatory reason for the action. Then,

22   Plaintiff may establish by a preponderance of evidence that the legitimate reason is a

23   pretext for discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248,

24   252-53 (1981). Here, Plaintiff's case fails at the threshold. Plaintiff's only allegation

25   of race discrimination which falls within the statute of limitations is that Plaintiff

26   received a different graduation card and a graduation gown from the year prior. This

27   does not meet a prima facie case of race discrimination.

28

15

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS'
MOTION FOR SUMMARY JUDGMENT**

Reiterating the standard set forth above, race discrimination in the education setting requires that Plaintiff is meeting the school's legitimate educational expectations, that she suffered an adverse education action, that she suffered worse treatment than that of similarly situated students not in the protected class, and that the defendant's actions were taken because of a racial bias. *Joseph,* 998 F. Supp. 2d at 944. A personal belief the University's actions were racially motivated is conclusory and of no probative force. *Jones,* 1995 WL 39483, at *6.

Plaintiff cannot meet these requirements. The allegation of race discrimination did not cause her to suffer an adverse education action. She graduated– her education at UCI SOM complete after seven years. UCI SOM's purported provision of a different graduation card or the 2022 gown did not cause her to suffer an adverse education action. She also does not have evidence that she suffered worse treatment than that of similarly situated students – *i.e.*, other students who passed their Step 2CK exam and completed their requirements in April, just weeks before graduating.

But more importantly, there are no material facts to support the conclusion that UCI SOM's provision of the handwritten card was motivated by race. In fact, there is zero evidence race had anything to do with the situation. To the contrary, as demonstrated by the declaration of Dr. Megan Osborn, Plaintiff received the handwritten card because Plaintiff passed her Step 2CK exam at the last possible minute to qualify her for graduation, as everyone else at the graduation had been anticipating graduation for some time. (DF 77–78.) UCI SOM could not anticipate that Plaintiff would pass the Step 2CK when she took it the second time in April 2023, just before the May 2023 graduation, and have a graduation card ready for her. None of these factors had anything to do with race. The allegation does not constitute a prima facie case of race discrimination. *See Rashdan v. Geissberger*, 2012 WL 1965863, at *12 (N.D. Cal. May 31, 2012) ("While Plaintiff generally disagrees with the Dean's decision to extend her graduation, she fails to proffer any specific evidence

Nye, Stirling, Hale, Miller & Sweet, LLP
33 West Mission Street, Suite 201
Santa Barbara, California 93101

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS'
MOTION FOR SUMMARY JUDGMENT**

to controvert Defendants' showing that the University and the individual Defendants had legitimate, nondiscriminatory reasons for extending Plaintiff's graduation and establishing specific milestones for her to meet to successfully complete the IDS program."). In this way, even if there were a prima facie showing of discrimination – which there is not – the University had legitimate, nondiscriminatory reasons for the graduation cards based on Plaintiff's belated qualification for graduation.

In sum, the vast majority of Plaintiff's claims of race discrimination are time-barred. The sole remaining race discrimination claim that falls within the statute of limitations—relating to Plaintiff's graduation card and gown—does not make a prima facie showing for race discrimination in the education context. For these reasons, the entire Title VI claim fails, and the Court should summarily adjudicate this claim in favor of The Regents.

### C. Plaintiff's Title II and Title V ADA Claims Fail for Two Reasons

Plaintiff's two ADA claims—for disability discrimination under Title II and for disability retaliation under Title V—fail because: (1) Plaintiff lacks standing; and, (2) Plaintiff's claims are mooted by her graduation and the Court cannot fashion any proper relief.

#### 1. Plaintiff lacks standing.

A plaintiff must have Article III standing in order for the suit to constitute a "case or controversy" over which a federal court has subject matter jurisdiction. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). To demonstrate Article III standing, a plaintiff must show: "(1) injury in fact; (2) causation; and (3) likelihood that a favorable decision will redress the injury." *Schneider v. Chertoff,* 450 F.3d 944, 959 (9th Cir. 2006) (citing *Lujan*, 504 U.S. at 560). In addition, to establish standing to pursue injunctive relief—the only relief available to private plaintiffs under the ADA—Plaintiff must demonstrate a "real and immediate threat of repeated injury" in

17

the future. *Chapman*, 631 F.3d at 946 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). It is Plaintiff's burden to establish standing. *Id.*

