Jerry Girley, Esquire
Florida Bar No. 35771
The Girley Law Firm, PA
117 E. Marks Street, Suite A
Orlando, FL 32803
Tel: (407) 540-9866
Fax: (407) 540-9867
phyllis@thegirleylawfirm.com
*Admitted Pro Hac Vice*

Jay T. Jambeck (SBN 226018)
LEIGH LAW GROUP, P.C.
582 Market St. #905
San Francisco, CA 94104
Tel:   415-399-9155
Fax:   415-795-3733
jjambeck@leighlawgroup.com

Tania L. Whiteleather (SBN 141227)
Law Offices of Tania L. Whiteleather
5445 Del Amo Blvd. #207
Lakewood, CA 90712
Tel:   562-866-8755
Fax:   562-866-6875
tlwhiteleather@juno.com

*Attorneys for Plaintiff,*
JACKLINE MUTHOKA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKLINE MUTHOKA,<br><br>Plaintiff,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendant. | Case No: 8:23-CV-01333 FWS (JDEX) Assigned to Hon. Judge Fred W. Slaughter (Complaint filed on July 24, 2023)<br><br>**DECLARATION OF JACKLINE MUTHOKA IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   April 24, 2025<br>Time:   10:00 AM<br>Place:   10D |

I, Jackline Muthoka, declare as follows:

1. I have personal knowledge of the facts set forth herein and if called as a witness, I could and would competently testify to these facts.

2. Dean Toohey created a hostile environment for Black medical students at UCI. She demonstrated an animus toward Black medical students in different ways. Sometimes, the bias against Black students manifested with vague, nondescript accusations of Black students being unprofessional. Other times it manifested in more tangible ways, such as criticizing Black student support activities or Dean Toohey refusing to support or find funding for research projects that Black students were spearheading.  I witnessed this occur to me personally and to other students like Faith Njoku and Kelley Butler.

3. In 2017, I was diagnosed with a testing anxiety disorder which affected my ability to take high stakes tests.

4. In 2019, I was diagnosed with Neurodevelopmental disorder related to visual processing.

5. At all times relevant to this lawsuit, the University knew of my learning disability because I was granted, on paper, a reasonable accommodation by UCI in 2017. I was supposed to be provided with time and a half to take exams and a separate room for testing.

6. The University, through the Disability Services Center, had a standard practice of facilitating the process for the medical students taking the National Board of Medical Examiners (NBME) United States Medical Licensing Exam (USMLE) Step 1 Exam, an examination that medical

students are required to pass in order to continue with their education.

7. Around January 2017, I was sent to register my disability and request reasonable accommodation from DSC by Dr. Toohey. During my registration process and subsequent to it, Dr. Toohey repeatedly interfered with the process by misleading the DSC. For example, she emailed Dr. Jan Serrantino ("Dr. Serrantino"), the previous Director of DSC, on January 23rd, 2017, saying, "... I realize that this is a language comprehension issue." On another occasion on February 1, 2017, Dr. Toohey said, "I don't want her language comprehension to set her back." True and correct copies of the emails referenced above are attached to an appendix filed herewith as Exhibit A. At the time, I was appreciative that a dean was attempting to assist me. I did note the mistake regarding my having communication issues but thought that would get corrected. And, after the February 1, 2017 email, I met with Dr. Toohey and let her know that my issue was not language comprehension. I thought that resolved the matter.

8. It was told to me on various occasions that it was far better to have the University submit my documentation to NBME as it was more persuasive. Attached to an appendix filed herewith as Exhibit B is a true and correct copy of an email from UCI employee and psychiatrist Dr. Hurria.

9. On March 1, 2017, (the "March 2017 email") Director of Disabilities Center Dr. Serrantino wrote an email to Dr. Toohey stating, "Per the student's request, I am providing this letter of verification for the purpose of validating the student's disability-related need for accommodations. The student has a professionally documented disability and is currently

registered with the Disability Services Center at UC Irvine." Attached to an
appendix filed herewith as Exhibit C is a true and correct copy of the
March 2017 email from UCI Director of Disabilities Center Dr. Serrantino
to Dr. Toohey.

