THE GIRLEY LAW FIRM P.A.

October 26, 2021                     <u>SENT VIA CERTIFIED MAIL</u>

Department of Education
Office of Civil Rights
400 Maryland Ave. SW,
Washington D.C., 20202

**RE:**     **JACKLINE MUTHOKA**
           **APPEAL OF DISMISSAL**

Dear Secretary Cardona:

Please accept this correspondence as the above-named person's appeal from the dismissal of her complaint which was entered on September 14, 2021.

<u>Summary of Initial Complaint</u>

Ms. Muthoka filed a complaint of unlawful discrimination in which she alleged that she was subjected to ongoing discrimination that began in the 2016/2017 school year. The Complaint further alleged that said discrimination was ongoing. The Complaint is attached to this appeal as Exhibit "A". The initial complaint raised by Ms. Muthoka is that she was discriminated against in the terms and conditions of her education, as it relates to the medical school denying funding for a research project that she planned and organized. The School of Medicine has a regular practice of financially supporting funding to student guided research projects in foreign countries because such projects provide students with opportunities for practical hands-on learning and these projects provide underserved communities with needed medical services. In the 2016/2017 school year the

Complainant, researched, organized and attempted to implement a project in Kenya. She went through all of the proper channels to obtain approval of her project but the School of Medicine denied the approval, citing international security concerns. However, the School of Medicine inexplicably approved and funded a similar project which was headed up by a Chinese male medical student. That project provided medical services to people living in Kenya.

It is the regular practice of the School of Medicine to assist students with disabilities in obtaining the accommodations that they require to be successful in taking and passing National Examinations such as the Step 1 Exam. As a person with a known disability, she requested such assistance from the school well in advance of taking the in-school exams. The Disability Service Center is tasked by the School of Medicine with identifying students with disabilities and with developing individualized plans that are catered to the student's specific disability. The Disability Service Center fully recognized the Complainant's accommodation needs and generally had agreed to ensure that she would be given more time to take exams. The DSC, however, had no control over the NBME. The Associate Dean was responsible for facilitating the process of ensuring that medical students with disabilities receive the accommodations they require to be successful on national exams. The School of Medicine regularly provided such support to other non-Black, non-African students. In this case however, the Associate Dean unreasonably drug her feet for no objective reason. Ms. Muthoka made repeated request for assistance to lower the stress and anxiety level that was already mounting in anticipation of taking such an important exam. Resultantly, she failed the Step 1 Exam. In turn, she was placed on academic probation and she was required to pause her studies until such time that she was able to pass the exam.

Thereafter, as the attached complaint discussed in greater detail, the School of Medicine retaliated against her for her participations in protected activity and it repeatedly engaged in undue

delay as it relates to providing Ms. Muthoka with requested accommodation(s). These baseless denials, unreasonable delays and untimely reversals contributed greatly and unnecessarily to Ms. Muthoka's stress and anxiety level. The increased stress level made it more difficult for her to prepare for exams and less likely that she would be successful. As stated in the initial complaint of discrimination, the matter is ongoing and has never been resolved to the satisfaction of Ms. Muthoka. Ms. Muthoka, exercised her right to file an internal complaint with the Office of Equal Opportunity and Diversity (OEOD). Regrettably, that office did not conduct a thorough and complete investigation. Instead, OEOD took an inordinate amount oof time to complete the process and made sure that it drafted investigative findings to completely absolve the university of all wrongdoing. Therefore, it was with a sense of desperation that Ms. Muthoka turned to the Department of Education Office of Civil Rights in hopes that she would finally receive a neutral and exhaustive review of her claim of discrimination.

Legal Authority and Analysis

    Section 504 of the Rehabilitation Act prohibits discrimination against otherwise handicapped individuals in "any program or activity receiving Federal financial assistance ...." 29 U.S.C.A. §794. The Rehabilitation Act does not, however, specify the remedies, procedures and rights of an aggrieved party. Instead, Section 505 provides that the "remedies, procedures, and rights" of a handicapped individual injured under the Act are found in Title VI of the Civil Rights Act of 1964. 29 U.S.C.A. §794a See Jones v. Metro. Atlanta Rapid Transit Auth., 681 F.2d 1376, 1377 (11th Cir. 1982).

