**University of California, Irvine**  Office of Equal Opportunity and Diversity

November 3, 2022

**Jackline Muthoka**
**Medical Student**
**UCI School of Medicine**

Dear Ms. Muthoka,

I am writing to inform you that the Office of Equal Opportunity and Diversity (OEOD) has thoroughly reviewed your concerns regarding retaliation and discrimination.

On May 20, 2020, you submitted a signed request for a formal investigation alleging discrimination and/or harassment based upon citizenship, color, disability, national origin as well as retaliation by Dr. Julianne Toohey, Former Associate Dean for Student Affairs, UCI School of Medicine. OEOD initiated investigation into your complaint on July 2, 2020 and concluded it on January 25, 2021. Upon conclusion of the investigation, OEOD found that preponderance of the evidence did not support your allegations.

On August 16, 2022, you submitted a second signed request for a formal investigation regarding retaliation and discrimination based on race. On September 7, 2022, OEOD met with you to gather more information about your complaint. In both your written request and meeting with OEOD, you alleged that Dr. Shannon Louise Toohey, Assistant Clinical Professor, Emergency Medicine, and Chair of the Promotions and Honors Committee at the School of Medicine; Dr. Warren F Wiechmann, Associate Dean, Clinical Science Education & Educational Tech, School of Medicine; and Rosezetta Nicole Henderson, Senior Disability Specialist, Disability Services, engaged in retaliation against you based on your previous report of Prohibited Conduct and/or participation in the aforementioned investigation conducted by OEOD in 2020 – 2021 and engaged in discrimination against you based upon your race. OEOD has performed an assessment of your concerns to determine whether these allegations, on their face, constitute an act of Prohibited Conduct under University policy. For purposes of this letter and consistent with University policy, you are referred to as Complainant, Dr. Shannon Louise Toohey is referred to as Respondent 1, Dr. Warren F Wiechmann is referred to as Respondent 2, and Rosezetta Nicole Henderson is referred to as Respondent 3.

According to the *UCI Guidelines on Discrimination and Harassment*, retaliation includes threats, intimidation, reprisals, and/or adverse employment or educational actions against a person based on their report of Prohibited Conduct or participation in the investigation, report, remedial, or disciplinary processes provided for in these guidelines.

In your formal complaint you alleged that Respondent 1 engaged in retaliation against you by inaccurately calculating the time COVID-19 pandemic allegedly interfered with your ability to schedule Step 1 United States Medical Licensing Examination (USMLE)[1] and by refusing to add

---

[1] *According to USMLE*, Step 1 exam assesses whether "students can apply important concepts of the sciences basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy." The exam is scheduled with and administered at Prometric Centers. According to *UCI School of*

that time to your degree completion requitements deadline. You explained that you were unable to take your Step 1 examination by the May 2020 deadline due to the Stay at Home Order[2] issued by Governor of California Gavin Newsom on March 19, 2020 and were only ultimately able to take the examination on October 12 and 13, 2020. Thus, you expressed your belief to Respondent 1 that the time between March and October 2020 should not be counted towards your degree completion requirements deadline[3]. Respondent 1 also allegedly engaged in retaliation against you by altering your clerkship and subject examination schedule in 2022. You alleged that Respondent 1's alterations interfered with your ability to study for the Step 2 examination causing a negative effect on your examination score and to your application for medical residency.

You explained that Respondent 1's actions constitute retaliation because Respondent 1 was aware of your previous OEOD complaint filed against Dr. Julianne Toohey by virtue of working in the same Emergency Medicine Department. Furthermore, you alleged that Respondent 1 is friends with Dr. Megan Osborn, Associate Dean of Students, School of Medicine, and Respondent 2, both of whom were involved in the previous OEOD investigation. You also noted that Dr. John Fox, Professor and Chair, Emergency Medicine, is on the Promotions and Honors Committee together with Respondent 1 and was involved in the previous OEOD investigation.