Plaintiff lacks Article III standing because she does not intend to return to school. "[W]here the plaintiff no longer attends the school against which the plaintiff seeks relief under [the ADA], the claim is moot." *Rogers v. W. Univ. of Health Scis.*, 2017 WL 8793864, at *7 (C.D. Cal. Dec. 12, 2017), aff'd, 787 F. App'x 932, 934 (9th Cir. 2019) ("The district court correctly concluded that [the plaintiff's] claim under the Americans with Disabilities Act (ADA) is moot because she does not intend to return to school."). This is because damages are not available under the ADA, *Rogers*, 787 F. App'x at 934, and "a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction," *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 856, 868 (9th Cir. 2017); *see also, Banga v. Kanios*, 2024 WL 1898423 (N.D. Cal. Apr. 30, 2024) (dismissing ADA claims where plaintiff no longer a student).

2. <u>Plaintiff's Title II claim is moot.</u>

"The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011) (citing *Burke v. Barnes*, 479 U.S. 361, 363 (1987)). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Ruiz v. City of Santa Maria*, 160 F.3d 543, 549 (9th Cir. 1998) (quoting *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988)). In this case, the Court can grant no effective relief on Plaintiff's Title II claim, and it is therefore moot.

Title II of the ADA does not allow for compensatory damages unless it is intentional conduct. "[T]he remedies for a violation of Title II of the ADA are linked

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

18

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS'
MOTION FOR SUMMARY JUDGMENT**

directly to the remedies for a violation of the Rehabilitation Act – at issue here – which in turn links directly to Title VI of the Civil Rights Act." *Walker v. City of Pocatello*, 2020 WL 4043487, at *2 (D. Idaho July 16, 2020) (citing 42 U.S.C. § 12133; 29 U.S.C. § 794a).

There is no intentional conduct present in this case. At most, Plaintiff's allegations regarding purported delays in accommodations could be considered negligent, not intentional conduct, and Plaintiff ultimately received all accommodations. *See, e.g.*, *Mulligan v. Lipnic*, 734 Fed. Appx. 397, 400 (9th Cir. Apr. 30, 2018) (concluding plaintiff failed to show intentional discrimination where some accommodation requests were eventually fulfilled and there was no indication that the delays were the result of anything other than negligence). Nor could Plaintiff recover emotional distress damages, even if she were to meet the intentional conduct standard (which she does not). *Cummings*, 596 U.S. 212 (interpreting the Rehabilitation Act, which is the source of damages under the ADA).

Absent intentional conduct, Plaintiff is limited to injunctive relief, which she could not obtain because she has graduated. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Neal v. City of Seattle*, 66 F.3d 1064, 1066 (9th Cir. 1995) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). A plaintiff who cannot reasonably be expected to benefit from prospective relief ordered against the defendant has no claim for an injunction. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364–65 (2011) (plaintiffs whose employment ended after an action was filed had no claim for injunctive relief against their former employer concerning its employment practices).

Plaintiff here cannot reasonably be expected to benefit from prospective relief ordered against UCI SOM. The claim for injunctive relief is moot. Plaintiff is left with a Title II claim that does not allow for emotional distress damages, does not allow for

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS'
MOTION FOR SUMMARY JUDGMENT**

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

special damages because it is not intentional conduct, and does not allow for injunctive relief. Thus, The Regents is entitled to partial summary judgment as to Plaintiff's Title II and Title V ADA claims on this basis.

### D. Plaintiff's State Law Claim Fails As A Matter Of Law And The Court Should Decline To Exercise Supplemental Jurisdiction

Plaintiff's remaining claim for violation of the Equity in Higher Education Act, Cal. Educ. Code § 66270, fails for several independent reasons. As an initial matter, the claim fails because it is subject to a two-year statute of limitations. *Doe v. Univ. of San Francisco,* 685 F.Supp.3d 882, 896 (N.D. Cal. 2023) (applying California's two-year personal injury statute of limitations to Title IX and section 66270). Thus, the only acts which could potentially support this claim occurred after August 24, 2021. And in any event, this Court should decline to exercise supplemental jurisdiction over this remaining state law claim. *Maxon,* 549 F.Supp.3d 1116; *Massey v. Biola Univ., Inc.*, 2022 WL 671021, at *1 (9th Cir. Mar. 7, 2022) ("The district court properly declined to exercise supplemental jurisdiction over Massey's state law claims after dismissing all of her federal claims.").