10. Dr. Toohey continued to label me as having "language issues" and
progressed to associate my language issues to my country of origin. She
created confusion within the DSC and as a result I was denied screening
services from DSC by both disability specialist Ms. Henderson and Dr.
Serrantino that were needed when I applied for reasonable
accommodations to the NBME. For example, I was not evaluated or
referred for psychoeducational evaluation until two years later (2019)
because of Dr. Toohey's "language issue" label and the misdirection she
caused within the DSC.

11. On November 27, 2017, I submitted reasonable accommodations
request packet to the NBME. Ms. Henderson's office crosschecked and
approved all my documentation before she submitted it to the
NBME.

12. On January 2, 2018, I received an NBME denial letter. I asked
Ms. Henderson if she could assist me in submitting an appeal on January 5,
2018. Ms. Henderson emailed me, stating, "Come current on your
documentation," but she did not provide much additional details. Attached
to an appendix filed herewith as Exhibit D is a true and correct copy of the
Henderson email.

13. I returned to Ms. Henderson on February 13, 2018, to further

discuss what documents she was referring to. During the discussion, there was no mention of what documentation she needed, but Ms. Henderson stated that she would contact NBME and advise me on the next steps.

14. On April 19th, 2018, I reached out again to Ms. Henderson to see if she had heard back from NBME about my USMLE accommodations. She emailed me saying "I have not heard back. I can try calling again. When are you taking it?" Attached to an appendix filed herewith as Exhibit E is a true and correct copy of the Henderson email. I again emailed Ms. Henderson on April 30, 2018, asking if she had heard back from NBME.

15. On May 7, 2018, Ms. Henderson replied to my email stating, "...The NBME decision is that your request did not qualify as a disability." Attached to an appendix filed herewith as Exhibit F is a true and correct copy of the Henderson email. I then took the USMLE Step 1 exam in May 2018 without reasonable accommodations and failed for the first time.

16. As late as June 21, 2018, Dr. Toohey was still referring to my "language issue" as the reason for NBME's denial of my accommodations in the email where she misrepresented that she had spoken extensively with NBME. Attached to an appendix filed herewith as Exhibit G is a true and correct copy of the June 21, 2018 email.

17. The summer of 2018 was particularly busy and stressful for me. Dr. Toohey critically interfered with my surgery rotation (a notoriously difficult rotation with students working about 80 hours a week and studying for their end of rotation exam after 12 hour shifts every day). For example, Dr. Toohey repeatedly emailed me to meet with her, requiring multiple meetings that significantly detracted me from my

surgery rotation studies for the shelf examination and preparation for retaking Step 1 of the USMLE. I was inundated with work for the surgery rotation and Dr. Toohey continued to insist that I had language issues – even requiring that I pay $5,225 for an unwarranted program to prepare for the Step 1, even though I kept pushing back on that issue.

18. In large part as a result of Dr. Toohey's email stating the decision from NBME was final, I did not further press the accommodations issue at that time and took the USMLE Step 1 in October 2018 without accommodations and failed for a second time. This failure had cascading results for me, it nearly led me to be dismissed from the program, caused me to lose my housing and had other significant impacts. It also caused my academic record to be less competitive than my peers and denied me opportunities to more lucrative areas of medical practice like Anesthesiology.

19. According to the school policy, "any student who fails Step 1 examination a second time will be immediately removed from the third-year curriculum and placed on a specially tailored board preparation plan as determined by the Office of Student Affairs." A true and correct copy of the handbook is attached to an appendix filed herewith as Exhibit H.

20. In late 2018, I learned for the first time that I should have received and submitted a psychological evaluation to NBME in order to have a good chance of obtaining an accommodation. No one at UCI had advised me of that previously even though I was told my application should go through UCI.