    As a general matter, courts eschew narrow interpretations of remedial statutes. Instead, remedial statutes are normally accorded broad construction in order to effectuate their purpose. Peyton v. Rowe, 391 U.S. 54, 65, 88 S. Ct. 1549, 1555, 20 L. Ed. 2d 426 (1968); Ayers v.

Wolfinbarger, 491 F.2d 8, 16 (5th Cir. 1974). Jones v. Metro. Atlanta Rapid Transit Auth., 681 F.2d 1376, 1380 (11th Cir. 1982).

The Code of Federal Regulation designates and thereby authorizes the Department of Education Office of Civil Rights to investigate allegations of Title VI of the Civil Rights Act of 1964 as well as other Civil Rights Statutes. The relevant portions of 34 CFR §100.7 (c) reads as follows:

> ***Investigations.*** The responsible Department official or his designee will make a prompt investigation whenever a compliance review, report, complaint, or any other information indicates a possible failure to comply with this part. The investigation should include, where appropriate, a review of the pertinent practices and policies of the recipient, the circumstances under which the possible noncompliance with this part occurred, and other factors relevant to a determination as to whether the recipient has failed to comply with this part.

Basis for Reversal of Dismissal

### a. The Dismissal Letter misstated the facts

The investigator indicated that he was dismissing the majority of Ms. Muthoka's claims because they are allegedly untimely. He further, inaccurately stated that Muthoka did not check the box that indicated that the matter was ongoing. This statement is factually correct because Ms. Muthoka attached a narrative to her initial complaint, that discussed in considerable detail, the different manners in which she was discriminated against since she enrolled at the School of Medicine. Most importantly, the first paragraph of the narrative, which is incorporated into the complaint form by reference, states very clearly that the discrimination is ongoing.

It stands to reason, therefore, if the charge of discrimination was dismissed in large part due to an erroneous statement of the facts, that it should be re-opened. Further, the filing of a complaint of discrimination within 180 days of the alleged act of discrimination is not a statutory, or jurisdictional requirement. Rather, it is a procedural requirement based upon the rules that the

Department of Education set forth. As such, even if the complaint was untimely, and it wasn't, the dismissal could be reversed for good cause shown. Here, the good cause shown is that the Complainant clearly stated that the discrimination and retaliation was ongoing, thus it was timely.

The big picture concern the Complainant has is there seems to be a propensity to find justifications to dismiss and thereby dispose of the meritorious civil rights complaints as soon as possible. And to that end this Agency provided itself with a laundry list of non-substantive reasons for dismissing a complaint such as failure to timely sign the consent form. In this case the Complainant signed and sent in a consent form along with her initial complaint. Withstanding this, the investigator notified the Complainant that her charge of discrimination would be administratively closed if the consent form was not received in two weeks. The notification was done via email, as opposed to telephone. The undersigned has personally experienced dismissals of meritorious discrimination complaints on that basis alone, with respect to other cases. In those instances, there was no communication regarding the consent form and there was no communication that the complaint had actually been dismissed. The Agency has to keep in mind the major public policy reasons for its very existence and comport itself accordingly.

Congress included an explicit provision in §602 of Title VI that requires that any administrative enforcement action be "consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken." 42 U. S. C. §2000d-1. Although an award of damages would not be as drastic a remedy as a cutoff of funds, the possibility of large monetary liability for unintended discrimination might well dissuade potential non-discriminating recipients from participating in federal programs, thereby hindering the objectives of the funding statutes. See 633 F.2d, at 261-262 (opinion of Meskill, J.) Guardians Ass'n v. Civil Serv. Comm'n, 463 U.S. 582, 601-02, 103 S. Ct. 3221, 3232 (1983).