OEOD assessed your complaint based on the information you provided to OEOD electronically and during the meeting as well through a review of the previous OEOD complaint case file. Based on this review, OEOD has identified the following relevant facts. You matriculated into the School of Medicine in August 2016 and your original degree completion date was in August 2022. In the fall of 2017, you initiated the process of requesting accommodations with the National Board of Medical Examiners (NBME)[4] which reviews such requests for USMLE Step 1 examinations. At the end of your second year, you took the Step 1 examination on May 7 and October 30, 2018 but failed each time. During that time, you reported that your NBME accommodation request was denied. Overall, your NBME reasonable accommodation was denied twice, partially granted after a second appeal, and ultimately granted after a third appeal in August 2020. You were subsequently placed on Personal Leave for most of 2018, 2019, and 2020 pursuant to *UCI School of Medicine Exam Administration and Procedures Policy*.[5] The Promotions and Honors Committee subsequently scheduled a disciplinary hearing regarding your matter for January 2020, which was later postponed to March 2020. Following the hearing, you were placed on academic probation until you passed the Step 1 examination and were given by May 3, 2020 to comply with the examination requirement. On March 19, 2020, as you noted, Governor Newsom issued a Stay at Home Order that resulted in all non-essential operations, including Prometric test centers,

---

*Medicine Exam Administration and Procedures Policy*, students are required to take Step 1 exam after completing their second-year curriculum.
[2] For full text see https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf
[3] According to the *School of Medicine Requirements for the MD Degree*, "students have a maximum of six academic years ending at the conclusion of the School of Medicine Spring term of the sixth academic year for degree completion excluding time spent on an approved academic leave of absence."
[4] NBME Reasonable Accommodation Request can be found here https://www.usmle.org/sites/default/files/2021-09/Accommodations_Request_Form.pdf
[5] According to *UCI School of Medicine Exam Administration and Procedures Policy*, "if a student is not able to meet the deadline to take USMLE Step 1, they will be placed on a Personal leave… To be taken off of Personal Leave and return to their course of study, the student must pass USMLE Step 1 by their third attempt, within 24 months of the end of that student's second-year curriculum, whichever comes first, provided that they have fulfilled all other curricular requirements."

temporarily closed. On April 24, 2020, you contacted Dr. Donald Forthal, then Chair of the Promotions and Honors Committee, and advised them you would not be able to take Step 1 examination by the May 3, 2020 deadline. You requested an extension of the deadline by August 2020 as a "placeholder," and were given until August 30, 2020 to pass the examination. Although you stated that you expected that you "would not be held accountable for the challenges associated with the COVID-19 pandemic," you did not provide evidence or indication that Dr. Forthal and the rest of the Committee offered you any extensions for your degree completion deadline, which was still August 2022 at the time. On August 6, 2020, you received accommodations from NBME for your Step 1 examination, and on August 10, 2020, you informed Dr. Forthal. In your email correspondence with Dr. Forthal, they reminded you that since your last communication with them, you had not requested an additional extension beyond August 30, 2020. However, once you informed Dr. Forthal that you were able to schedule your Step 1 examination for October 12 and 13, 2020 (two days pursuant to your accommodation), Dr. Forthal informed you that you were expected to take the examination on those days. You ultimately took and passed your Step 1 examination on those days. You stated that you resumed classes in December 2020.