But even accepting every one of Plaintiff's allegations as true, the post-August 2021 actions do not meet the requirements for a Section 62270 claim. To prove a violation of Section 66270, Plaintiff must prove the following elements: "(1) he or she suffered severe, pervasive and offensive harassment, that effectively deprived plaintiff of the right of equal access to educational benefits and opportunities; (2) the school district had actual knowledge of that harassment; and (3) the school district acted with deliberate indifference in the face of such knowledge." *See Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 935 (C.D. Cal. 2015) (citing *Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 579, 603–05 (2008)).

Here, Plaintiff's fails to establish the first and third elements required for a Section 66270 claim. First, Plaintiff did not suffer harassment that was so severe,

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS'
MOTION FOR SUMMARY JUDGMENT**

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

pervasive, and objectively offensive that it deprived her of access to educational opportunities. To the contrary, the University made every accommodation to get Plaintiff to graduation, and the only timely allegation of race discrimination—relating to the graduation cards—is not objectively offensive. A reasonable person in Plaintiff's position would not consider the conduct severe and pervasive harassment on the basis of race or disability.

Second, the University was not deliberatively indifferent. A school acts with deliberate indifference only where its response to harassment "is clearly unreasonable in light of the known circumstances." *Davis v. Monroe Cty. Bd. of Educ.,* 526 U.S. 629, 648 (1999). This is "not a mere 'reasonableness' standard," but a heightened standard which requires a plaintiff to show the defendant's conduct was "clearly unreasonable." *Id.* at 649. A plaintiff must plead facts to establish "the College made 'an official decision . . . not to remedy the violation.'" *Oden v. Northern Marianas Coll.,* 440 F.3d 1085, 1089 (9th Cir. 2006) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998)).

Cases finding deliberate indifference on the part of the school feature far more serious allegations than the present case. For instance, in *Donovan*, the plaintiff was subjected to extreme anti-gay harassment, including being called "fag," "faggot," "queer," "homo," and "fudge packer." *See Donovan,* 167 Cal.App.4th at 609–19. He was threatened while changing in the locker room, shoved into the lockers, purposefully tripped, and spit on, all because he was gay. *Id.* He complained to teachers and administrators and was told to ignore the harassment. *Id.* The court found this was sufficient evidence to constitute deliberate indifference under the Education Code. *Id.*; *see also L.T. v. Eleanor Murray Fallon Middle Sch.,* 2024 WL 3678014 (N.D. Cal. Aug. 5, 2024) (finding deliberate indifference where the plaintiff was subjected to severe racial discrimination, including being called the n-word multiple

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

21

1    times, being tripped while being called racial slurs, had his glasses broken, and was

2    called a "monkey," without any discipline taken against the perpetrators).

3        By contrast here undisputed facts cannot support a finding of deliberate

4    indifference. The University's response to Plaintiff's reported discrimination is not

5    clearly unreasonable in light of the known circumstances. To the contrary, the

6    University responded to Plaintiff's allegations by *accommodating* Plaintiff—helping

7    her get the extra support she needed to graduate. These actions are not clearly

8    unreasonable and cannot support a finding of discrimination under Section 66270.

9    **IV.    CONCLUSION**

10       The Regents of the University of California did everything possible to help get

11   Plaintiff Jackline Muthoka to graduation after seven years. The Regents cannot be

12   held liable for Plaintiff's own failures on her many national examinations, nor for her

13   poor clinical performance. It is simply not the defendant's fault that Plaintiff did not

14   perform well in medical school, especially where UCI SOM provided Plaintiff every

15   accommodation. For these reasons, and as more fully set forth above, The Regents

16   respectfully requests the Court grant summary judgment in its favor and against

17   Plaintiff Jackline Muthoka on all causes of action.

18

19   Dated: March 6, 2025                Respectfully submitted,

20                                       NYE, STIRLING, HALE & MILLER, LLP

21

22                                       By:   */s/ Alison M. Bernal*
                                               Jonathan D. Miller, Esq.
23                                             Alison M. Bernal, Esq.
                                               Attorneys for Defendants, THE
24                                             REGENTS OF THE UNIVERSITY OF
                                               CALIFORNIA
25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS'
MOTION FOR SUMMARY JUDGMENT**

NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## Certificate of Compliance

The undersigned, counsel of record for Defendant The Regents of the University of California, certifies that this brief contains 6,986 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 6, 2025                    By:  */s/ Alison M. Bernal*
                                             Alison M. Bernal, Esq.

**MEMORANDUM OF POINTS AND AUTHORITIES ISO THE REGENTS' MOTION FOR SUMMARY JUDGMENT**

Nye, Stirling, Hale, Miller & Sweet, LLP
33 West Mission Street, Suite 201
Santa Barbara, California 93101