21. In December 2018, Dr. Ashley Selva-Rodriguez, SOM learning

specialist, was surprised that I didn't get a psychoeducational evaluation for NBME accommodations. She asked me how the DSC and the school determined how much extra time I needed to take my exams and what protocols they were following. I had no answers for her. In her email on December 13, 2018, she wrote to me " ...I reached out to my colleagues and they suggested the following: 1) Additional Assessments: Along with the standard evaluation tools used, you may consider a neuropsychological assessment to help uncover other opportunity gaps." A true and correct copy of the December 2018 email is attached to an appendix filed herewith as Exhibit I. That is when I was first made aware that I needed a psychoeducational evaluation in order to receive accommodation from NBME. Previously, I was told my application was complete per email correspondence with Rosezetta Henderson, Senior Disability Specialist.

By this time, I had two Step 1 exam failures and it had been over one year since I first submitted my NBME accommodation application. I had cross-checked with Ms. Henderson every time I had submitted my application to the NBME.

22. In December 2018 after receiving Dr. Selva-Rodriguez's email, I emailed Ms. Henderson saying: "I was wondering what the process is to get examined regarding my exam issues. Do you know how long the process takes? How much does it cost? When can I get it done...?" Ms. Henderson replied to the Plaintiff's email saying, "...I believe you are referring to a comprehensive psychoeducational evaluation, but I want to be clear" on another email later that day, Ms. Henderson emailed Plaintiff saying, "...

You inquired about a comprehensive psychoeducational evaluation. I have included Dr. Toohey on this email per your request. As mentioned to you over the phone, DSC does not conduct assessments. There are two local offices that many students go to, and we have had solid reports from." True and correct copies of the emails are attached to an appendix filed herewith as Exhibit J.

23. This email indicates that Ms. Henderson knew I needed a psychoeducational evaluation, knew where she could send me for assessment, and had never brought this up for more than a year. According to the School of Medicine policy that applies to students with disabilities and seeking accommodations, it states "...DSC offers initial disability screenings to students who suspect their difficulty in the academic setting may be related to a disabling diagnosis..." A true and correct copy of the handbook is attached to an appendix filed herewith as Exhibit K. However, Ms. Henderson's email is contradictory to school policy which says that DSC does offer initial disability screenings to students. In fact, the DSC never offered me  such screening as a student at the university that would have shown that I have an additional learning disability.

24. After the assessment, I qualified for accommodation based on the results from the psychoeducational evaluation that confirmed that I have a Neurodevelopmental disability related to visual processing.

25. On January 19, 2019, Dr. Toohey told me to consider going back to Africa to study as I probably would not make it through medical school and US medical Residency. She said this to me several times, thereafter, including April of 2019 when my university housing was cancelled. At this time, I

DECLARATION OF JACKLINE MUTHOKA
(Case No. 8:23-CV-0133 FWS)

developed serious concerns that Dr. Toohey was not operating in my best interests.

26. The NBME ended up approving me with partial accommodation on 7/24/2019 but the process to request further accommodations was paused as the university had now placed me under investigation. I was instructed to prepare for the Promotions and Honors (P&H) Committee hearing which was delayed multiple times and held on March 9th, 2020. I had to sue NBME to obtain my accommodations to which I am entitled to as a result of the previous subsequent denials.

27. In October 2019, I discovered that the NBME does not make accommodation decisions over the phone. I emailed Ms. Henderson after finding out this on 11/4/2019 saying, "I was wondering if you can email me the decision email/letter that you received from NBME stating that my request did not qualify as a disability from the email you sent me on May 07, 2018, attached below." However, Ms. Rosezetta Henderson replied to my email on 11/7/2019 saying "… I was not contacted by the NBME directly. That was from our conversation about the denial letter you received." …" A true and correct copy of the email is attached to an appendix filed herewith as Exhibit L. In her prior email, Ms. Henderson misinformed me about my NBME accommodations status by implying she had spoken with NBME about my application and that NBME decision was that my application did not qualify as a disability.