### b. The Dismissal Letter is ambiguous and therefore does not comport with basic notions of Due Process

A second and equally compelling reason to reopen this complaint is that the investigator did not specify which facts, or the lack thereof, that he relied upon to determine Ms. Muthoka's claims, in their entirety, or individually, do not state valid claims of discrimination. All recognized notions of due process suggest that the Complainant is entitled to a minimal explanation regarding how the investigator reached his conclusions. The conclusory statement that the Agency is unable to conclude the allegations made would be a violation of the law, shines no light on what if anything, the Complainant could have added to properly state a claim of discrimination.

The Complainant's allegations do in fact adequately state a claim of discrimination. Her charge of discrimination alleges that she was treated differently because of her race, her national origin and her disability. The charge also alleges that she was subjected to retaliation because of her participation in protected activity. There are four elements that an individual must plead to state a prima facie claim of discrimination. The charge of discrimination covers each of these elements. The elements of a prima facie case of discrimination under Title VI and Title VII are the same, and courts regularly use Title VII caselaw to analyze Title VI claims. *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 921 (7th Cir. 2007); *see also Ga. State Conference of Branches of NAACP v. State of Ga.*, 775 F.2d 1403, 1417 (11th Cir. 1985); *Sirpal v. Univ. of Miami*, No. 09-22662-CIV, 2011 U.S. Dist. LEXIS 80908, 2011 WL 3101791, *8 (S.D. Fla. July 25, 2011) ("Title VI claims are analyzed in the same manner as claims brought under Title VII."). In a disparate treatment case, a complainant establishes a prima facie case of discrimination by showing that (1) she was a member of a protected class, (2) she was, (3) she suffered an adverse action, and (4) someone outside of the complainant's protected class was treated more favorably than she was. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002). See Glover v. Dist. of Trs. of Palm

Beach State Coll., No. 9:19-CV-80968, 2020 U.S. Dist. LEXIS 104557, at *3-4 (S.D. Fla. Jan. 23, 2020).

To establish a prima facie case of retaliation under the FMLA, a plaintiff must show that (1) the employee engaged in statutorily protected conduct, (2) she suffered an adverse employment action, and (3) there is a causal connection between the two. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010). If a plaintiff establishes a prima facie case of retaliation, then the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse action. *Bartels v. S. Motors of Savannah, Inc.*, 681 F. App'x 834, 838 (11th Cir. 2017). See also Moore v. Cobb Cty. Sch. Dist., No. 1:19-cv-4174-MLB, 2021 U.S. Dist. LEXIS 155516, at *23-24 (N.D. Ga. Aug. 18, 2021).

Once the Complainant stated a prima facie claim of discrimination it was incumbent on the Agency to at least conduct a substantive investigation. The Agency should not have weighed the evidence before it made a determination to conduct an investigation. After seeking and obtaining a reply from the Respondent, then and only then should the Agency have made a decision regarding whether the complaint evinced a violation of the law.

### c. Refusal to investigate a claim of discrimination frustrates the very intent of Congress and it violates 34 CFR 107 (c).

The plain language of 34 CFR 107(c) makes it quite clear that the default expectation of the rule is that once the Agency is presented with a prima facie claim of discrimination it will conduct an investigation. This requirement must further be construed through the lens of congressional intent as discussed supra in the *Guardians Ass'n* case. The Agency is not permitted to frustrate the intent of Congress by construing the requirements of the law in such a narrow way. Title VI, The Rehabilitation Act and the ADA are remedial statutes. As such they are to be interpreted very broadly so as to provide coverage as opposed to exclude persons from coverage. As it stands, only

a small percentage of the complaints presented are actually investigated. The Complainant concerns here are bolstered by the fact that the Department of Education has been subject to lawsuits filed by other complainants who had the very same concern or a similar concern as the complainant.

Conclusion

For all of the above stated reasons the Complainant respectfully request that the Department reverse its decision to dismiss the complaint without conducting a proper investigation.

Respectfully,

Jerry Girley
Attorney at Law
Representative for Complainant

cc:

US Representative Katie Porter
US Senator Dianne Feinstein
National Association for The Advancement of Colored People (NAACP).