According to the email communication you provided, in March 2021 you contacted Respondent 1, who replaced Dr. Forthal as the Chair of the Promotions and Honors Committee, via email to discuss several challenges you were facing such as the necessity to schedule more than the approved number of electives and inability to complete your program requirements by August 2022 among others. You noted that you had not extensively interacted with Respondent 1 or taken their courses prior to that communication. You inquired with Respondent 1 as to why August 2022 was your deadline given that you were only able to schedule your Step 1 examination for October 12 and 13, 2020. You further explained that you believed that the pandemic caused that delay for you and your graduation deadline should be extended by eight months. In April 2021, Respondent 1 informed you that the Promotions and Honors Committee extended your graduation deadline by twelve weeks to account for the time no students were able to take Step 1 examination due to Prometric centers closures. Respondent 1 indicated that although the School had evidence that other students were able to take the examinations as early as May 2020, the Committee was willing to consider that you were not able to schedule the exam between March and June 8, 2020. Thus, Respondent extended your degree completion requirements date to October 24, 2022. In September 2021, you contacted Respondent 1 via email to revisit your graduation extension and stated that you believed it should be extended by seven months because you took your Step 1 examination in October 2020. Respondent 1 reiterated to you that the granted extension for graduation was based on the time that all students were unable to take the examination and not the time you chose to schedule the exam. Respondent 1 also informed you that Dr. Forthal's previous approval to extend you Step 1 examination date to August 2020 was not an agreement to extend your six-year degree completion requirement.

On January 31, 2022, you contacted Respondent 1 via email stating that you intended to take your Step 2 examination[6] by December 1, 2022, which would be beyond your required graduation deadline. In their response, Respondent 1 reminded you that you had already been given an extension to take Step 2 examination from December 1, 2021 to February 23, 2022. Respondent 1 also granted you another extension to your degree completion requirement to account for two weeks of sick leave you took. Thus, your degree completion date was then extended to November

---

[6] According to *UCI School of Medicine Exam Administration and Procedures Policy,* students are required to attempt to take Step 2 examination by December 1 of the their fourth year in the program.

6, 2022. Respondent 1 also gave you an extension to retake your Family Medicine clerkship, that you previously were unable to complete due to illness and provided you with new examination date for that clerkship, which you have alleged was an act of retaliation.

In April 2022, you contacted Respondent 1 via email to request to recalculate your graduation date. In July 2022, Respondent 1 again extended your graduation deadline to December 28, 2022, to account for the second extension the Promotions and Honors Committee gave you to take you Step 1 examination (from August 30, 2020 to October 12, 2020). You continued contacting Respondent 1 throughout July requesting to recalculate your graduation date further, and on July 26, 2022, Respondent 1 reminded you of the program completion requirements that require students to graduate within six years. Respondent 1 also reminded you that the policy allows for an additional two years for unexpected leaves. Respondent 1 then informed you that you would not be given further graduation extensions. Overall, Respondent 1 extended your degree completion requirement by approximately four and a half months, instead of seven to eight months as you requested.

Based on the above, it does not appear that Respondent 1's actions were in retaliation to your Protected Activity. Although Respondent 1 is related to Dr. Julianne Toohey, works in the Emergency Department together with other faculty members involved in the previous OEOD investigation, and may have been aware of the investigation, Respondent 1 was not involved in that investigation in any capacity and you only initiated contact with Respondent 1 after the conclusion of the investigation when Respondent 1 became the Chair of the Promotions and Honors Committee. It is evident that you contacted Respondent 1 once you identified challenges with the degree completion requirements and Respondent 1 afforded you multiple extensions to your graduation deadline as well as opportunities to complete your clerkship.

You did not present evidence that the alteration of your schedule to extend your ability to retake the Family Medicine clerkship and examination was an act of retaliation. Rather, the evidence supports that Respondent 1 altered your schedule to allow you to retake a required clerkship. The information reviewed does not support that this extension was an adverse action but rather an act of support for your ability to graduate.

OEOD next examined whether Respondent 1's denial of your request for a seven-month extension to your degree completion requirement constitutes retaliation. The COVID-19 pandemic created challenges for you as well as other students when taking the Step 1 examination, however this was not your first attempt to take the examination. Although you were granted two extensions to take your Step 1 examination by Dr. Forthal, there were no explicit discussions or documentation that these extensions would then be added to your degree completion date. In addition, while it is accurate that the state-wide Stay at Home Order interfered with your ability to take and schedule your Step 1 examination, by March 19, 2020, when it took effect, you were still in the process of obtaining NBME accommodations. Overall, it is evident that Respondent 1 offered you multiple extensions and changes to your schedule to afford you opportunities to be able to complete your degree requirements. While Respondent 1 did not agree to your request for a seven-month extension, the fact that there is a degree completion requirement that applies to all students and you had already requested and received multiple extensions throughout your candidacy do not support your allegations that the denial was made in retaliation.