28. On May 26, 2020, I submitted a complaint to the UCI Office of Equal Opportunity and Diversity (OEOD) regarding the race/national origin and disability discrimination that I had been subjected to as of that time. A true

and correct copy of the Complaint is attached to an appendix filed herewith as Exhibit M.

29. On January 27, 2021, OEOD issued its final report on my complaint. A true and correct copy of the report is attached to an appendix filed herewith as Exhibit N.

30. On January 30, 2021, I requested to appeal the findings. A true and correct copy of the email is attached to an appendix filed herewith as Exhibit O.

31. On February 3, 2021, I received a response that no appeal was available, but that I could meet or submit a statement regarding OEOD investigation to the school provost. I submitted a written statement to the provost on February 15, 2021. A true and correct copy of the email is attached to an appendix filed herewith as Exhibit P.

32. On July 21, 2021, I filed a complaint with the United States Department of Education, Office of Civil Rights. A true and correct copy of the complaint is attached to an appendix filed herewith as Exhibit Q.

33. My complaint was dismissed on September 14, 2021 as purportedly untimely.

34. On October 26, 2021, my attorney filed an appeal of the dismissal with OCR Denver. A true and correct copy of the appeal is attached to an appendix filed herewith as Exhibit R.

35. No decision has been received from OCR on the appeal to date.

36. I had no knowledge that Dr. Toohey was in such a condition that she might pass away. UCI never provided notice to me that Dr. Toohey had passed away. I was no longer a student at UCI at the time Dr. Toohey passed away.

37. On April 9, 2023, while I was taking the first day of the two-day Step 2CK, I received an intimidating email from Dr. Wiechmann. A true and correct copy of the email is attached to an appendix filed herewith as Exhibit S.  This email caused me additional stress and anxiety and I received a lower score on the test than I had been receiving in my practice examinations for the Step 2CK. This lower score impacted on which residency programs I was competitive at and thus affected me economically.

38. I suffered economic damages as a result of the delays in my schooling, the Step 1 test failures and the lowered score on the Step 2CK. I sent out multiple applications for residencies that received no response. Some of those were for Anesthesia residencies that pay a higher salary than the position I accepted. I have lost earning ability as a result. I also had to pay money out of pocket as a result of the discriminatory treatment, including $5225 for a program that I did not require. I also had to pay rent to live to attend the program.

39. A true and correct copy of the excerpt of the 2016-2017 handbook related to requirements of the MD degree is attached to an appendix filed herewith as Exhibit T.

40. A true and correct copy of my retaliation complaint filed on August 16, 2022 is attached to an appendix filed herewith as Exhibit U.

41. A true and correct copy of the report on my retaliation complaint dated November 3, 2022 is attached to an appendix filed herewith as Exhibit V.

42. Defendant refused to recalculate my time to take the Step 2CK and I was forced to take it early with no dedicated study time after my classes ended as other students had the opportunity to do. As a result, I was put in

unequal circumstances and failed the Step 2 CK.

43. Attached to an appendix filed herewith as Exhibit W is a true and correct copy of an email to Shannon Toohey regarding my Step 2 CK test date.

44. I completed a postbaccalaureate program and Conditional program (in addition to my Bachelor's degree) at UCI and achieved a more than the average GPA for my 2016 class. Additionally, my MCAT scores were not reflective of my abilities as I was not provided reasonable accommodations and was not tested despite being at UCI for both programs and informing the school.

45. In February 2017, I requested the wellness officer to submit my documentation to DSC not a form. The wellness officer submitted my paperwork to the DSC.

46. UCI administers, proctors and facilitates the entire process for NBME shelf exams. NBME is the test sponsor. NBME administers, proctors and facilitates the USMLE step examinations.

47. There are no records of me requesting reasonable accommodations to the NBME for Shelf exams. Reasonable accommodations are requested to the NBME for USMLE step exams only.