Based on the above evidence, OEOD has determined that the alleged conduct does not state an actionable complaint of retaliation for investigation under the *UCI Guidelines on Discrimination and Harassment*.

Although you did not explicitly allege this in your complaint form, during your meeting with OEOD, you also alleged that Respondent 2 engaged in retaliation against you by implementing "new rules" that would govern your standardized subject (also known as "shelf") examination processes so that you would fail your examinations.[7] The "new rules" allegedly prohibited you from pausing the examination timer when taking breaks contrary to the practice you had been adhering to before. You explained that prior to the "new rules" you were "pausing the timer" during examinations while taking breaks and School administrators had not raised concerns about that practice. You also noted that in 2017, UCI Disability Services Center (DSC) granted you accommodations that allowed you to take 1.5 times more than the allotted time to take your shelf examinations. You alleged that after you took longer breaks during the shelf examination and paused the timer, Respondent 2 sent you an email on November 23, 2021, stating that you took over 26 minutes for breaks in addition to your 1.5 extension to examination duration per your DSC accommodation and you could no longer pause the timer for breaks during your shelf examinations. You explained that you believed that Respondent 2's actions were in retaliation against you for engaging in the previous OEOD formal investigation because they were also involved in that investigation. Furthermore, you alleged that Respondent 2 engaged in retaliation because they wrote the report following the 2018 decision of the Promotions and Honors Committee decision to place you on leave after you were unable to take Step 1 examination.

Although Respondent 2 was part of the Promotions and Honors Committee, Respondent 2 was not involved in the previous OEOD investigation in any capacity. Second, the issue at hand occurred a substantial amount of time after the OEOD formal investigation was concluded, approximately 10 months prior to this occurrence. Therefore, the information provided does not support your argument that Respondent's actions were targeting you as a result of your participation in previous OEOD formal investigation. Third, in your email communication with Respondent 2 that you shared with OEOD, Respondent 2 reminded you that your DSC accommodations did not include lengthy or unlimited breaks and advised you to adhere to the general School of Medicine and NBME testing protocols. Respondent 2 also advised you while NBME rules allow for short bathroom breaks, they do not allow for extended breaks during which the timer can be paused. This suggests that Respondent 2's statements regarding breaks were to enforce existing examination rules extended to all School of Medicine students and were not in deviation from any existing accommodations that were previously granted to you nor did they create any new examination rules for you. Additionally, there is no information that other students were allowed to extended breaks during examinations. Thus, based on the above evidence, OEOD has determined that the alleged conduct does not state an actionable complaint of retaliation for investigation under the *UCI Guidelines on Discrimination and Harassment*.

---

[7] Shelf examinations are prepared by NBME and administered online. For more information see https://ucisom.instructure.com/courses/106/pages/exam-administration-and-procedures and https://ucisom.instructure.com/courses/106/pages/policy-on-the-requirement-to-pass-the-specialty-specific-nbme-shelf-exam