48. A student can live on campus under three circumstances:

a.) Enrolled at UCI

b.) On approved university Leave of Absence

c.) If the leave of absence is more than one academic year, a letter of support is required from the student's department.

49. Dr. Toohey sent a letter that included untrue, misleading and discriminatory statements to the housing leadership *after* the housing

department had made a final decision to vacate me.

50. I was not seeking an extension for housing but rather needed university housing as I could not afford local housing.

51. For Surgery clerkship, Per school handbook policy, I had made arrangements with Course Director Dr. Elefenbein and the associate Dean of Student affairs, Dr. Julianne Toohey to re-take the Surgery shelf exam after Step 1 exam, but these two leaders did not communicate with Curricular Affairs office.

52. I was not on academic probation at the time of the notice. The notice was provided late and after I requested it from the Ombudsman's office.

53. I did not pass my pediatric and Surgery shelf exams because of the stress created by UCI. OEOD released an unfair and unjust investigative report around my pediatric and Surgery exam time which impacted my ability to study and focus.

54. My reasonable accommodations request for surgery shelf exam in 2021 was due to undue stress created by UCI's unfair OEOD investigation that aggravated my anxiety disorder. My mental health provider provided letters to Ms. Henderson, but she denied my request. Ms. Henderson requested multiple letters from my mental health providers, which I provided, but she unlawfully denied me reasonable accommodation stating that my request would alter the school curriculum, but did not say how. However, her supervisor, Ms. Karen Andrews, overturned that decision without additional documentation, but it was too late and my accommodation was provided at the last minute and the school demanded that I take my test last minute. This unnecessary delay, denial, appeal and grant accommodation was the norm after I filed OEOD

investigation. This impacted my preparation.

55. The P&H Committee had not accurately calculated Plaintiff's six year graduation time-lime despite multiple requests and this reminder was based on inaccurate information.

56. My six-year graduation timeline was inaccurately calculated-I was not seeking an MD degree alone, I was admitted to the MD, MBA program. MD, MBA program has a seven-year graduation time-line and I was in track for that time-line. Six-year graduation timeline became an issue because UCI rescinded my MBA acceptance. Even then, given the issues created by Dr. Toohey within DSC and NBME, issues created by Ms. Henderson and NBME, Covid-19 global pandemic, I had not exhausted six-year MD graduation period.

57. The extension was only granted after significant back and forth, another OEOD complaint in 2022 and a letter from my lawyer to have the date properly calculated. The belated approval forced me to take her USMLE step 2CK with only less than 3 weeks of dedicated study time instead of my previously more than 8 weeks on my schedule. This is based on the inaccurate calculation the school had made at the time.

58. I disagreed with the calculation and that I was put into a position of constantly having to catch up due to the initial and ongoing discrimination and then retaliation.

59. In April 2023, UCI acknowledged that I was qualified and had met the requirements of my MD degree after multiple back and forth emails since they had withheld my graduation status stating that I needed a P&H approval to graduate. Next, graduation was in May and I had less than 2

weeks to prepare for the graduation and have my family present. I
requested the school to allow me to walk in 2024 since I did not have time
to invite her family living abroad to the graduation ceremony. The school
informed me that my graduation materials were ready for me in May 2023
and denied me the request. I was in shock to receive a yellow, handwritten
graduation card while everyone else received a white professionally typed
card. I was also given a 2022 graduation gown with the tassel switched to
2023 less than 30 minutes before the graduation ceremony began. My
achievements were not recognized in the ceremony program.

60. The school sponsored Michael Lo Basso's trip to Kenya despite Kenya
being listed on the State Department's list of travel advisory in 2019.
Michael Lo Basso was a non-black, non Kenyan Male medical student and
the team lead for the Kenya trip in 2019 which was my position in 2017.

61. On April 25, 2019, Dr. Toohey sent an email referencing my language
issues to UCI housing. A true and correct copy of the email is attached to
an appendix filed herewith as Exhibit X.

I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.

Date: March 27, 2025

*Jackline Muthoka*
JACKLINE MUTHOKA