In addition, although you did not explicitly allege this in your signed complaint form, during your meeting with OEOD, you also alleged that Respondent 3 engaged in retaliation against you by not granting your additional accommodation request within 48 hours. You explained that Respondent 3's actions were retaliatory in nature because DSC was involved in the previous OEOD formal investigation. According to the email correspondence provided by you, after Respondent 2 sent you the email on November 23, 2021, about the examination procedures referenced above, you contacted Respondent 3 and Karen Andrews, DSC Director at the time, requesting that DSC grant you scheduled breaks as part of additional accommodations for you to take shelf examinations. On Wednesday, November 24, 2022, you followed up both with Respondent 3 and Director Andrews via email and informed them that your next shelf examination was scheduled for Monday, November 29, 2022. On Wednesday, November 24, 2022, Respondent 3 responded to you advising you that DSC would engage in an interactive process with you, that DSC requires at least two-business days advance notice for testing accommodations, and informed you to schedule an appointment with DSC, in accordance with DSC Policies and Procedures[8]. Following UCI closure in observance of Thanksgiving on Thursday and Friday, November 25 and 26, 2021, Respondent 3 engaged in an interactive process with you through December 2021 and your requested accommodation was eventually granted. You indicated that you had to cancel your November 29, 2021 shelf examination and reschedule it due to the lack of accommodations.

While it is true that Respondent 3 and Director Andrews were involved in the formal OEOD investigation in question, their involvement was in a witness capacity. During OEOD formal investigation, Respondent 3 was interviewed by OEOD in October and December 2020, and Director Andrews was interviewed by OEOD in October 2020. During their interviews, Respondent 3 and Director Andrews informed OEOD that they both had been working with you for various periods of time between 2017 and end of 2019 (or beginning of 2020) to assist you with getting examination accommodations from NBME. Apart from the fact that Respondent 3 was interviewed during the previous OEOD investigation as a witness, you did not articulate any further connection between Respondent 3's actions regarding your new accommodation request in 2021 to your protected activity or how it was a variation from the typical accommodations process, which require 48-hour advanced notice. You advised DSC of the scheduled examination less than two business days before it was scheduled and November 25 and 26 were official University holidays. For those reasons, it is reasonable that there was an additional delay in processing your request. Ultimately, DSC and Respondent 3 granted your requested accommodation. Given that Respondent 3 had previously worked with you to obtain accommodations with NBME, it does not appear that they would have reason or motivation to retaliate against you for being involved in the OEOD investigation. Therefore, OEOD has determined that the alleged conduct does not state an actionable complaint of retaliation for investigation under the *UCI Guidelines on Discrimination and Harassment*.

Finally, although you did not allege discrimination based upon race in your formal complaint form, in the supporting documentation, you alleged that that there are other students who have not taken Step 1 and 2 examinations and the School had worked with them "without issues." In your subsequent meeting with OEOD you identified one student who identifies as Asian, that you believe did not take the Step 1 and Step 2 examinations but was still allowed to graduate. You also

---

[8] More on Testing Procedures for Students listed in the DSC Policies and Procedures can be found here https://dsc.uci.edu/dsc-policies/

provided the name of another student you believe received more support from the department than you have but did not provide information about their race.

According to *UCI Guidelines on Discrimination and Harassment,* discrimination (differing treatment) is unequal treatment of an individual or group of people based upon race and other protected categories where there is no legitimate reason for such treatment; and harassment (hostile environment) is unwelcome conduct, including verbal, nonverbal, or physical conduct, directed at an individual or group of people based upon race and other protected categories that explicitly or implicitly affects a person's employment or education or interferes with a person's work or educational performance or creates an environment such that a reasonable person would find the conduct intimidating, hostile, or offensive.

According to the information you provided, the student who identifies as Asian took and passed the Step 1 and Step 2 examinations prior to graduation and within the six-year period as required by policy. While you did not provide information about the race of the other student, you noted that they are in their fourth year, not sixth, and therefore it is too early to determine if they will yet take and pass their Step 1 and Step 2 examinations prior to the six-year deadline. As both students are differently situated than you, they are not comparators. Therefore, this allegation, on its face, is not indicative of a prima facie complaint of discrimination on the basis of race or any other protected category under the *UCI Guidelines on Discrimination and Harassment*.

Based on the assessment above, OEOD is unable to accept your concerns for formal investigation. There is no appeal process within the University for this assessment. For addition information about the policies and laws that guide OEOD processes and investigations, please visit our website.

Respectfully,

*Olga Golub*

Olga Golub
Investigator
Office of Equal Opportunity and Diversity