1
2   Jerry Girley, Esquire
    Florida Bar No. 35771
3   The Girley Law Firm, PA
    117 E. Marks Street, Suite A
4   Orlando, FL 32803
    Tel: (407) 540-9866
5   Fax: (407) 540-9867
    phyllis@thegirleylawfirm.com
6   *Admitted Pro Hac Vice*

7   Jay T. Jambeck (SBN 226018)
    Mandy G. Leigh (SBN 225748)
8   Damien Troutman (SBN 286616)
    LEIGH LAW GROUP, P.C.
9   582 Market St. #905
    San Francisco, CA 94104
10  Tel:   415-399-9155
    Fax:   415-795-3733
11  jjambeck@leighlawgroup.com

12  Tania L. Whiteleather (SBN 141227)
    Law Offices of Tania L. Whiteleather
13  5445 Del Amo Blvd. #207
    Lakewood, CA 90712
14  Tel:   562-866-8755
    Fax:   562-866-6875
15  tlwhiteleather@juno.com

16  *Attorneys for Plaintiff,*
    JACKLINE MUTHOKA

17
18              **IN THE UNITED STATES DISTRICT COURT**

19             **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

20
21  JACKLINE MUTHOKA,                    Case No: 8:23-CV-01333 FWS
                                         (JDEX) Assigned to Hon. Judge
22  Plaintiff,                           Fred W. Slaughter
                                         (Complaint filed on July 24, 2023)
23  v.
                                         **PLAINTIFF'S SEPARATE**
24  THE REGENTS OF THE                   **STATEMENT OF GENUINE**
    UNIVERSITY                           **DISPUTED FACTS**
25  OF CALIFORNIA,
                                         Date:   April 24, 2025
26  Defendant.                           Time:   10:00 AM
                                         Place:  10D
27
28

                                    1
        **PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO**
                    **MOTION FOR SUMMARY JUDGMENT**

Pursuant to Central District of California Local Rule 56-1, Plaintiff Jackline Muthoka hereby submits the following Separate Statement of Genuine Disputed Facts and supporting evidence in opposition to Defendant's Motion for Summary Judgment, or, in the Alternative, Partial Summary Judgment.

## SEPARATE STATEMENT OF DISPUTED FACTS AND SUPPORTING EVIDENCE

|  | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 1. | UCI SOM admits 3.9% of applicants, with a median MCAT score of 516, and a median undergraduate GPA of 3.89<br><br>Declaration of Dr. Megan Osborn ("Osborn Decl."), ¶ 3. | 1. Undisputed. |
| 2. | UCI SOM has established educational objectives applicable to all students.<br><br>Osborn Decl., ¶ 4. | 2. Undisputed. |
| 3. | UCI SOM requires students to achieve passing grades for all courses in the MD curriculum.<br><br>Osborn Decl., ¶ 4. | 3. Undisputed. |
| 4. | UCI SOM requires students to pass the United Stated Medical Licensing Exam ("USMLE") Step 1 and Step 2CK administered by the National Board of Medical Examiners ("NBME").<br><br>Osborn Decl., ¶ 4. | 4. Undisputed. |

2

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 5. | UCI SOM requires students to pass the Clinical Performance Examination ("CPX").<br><br>Osborn Decl., ¶ 4. | 5. Undisputed. |
| 6. | The failure to pass USMLE Step 1 or Step 2CK precludes graduation without exception.<br><br>Osborn Decl., ¶ 5. | 6. Undisputed. |
| 7. | Students have a maximum of six academic years to complete their MD.<br><br>Osborn Decl., ¶ 5. | 7. Disputed. The time to complete the program is extended by any approved leave of absence.<br><br>Muthoka Decl. at Ex. T. |
| 8. | Students are considered in "good standing" if they have no unremediated course or clerkship failure, timely completed Step 1 and Step 2CK, and are not under any formal disciplinary review by the Committee for Promotions & Honors ("P&H").<br><br>Osborn Decl., ¶ 6. | 8. Undisputed. |
| 9. | Students may be referred to P&H for several reasons, including, (1) two clerkship failures, (2) failure to pass Step 1 within one year of the student's last day of their second year, (3) failure to pass Step 2CK by the deadlines in the UCI SOM Exam Administration and Procedures Policy, (4) two failed attempts at Step 1 or Step 2CK.<br><br>Osborn Decl., ¶ 7. | 9. Undisputed. |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|---|
| | 10. | All students receive these policies upon matriculation at UCI SOM and they are accessible on the school's website.<br><br>Declaration of Alison M. Bernal ("Bernal Decl."), Ex. 3 (University of California, Irvine, School of Medicine Student Handbook, compiled January 27, 2017, and produced as part of "Exhibit A" in Plaintiff's initial document disclosure (bates numbers PL 00129-00316));<br>Osborn Decl., ¶ 8. | 10. Undisputed. |
| | 11. | Plaintiff's MCAT scores and undergraduate GPA did not qualify her for admission to UCI SOM.<br><br>Bernal Decl., Ex. 2, ¶ 17 (Declaration of Jackline Muthoka in Support of Plaintiff's Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, Case No. 8:20-CV-01072-JLS-KES); Ex. 4, at PL 02868 ( Plaintiff's Review of OEOD Draft Investigation Report and Evidence, dated December 8, 2020, and produced as "Exhibit K" in Plaintiff's initial document disclosure (bates numbers PL 02865-02891). | 11. Disputed: Plaintiff completed a postbaccalaureate program and Conditional program (in addition to her Bachelor's degree) at UCI and achieved a more than the average GPA for her 2016 class. Additionally, her MCAT scores were not reflective of her abilities as she was not provided reasonable accommodations and was not tested despite being at UCI for both programs and informing the school.<br><br>Muthoka Decl. at ¶44. |
| | 12. | Plaintiff was admitted to UCI SOM through a conditional program offered to students who did not meet the standard metrics for medical school admission. | 12. Disputed: Muthoka Decl. at Ex. N, pg. 8. |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | Bernal Decl., Ex. 2, ¶ 3;<br>Bernal Decl., Ex. 4 at PL 02868;<br>Osborn Decl., ¶ 9. | |
| 13. | Plaintiff's grades and test scores still put her on the cusp of not getting into the school even after she was admitted to the conditional program, but a UCI SOM employee successfully lobbied for Plaintiff's admission.<br><br>Bernal Decl., Ex. 2, Pages 110-111;<br>Osborn Decl., ¶ 10. | 13. Disputed: Objection to statement at Osborn Decl. ¶10 which contains hearsay without an exception that a colleague advocated for Plaintiff. FRE 801, 802. |
| 14. | Plaintiff matriculated at UCI SOM in 2016.<br><br>Bernal Decl., Ex. 2, ¶ 4;<br>Osborn Decl., ¶ 10. | 14. Undisputed. |
| 15. | Plaintiff met with a wellness officer at UCI SOM in February 2017.<br><br>Henderson Decl., ¶ 2. | 15. Undisputed. |
| 16. | Plaintiff requested the wellness officer send a form to UCI's Disability Services Center requesting testing accommodations for Plaintiff.<br><br>Henderson Decl., ¶ 2 | 16. Disputed:  The plaintiff requested the wellness officer to submit her documentation to DSC.<br><br>Muthoka Decl. at ¶45. |
| 17. | After the Disability Services Center received this form from Plaintiff in February 2017, the Disability Services Center sent a letter to UCI SOM stating that Plaintiff was eligible to receive accommodations in the form of time and a half on all tests. | 17. Disputed:  The wellness submitted Plaintiff's paperwork to the DSC, not the plaintiff. The plaintiff only requested a verification form to be sent specifically to Dr. Jullianne Toohey to stop the "Language issue" labeling by Dr. Toohey. |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | Henderson Decl., ¶ 3;<br>Henderson Decl., Ex. 2 | Muthoka Decl. at ¶¶9, 45. |
| 18. | After UCI SOM received the letter from the Disability Services Center stating Plaintiff was eligible for accommodations, Plaintiff received time and a half on all examinations at the medical-school level by UCI SOM (meaning those examinations that are not administered by third-party test providers).<br><br>Henderson Decl., ¶ 4; | 18. Disputed. The Henderson declaration does not state that Plaintiff always received her accommodations only that she was approved for accommodations. |
| 19. | Plaintiff passed her coursework in her first year and second year, with courses ending March 2018 prior to a seven-week study period culminating in taking the USMLE Step 1 exam .<br><br>Bernal Decl., Ex. 2, Pages 110-111;<br>Osborn Decl., ¶ 14. | 19. Undisputed. |
| 20. | UCI SOM does not administer or control the USMLE Step and shelf examinations.<br><br>Osborn Decl., ¶ 11. | 20. Disputed: Muthoka Decl. at ¶46. |
| 21. | The NBME administers and controls the USMLE Step and shelf examinations.<br><br>Osborn Decl., ¶ 11;<br>Henderson Decl., ¶ 6 | 21. Disputed:   Muthoka Decl. at ¶46. |

6

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

|  | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 22. | The NBME decides whether students receive testing accommodations on Step and shelf examinations.<br><br>Osborn Decl., ¶ 11. | 22. Disputed:   Muthoka Decl. at ¶46. |
| 23. | The student is responsible for applying for accommodations with the NBME.<br><br>Osborn Decl., ¶ 11. | 23.Disputed in that UCI assists students with applying for accommodations and told Plaintiff that requests should include testing at the disability center and then submission by the disability center to NBME.<br><br>Muthoka Decl. at ¶6-8, Ex. B. |
| 24. | The University or Disability Services can communicate with NBME for general information but cannot discuss student specific requests.<br><br>Henderson Decl., ¶ 6 | 24. Disputed in that Dr. Toohey claimed she had extensive discussions with NBME about Plaintiff's language issues not being a disabling condition.<br><br>Muthoka Decl. at ¶16, Ex. G. |
| 25. | The NBME communicate with the student directly.<br><br>Henderson Decl., ¶ 6 | 25. Disputed in that Dr. Toohey claimed she had extensive discussions with NBME about Plaintiff's language issues not being a disabling condition.<br><br>Muthoka Decl. at ¶16, Ex. G. |
| 26. | Plaintiff applied for accommodations with the NBME in 2017.<br><br>Henderson Decl., ¶¶ 7–8 | 26. Disputed to the extent that the disability center assisted Plaintiff with the application.<br><br>Muthoka Decl. at ¶¶6,11. |
| 27. | The NBME denied Plaintiff accommodations because "experiencing anxiety during a high stakes test is not evidence of a | 27. Disputed in that Dr. Toohey claimed she had extensive discussions with NBME about |

7

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | disability or a substantial limitation in a major life activity." Henderson Decl., ¶ 8 | Plaintiff's language issues not being a disabling condition. Muthoka Decl. at ¶16, Ex. G. |
| 28. | On May 7, 2018, Plaintiff took the USMLE Step 1 exam for the first time and failed. Bernal Decl., Ex. 2, ¶ 9; Ex. 4, at PL 02888; Ex. 5, at PL 01700, 01745 (UCI SOM's investigative report regarding Plaintiff by Dr. Donald Forthal, dated September 30, 2019, and produced as "Exhibit B" in Plaintiff's initial document disclosure (bates numbers PL 01692-01745)); Osborn Decl., ¶ 15. | 28. Undisputed – taken without accommodation. Muthoka Decl. at ¶16, Ex. G. |
| 29. | On July 12, 2018, Plaintiff took the Surgery shelf examination and failed. Osborn Decl., ¶ 16. | 29. Disputed to the extent that Dr. Toohey interfered with Plaintiff's course of study during the summer of 2018 including continuing to claim that she suffered from language issues, lying about contacting NBME and placing undue burdens on Plaintiff. Muthoka Decl. at ¶16, Ex. G, ¶17, ¶18. |
| 30. | From July 16, 2018, through November 4, 2018, Plaintiff was on administrative leave from UCI SOM because of her Step 1 failure, per school policy. Osborn Decl., ¶ 17. | 30. Disputed: Plaintiff was on administrative leave because of issues created by Dr. Julianne Toohey and the Disability Services Center that led her to fail the USMLE step 1 exam. |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

|  | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
|  |  |  |
| 31. | On October 30, 2018, Plaintiff took the USMLE Step 1 examination for a second time and failed again.<br><br>Bernal Decl., Ex. 2, ¶ 10; Ex. 4, at PL 02888; Ex. 5, at PL 01700, 01745; Osborn Decl., ¶ 18. | 31. Plaintiff re-took the examination without accommodation due to misrepresentations by Dr. Toohey along with Dr. Toohey's interference with Plaintiff's studies and test preparation in the summer and fall of 2018.<br><br>Muthoka Decl. at ¶16, Ex. G, ¶17, ¶18. |
| 32. | From December 3, 2018, through December 6, 2020, Plaintiff was on administrative leave for her two Step 1 failures.<br><br>Bernal Decl., Ex. 5, at PL 01700; Osborn Decl., ¶ 19. | 32. Disputed to the extent that Covid-19 also occurred during this time period and impacted timing. |
| 33. | In December 2018, after being placed on administrative leave a second time, the UCI housing office communicated to Plaintiff that she would need to re-enroll at UCI SOM to continue living in university housing.<br><br>Bernal Decl., Ex. 6, at PL 01751 (Plaintiff's response letter to Dr. Donald Forthal's investigative report, undated, and produced as part of "Exhibit C" in Plaintiff's initial document disclosure (bates numbers PL 01747-01763)); Osborn Decl., ¶ 20. | 33. Disputed.<br><br>Muthoka Decl. at ¶48. |

9

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | |
| 34. | On January 25, 2019, UCI re-sent Plaintiff the Notice of USMLE Policies.<br><br>Bernal Decl., Ex. 7, at PL 02784-02785 (Email from Dr. Megan Osborn to Plaintiff regarding United Stated Medical Licensing Exam ("USMLE") testing policies, dated January 24, 2019, and produced as part of "Exhibit G" in Plaintiff's initial document disclosure (bates numbers PL 02784-02785));<br>Osborn Decl., ¶ 21. | 34. Undisputed. |
| 35. | UCI reiterated to Plaintiff that she needed to pass Step 1 by March 15, 2019, to avoid academic probation, or by March 15, 2020, to avoid dismissal.<br><br>Bernal Decl., Ex. 7, at PL 02784-02785;<br>Osborn Decl., ¶ 21. | 35. Undisputed. |
| 36. | Plaintiff did not take Step 1 by March 15, 2019.<br><br>Bernal Decl., Ex. 8, at PL 02445 (Plaintiff's Office of Equal Opportunity and Diversity complaint form, dated May 26, 2020, and produced as part of "Exhibit G" in Plaintiff's initial | 36. Disputed to the extent this was due to the delays caused by the interference of Dr. Toohey emphasizing Plaintiff's language issues.<br><br>Muthoka Decl. at ¶16, Ex. G, ¶17. |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | document disclosure (bates numbers PL 02432-02452)); Osborn Decl., ¶ 22. | |
| 37. | On March 21, 2019, UCI housing sent Plaintiff notice she needed to vacate by April 30, 2019.<br><br>Osborn Decl., ¶ 22. | 37. Undisputed. |
| 38. | Dr. Julianne Toohey of UCI SOM sent a letter to the housing office in support of Plaintiff, requesting an extension of the housing deadline.<br><br>Bernal Decl., Ex. 9, at PL 01784 (Plaintiff's addendum to her letter to UCI SOM's Committee for Promotions & Honors, dated October 11th, 2019, and produced as part of "Exhibit G" in Plaintiff's initial document disclosure (bates numbers PL 01779-01789)); Osborn Decl., ¶ 23. | 38. Disputed.<br><br>Muthoka Decl. at ¶¶49, 61. |
| 39. | The UCI housing office approved the extension to March 31, 2019.<br><br>Osborn Decl., ¶ 23. | 39. Disputed to the extent Plaintiff was not seeking an extension but needed housing.<br><br>Muthoka Decl. at ¶50. |
| 40. | In May 2019, Plaintiff appealed her denial of accommodations to the NBME, seeking: 50% additional | 40. Undisputed. |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | testing time, a separate room, and additional break time.<br><br>Bernal Decl., Ex. 4, at PL 02888; Osborn Decl., ¶ 24 | |
| 41. | The NBME provided Plaintiff with a separate room and additional break time, but did not agree to the additional testing time.<br><br>Bernal Decl., Ex. 4, at PL 02888; Osborn Decl., ¶ 24. | 41. Undisputed. |
| 42. | On July 12, 2019, UCI SOM notified Plaintiff that, because she had not retaken the surgery shelf exam within one year of the deadline, her grade would be changed from "incomplete" to "fail."<br><br>Bernal Decl., Ex. 5, at PL 01695, 01700, 01745; Osborn Decl., ¶ 25. | 42. Disputed.<br><br>Muthoka Decl. at ¶51. |
| 43. | Due to Plaintiff's academic probation and failure to pass her surgery clerkship, Plaintiff received notice on September 30, 2019, that she would need to appear at a hearing before the P&H Committee.<br><br>Bernal Decl., Ex. 5, at PL 01692; Osborn Decl., ¶ 26. | 43. Undisputed it was received but disputed as to reasons for the failure and as to probation.<br><br>Muthoka Decl. at ¶¶16, 17, 52. |
| 44. | While waiting for her P&H hearing date, Plaintiff requested an extension to complete her pediatric clerkship, which the University granted.<br><br>Osborn Decl., ¶ 26. | 44. Disputed to the extent that the plaintiff was requesting an extension to complete the pediatric clerkship because of the issues created by Dr. |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | | Julianne Toohey and Disability services center. <br><br> Muthoka Decl. at ¶¶16, 17. |
| 45. | The Disability Services Center supported Plaintiff by helping her write an appeal of the NBME's denial of her accommodations in 2019. Henderson Decl., ¶ 10. | 45. Disputed to the extent that the Disability Services Center did this as a matter of course. <br><br> Muthoka Decl. at ¶6. |
| 46. | Plaintiff's P&H hearing was held on March 9, 2020. <br><br> Bernal Decl., Ex. 10, at PL 01764-01765 (UCI SOM's Promotions and Honors Hearing Decision regarding Plaintiff by Dr. Donald Forthal, dated March 16, 2020, and produced as part of "Exhibit C" in Plaintiff's initial document disclosure (bates numbers PL 01764-01765)); Osborn Decl., ¶ 27. | 46. Undisputed. |
| 47. | Plaintiff was eligible for dismissal due to her failure to pass the USMLE Step 1 within two years. <br><br> Osborn Decl., ¶ 27. | 47. Undisputed. |
| 48. | P&H committee offered Plaintiff an additional chance by placing her on academic probation, giving her a deadline to take the USMLE Step 1 by May 3, 2020, granting an extension on her surgery shelf exam to March 9, | 48. Disputed as to the reasons the extensions were provided. <br><br> Muthoka Decl. at ¶¶16, 17. |

13

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | 2021 (with a grade change from fail to incomplete), and a deadline to complete her pediatrics rotation by November 20, 2020.<br><br>Osborn Decl., ¶ 27. | |
| 49. | In June 2020, Plaintiff sued the NBME for disability discrimination.<br><br>Osborn Decl., ¶ 28. | 49. Undisputed. |
| 50. | Plaintiff sought an injunction requiring the NBME to allow her 50% additional time on the Step 1 examination.<br><br>Osborn Decl., ¶ 28. | 50. Undisputed. |
| 51. | The NBME resolved the lawsuit by allowing Plaintiff the additional testing time.<br><br>Osborn Decl., ¶ 28. | 51. Undisputed. |
| 52. | Plaintiff took Step 1 on October 12, 2020, and passed on this third attempt.<br><br>Bernal Decl., Ex. 4, at PL 02889; Osborn Decl., ¶ 29. | 52. Undisputed. |
| 53. | After passing Step 1, Plaintiff resumed her clerkships and completed her pediatrics clerkship on December 27, 2020.<br><br>Osborn Decl., ¶ 30. | 53. Undisputed. |
| 54. | Plaintiff did not pass the pediatrics shelf examination, placing her back on administrative leave for two incomplete clerkships (surgery and pediatrics). | 54. Disputed because of issues created by Dr. Toohey.<br><br>Muthoka Decl. at ¶¶16, 17, 53. |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | Osborn Decl., ¶ 30. | |
| 55. | Plaintiff was on administrative leave from January 26, 2021, through March 21, 2021.<br><br>Osborn Decl., ¶ 30. | 55. Undisputed. |
| 56. | Plaintiff requested an extension to complete the pediatric and surgery clerkship, which the P&H committee approved through March 9, 2021.<br><br>Osborn Decl., ¶ 31. | 56. Undisputed. |
| 57. | On March 4, 2021, Plaintiff requested a further extension, which the committee approved through March 12, 2021, while also reminding Plaintiff of the six-year deadline for curriculum completion.<br><br>Osborn Decl., ¶ 31. | 57. Undisputed. |
| 58. | On March 8, 2021, Plaintiff requested another extension on the surgery shelf exam, saying she was not prepared.<br><br>Osborn Decl., ¶ 31. | 58. Disputed that Plaintiff was unprepared. Her extensions were due to dealing with the circumstances created by UCI.<br><br>Muthoka Decl. at ¶53. |
| 59. | The P&H Committee denied the request.<br><br>Osborn Decl., ¶ 31. | 59. Undisputed. |
| 60. | Plaintiff did not take the surgery shelf by the deadline and took it instead on March 19, 2021.<br><br>Osborn Decl., ¶ 32. | 60. Disputed.<br><br>Muthoka Decl. at ¶54. |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | **Moving Party's Uncontroverted Facts and Supporting Evidence** | **Opposing Party's Response to Cited Fact and Supporting Evidence** |
|---|---|---|
| | | |
| 61. | Plaintiff failed the surgery shelf a second time, resulting in a final failing grade in the surgery rotation.<br><br>Bernal Decl., Ex. 11, at PL 03131 (Email between Plaintiff and Dr. Shannon Toohey, dated September 20, 2021, and produced as part of "Exhibit U" in Plaintiff's initial document disclosure (bates numbers PL 03128-03131));<br>Osborn Decl., ¶ 32. | 61. Undisputed. |
| 62. | On March 30, 2021, Plaintiff requested an extension on her six-year graduation timeline.<br><br>Bernal Decl., Ex. 11, at PL 03130;<br>Osborn Decl., ¶ 33. | 62. Undisputed. |
| 63. | The P&H Committee agreed to adjust Plaintiff's six-year timeline due to the COVID-19 pandemic.<br><br>Bernal Decl., Ex. 11, at PL 03129-03130;<br>Osborn Decl., ¶ 33. | 63. Disputed. The P&H committee did not properly calculate the six year timeline.<br><br>Muthoka Decl. at Ex. U Bates 3128. |
| 64. | On June 1, 2021, Plaintiff received notice she did not pass her internal medicine NBME shelf examination.<br><br>Osborn Decl., ¶ 34. | 64. Undisputed. |
| 65. | On July 19, 2021, Plaintiff received notice she did not pass neurology NBME shelf examination, and that she was placed on administrative leave for two incomplete clerkships. | 65. Undisputed. |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | Osborn Decl., ¶ 35. | |
| 66. | Plaintiff retook both exams and passed the second time, with her administrative leave ending on September 27, 2021.<br><br>Osborn Decl., ¶ 35 | 66. Undisputed. |
| 67. | On January 31, 2022, Plaintiff requested an extension through December 1, 2022, for her Step 2 examination.<br><br>Osborn Decl., ¶ 36. | 67. Undisputed. |
| 68. | The P&H Committee reminded Plaintiff of her modified 6-year deadline and stated that she had to complete her Step 2 by November 6, 2022.<br><br>Osborn Decl., ¶ 36. | 68. Disputed.<br><br>Muthoka Decl. at ¶55. |
| 69. | Plaintiff's technical six-year deadline by which she was required to graduate was May 22, 2022.<br><br>Bernal Decl., Ex. 12, at PL 03137-03140 (Email between Plaintiff and Dr. Shannon Toohey, dated July 26, 2022, and produced as part of "Exhibit U" in Plaintiff's initial document disclosure (bates numbers PL 03137-03140); Osborn Decl., ¶ 37. | 69. Disputed.<br><br>Muthoka Decl. at ¶54-56, Ex. U at Bates 3128. |
| 70. | Plaintiff did not complete her coursework and was eligible for dismissal at this point.<br><br>Bernal Decl., Ex. 12, at PL 03137-03140; | 70. Disputed.<br><br>Muthoka Decl. at ¶54-56, Ex. U. |

17

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | Osborn Decl., ¶ 37. | |
| 71. | UCI SOM did not dismiss Plaintiff.<br><br>Bernal Decl., Ex. 12, at PL 03137-03140;<br>Osborn Decl., ¶ 37. | 71. Undisputed. |
| 72. | Instead of dismissing Plaintiff, the Committee provided Plaintiff a six-month extension to December 18, 2022.<br><br>Bernal Decl., Ex. 12, at PL 03137-03140;  Osborn Decl., ¶ 37. | 72. Disputed.<br><br>Muthoka Decl. at ¶55, Ex. U. |
| 73. | Plaintiff responded to the P&H Committee on October 13, 2022, stating she disagreed with this deadline and that she expected four additional months.<br><br>Osborn Decl., ¶ 38. | 73. Disputed.<br><br>Muthoka Decl. at ¶¶16, 17, 55, Ex. G, U. |
| 74. | The Committee provided additional time to January 18, 2023.<br><br>Osborn Decl., ¶ 38. | 74. Undisputed. |
| 75. | Plaintiff took the Step 2CK examination on December 12, 2023, with the accommodations the NBME had to provide following Plaintiff's lawsuit, and she failed.<br><br>Osborn Decl., ¶ 39. | 75. Undisputed. |
| 76. | Plaintiff took the Step 2 CK exam for the second time on April 3, 2023, and passed. | 76. Undisputed. |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | Osborn Decl., ¶ 40. | |
| 77. | Because Plaintiff retook the Step 2CK exam so close in time to graduation, she found out after others in the graduating class that she was eligible to graduate.<br><br>Osborn Decl., ¶ 41. | 77. Disputed.<br><br>Muthoka Decl. at ¶59. |
| 78. | This resulted in Plaintiff having a handwritten graduation card versus other students, who had fulfilled the graduation requirements much earlier, having a typed graduation card.<br><br>Osborn Decl., ¶ 41. | 78. Disputed.<br><br>Muthoka Decl. at ¶¶59. |
| 79. | Plaintiff graduated from UCI SOM in June 2023.<br><br>Osborn Decl., ¶ 42. | 79. Undisputed. |
| 80. | Plaintiff contends she was discriminated against on the basis of race on a disparate treatment theory.<br><br>Bernal Decl., Ex. 1 (Plaintiff's Responses to Interrogatories (Second Set) dated December 20, 2024 [hereinafter, "Plaintiff's Responses"]), No. 4. | 80. Disputed in Part. The Complaint also alleges a hostile educational environment. |
| 81. | She does not contend UCI SOM violated Title VI under a disparate impact theory.<br><br>Bernal Decl., Ex. 1, at Plaintiff's Responses, No. 3. | 81. Undisputed. |
| 82. | Plaintiff planned an international ultrasound trip to Kenya for the summer of 2017. | 82. Undisputed. |

19

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

|  | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
|  | Osborn Decl., ¶ 12; Bernal Decl., Ex. 1, at Plaintiff's Responses, No. 15. |  |
| 83. | UCI SOM notified Plaintiff that UCI SOM could not sponsor the trip because Kenya was subject to a travel advisory issued by the United States Department of State.<br><br>Bernal Decl., Ex. 6, at PL 01761; Osborn Decl., ¶ 12. | 83. Undisputed. |
| 84. | UCI SOM has never sponsored an international trip to a location with an active travel advisory because of safety and liability concerns.<br><br>Osborn Decl., ¶ 12. | 84. Disputed.<br><br>Muthoka Decl. at ¶60 & Ex. N at page 29, witness 22; Plaintiff's Request for Judicial Notice at ¶3. |
| 85. | Plaintiff contends that UCI SOM's refusal to sponsor the Kenya trip constituted racial discrimination, as non-black students were allowed to take sponsored international trips.<br><br>Osborn Decl., ¶ 13. | 85. Undisputed. |
| 86. | The other trips were not to countries subject to a travel advisory.<br><br>Osborn Decl., ¶¶ 12–13. | 86. Disputed.<br><br>Muthoka Decl. at ¶60; RJN at ¶3. |
| 87. | Plaintiff filed a complaint with UCI's Office of Equal Opportunity and Diversity ("OEOD") in May 2020.<br><br>Bernal Decl., Ex. 8. | 87. Undisputed. |
| 88. | The complaint identified two purportedly racially discriminatory events: UCI SOM not sponsoring | 88. Disputed to the extent the complaint also set forth national |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | Plaintiff's trip to Kenya in 2016-2017 and Dr. Julianne Toohey purportedly telling Plaintiff in April 2019 that she should go back to her country.<br><br>Bernal Decl., Ex. 8, at PL 02436-2440. | origin discrimination and disability discrimination.<br><br>(Muthoka Decl. at Ex. M) |
| 89. | The OEOD office interviewed 27 witnesses before issuing its findings on January 25, 2021.<br><br>Bernal Decl., Ex 13 at Regents 000279 through 332 | 89. Undisputed. |
| 90. | Plaintiff responded to interrogatories in this litigation by listing each discrete incident which she alleges constituted racial discrimination, as follows:<br>** note for ease of reading, the following table containing Plaintiff's response is reproduced below this table, and constitutes part of DF 90.**<br><br>Bernal Decl., Ex. 1, Plaintiff's Responses, No. 5. | 90. Undisputed. |

DF 90: Table from Plaintiff's Interrogatory Responses:

| Alleged Discriminatory Act | Dates |
|---|---|
| Dr. Toohey stated that my natural hair was "unprofessional" and that I needed to straighten it to be considered professional. | August 2016<br>September 2016<br>January-March 2017<br>March-July 2018 |
| The defendant through Dr. Toohey denied me funding and IRB support for my work in Kenya, but fully supported and | August/September 2016-July 2017 |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| Alleged Discriminatory Act | Dates |
|---|---|
| funded a non-black, non-Kenyan Male medical student to conduct their research work in Kenya. | August/September 2018-July/August 2019 |
| Dr. Toohey assumed that Faith Njoku and I, the only two black students in a class of 104 medical students, were planning ultrasound trips to Kenya and Nigerian in 2018 because we both had Nigerian and Kenyan ancestry. She asked that we be excluded from meetings based on our race and country of origin even though we were not participating in these events. | September/October 2017 |
| They brought a lawyer to my P&H hearing while I was going to have family members present. The school had not brought lawyers to other nonblack medical students' hearing if they did not have their own lawyers present. This is also against school policy. | December 2019 |
| In an all Asian team during the internal medicine rotation, Dr. Nguyen made multiple racial comments about the team looking young because of "our good Asian genes" and continued to state that "I am also Asian" during a patient encounter. Dr. Nguyen later tried to prove to me that she is not racist because her sister/brother is married to a Kenyan and showed me photos during rounds. In addition, she asked me to change my mask (no one else in the team was asked to change their masks).

She was also asking me to evaluate her in the middle of the rotation (against policy), a situation that isolated and created a toxic learning environment for me, the only black student in the entire team. | March- June 2021 |
| I was severely punished for making a minor grammatical error while my colleague (Asian in an all Asian team) who copied and pasted patient's information into another patient's discharge summary was not punished. I was the only black student in the entire team. | March- June 2021 |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

| Alleged Discriminatory Act | Dates |
|---|---|
| Refused to interview the only black woman (Kelley Butler) who travelled to Kenya with me and instead only interviewed the two Asian medical students. The rest of the students had graduated despite providing him with the list of medical students who travelled to Kenya with me. | August 2020 – January 2021 |
| Created a toxic environment for me during my graduation by providing me with a handwritten yellow card during my graduation ceremony while everyone received a professionally typed white card. My graduation gown was also from 2022 while everyone received a 2023 graduation gown. | May 2023 |
| Stated that "I should consider going back to my country" if it was difficult when I requested to keep my on-campus housing. | January, February, March, April 2019 |

Pursuant to Local Rule 56-4, the Plaintiff includes the additional material facts below to comply with the requirement that all supporting evidence must be set forth in this statement of disputed facts.

## PLAINTIFF'S ADDITIONAL DISPUTES OF FACTS

| Opposing Party's additional disputed facts | Moving Party's Response |
|---|---|
| 1. One of the Black students in Plaintiff's Class, Faith Njoku, did not complete medical school due in part to the extreme isolation that she felt and the hostility that she experienced from Dean Julianne Toohey (Butler Dep. P. 86:21-23). | |
| 2. Faith Njoku confided to the Plaintiff that Dean Toohey was treating her differently than the other non-Black | |

23

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

students (Muthoka Dep. Vol. I, 160:14-25; 161:1-12).

3. The Plaintiff's encounter with the racially hostile environment began when Associate Dean Toohey met with her to inform her that she needed to change her natural hairstyle to straight hair because natural hair was unprofessional (Interrog. Resp.# 5).

4. The Plaintiff is a Black person who was born in the country of Kenya. Dean Julianne Toohey was a Latina female (Butler Dep. P. 52, 18, 19).

5. Dean Toohey created a hostile environment for Black medical students at UCI. She demonstrated an animus toward Black medical students in different ways. Sometimes, the bias against Black students manifested with vague, nondescript accusations of Black students being unprofessional. Other times it manifested in more tangible ways, such as criticizing Black student support activities or Dean Toohey refusing to support or find funding for

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| research projects that Black students were spearheading. (Interrog. Resp.5; Muthoka Decl. at ¶2). | |
| 6. Dean Toohey upheld standards of "professionalism" that were proximal to whiteness, such as how Black students wore their hair compared to White students or how they articulated during rounds (Butler Dep. P. 53:111-14, 54:1-9, 20-22). | |
| 7. Dr. Kelley Butler met the Plaintiff during her first year of Medical School at UCI, which was the 2015/2016 school year (*Id.* at 15:8-25). | |
| 8. Dr. Kelley Butler was enrolled at UCI at the same time the Plaintiff was enrolled there. She identifies as a Black female. Shortly after enrolling she was confronted by Dean Julianne Toohey about the style of her hair. She claimed that her hair was unprofessional (*Id.* at 42:11-20). | |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| 9. Butler recalled that Dean Toohey generally treated Black students less favorably than other students, especially Latino/Latina students. The Plaintiff and Dr. Butler were members of a student group named SNMA. SNMA stands for the Student National Medical Association (*Id*. at 40:22-25; 41:1-2). | |
| 10. The SMNA was founded to support Black medical students who were traditionally underrepresented in medical schools (*Id.* at 88:2-20). Later, the organization expanded its mission to include all historically underrepresented populations, such as indigenous people and Asian Pacific Islanders. (*Id*). | |
| 11. Dean Julianne Toohey did not have high regard for the SNMA. She believed that the Black students' participation in the organization was a distraction to their studies (*Id*. at 44:2-10). | |
| 12. By contrast, Dean Toohey gave unwavering support to the LSMA. | |

26

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| LSMA is an acronym for Latin Students Medical Association. The group was founded to provide support to Latin medical students (*Id*. at 51:19-24). | |
| 13. When SNMA wanted to hold a function at a facility on campus, such as the MedEd building, it was always a problem to obtain authorization. (Butler Depo. At 89:15-24). However, whenever LSMA attempted to use the same facilities, it was never a problem (*Id*. at 52:11-14). The only time SNMA did not encounter a problem using the University's facilities is when they were partnered with LSMA (*Id*). | |
| 14. Dr. Toohey found money to support LSMA events, but she did not assist SNMA in the same manner (*Id*). | |
| 15. Defendant refused to fund Plaintiff's ultrasound trip to Kenya, ostensibly because there was a travel advisory connected to that nation. Still, it funded a similar trip to Kenya when a non-Black student sought IRB and | |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| financial support. At the time that the non-Black student traveled to Kenya, there was a travel advisory in effect as well (Interrog. 15; Muthoka Dep. Vol. I, 98:4-10; 106:105:25; 106:1-25; 107:1-5); Muthoka Decl. at Ex. N, Page 29, Witness 22). | |
| 16. UCI had a long-standing practice of funding student trips worldwide to conduct research (Butler Dep. at 21:18-25; 22:1-7). The Plaintiff was seeking financial support for a four-week trip. The university refused to provide the requested financial support (*Id.* at 32:1-25). | |
| 17. The university funded an ultrasound trip to Panama that involved students. The trip lasted for the entire summer. The university covered most of the costs involved. Dean Toohey did not offer the same pushback for the Panama trip as she did for the Kenyan trip (*Id.* at 39:23-25; 78:10-16). | |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| 18. The ultrasound trip to Kenya involved six students and the participants were required to fundraise for essentially all related expenses. The Plaintiff obtained money from her church. The group also set up a GoFundMe account to raise money as well (*Id.* at 23:18-21). | |
| 19. Dr. Butler accompanied Plaintiff on the Kenyan ultrasound trip (Butler Dep. 19:5-15; 24:1-4). | |
| 20. One of the push backs Plaintiff received regarding the trip to Kenya is that it wasn't an established trip. However, the university funded an ultrasound-related student trip to Switzerland. The trip was the first of its kind. There were no established contacts with a medical clinic there before this student-coordinated trip. Generally, the university favored trips to Europe more than trips to other places. (*Id.* 84:15-24). | |
| 21. The University funded the ultrasound trip to Kenya the very next year that was coordinated by, Michael | |

29

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| Lobasso, a non-Black/Non-African. There was a travel advisory during that time period as well (Interrog. 5; RJN at ¶3). | |
| 22. The University funded the ultrasound trip to Kenya the very next year (2019) that was coordinated by, Michael Lobasso, a non-Black/Non-African. There was a travel advisory during that time period as well (Interrog. 5). | |
| 23. Associate Dean Toohey also told the Plaintiff that she should consider going back to Africa. (Muthoka Decl. at ¶25). | |
| 24. She never made such a comment to other non-Black or non-African students (Interrog. 5). | |
| 25. Dr. Butler was aware of an incident wherein Dean Toohey suggested that the Plaintiff should go back to Kenya to practice medicine after she graduated. Dr. Butler stated that she was not aware of Dean Toohey | |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| making a similar request of Mexican medical students enrolled at UCI (Interrog. Resp. #15, Butler Dep. 71:25; 72:1-9). | |
| 26. After enduring a hostile environment for an extended period, the Plaintiff decided to file an internal complaint of discrimination with the Office of Equality Opportunity and Diversity, OEOD. This office investigates claims of harassment and discrimination within the UCI system. Muthoka Decl. at Ex. M). | |
| 27. The Plaintiff's last experience at UCI was tainted by an intentional slight. The Plaintiff was provided a handwritten yellow card during her graduation ceremony. However, the non-Black graduates received a professionally typed white card. She was also given a 2022 graduation gown that differed in appearance from the gown the other 2023 graduates were wearing (Interrog. 5). | |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| 28. The Plaintiff was a qualified student with two separate disabilities. She suffers from testing anxiety and a Neurodevelopmental disorder related to visual processing. (Interrog. Resp. # 10; Muthoka Dep., Vol. I, 120:14-18; 121:5-7). | |
| 29. The school policy and the law required UCI to offer reasonable accommodations to students. UCI Disability Service Center is responsible for, and has undertaken, assisting students in assembling the requisite documentation and registering as students with disabilities who require accommodation. (Muthoka Decl. at ¶¶6, 8, 11). | |
| 30. The Plaintiff registered with the Center early in her medical school career. She was designated as a person with a disability and ultimately awarded accommodations. (Muthoka Decl. at ¶¶3-5). | |
| 31. One of the main accommodations she received was time | |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| and a half to take exams, but this accommodation was not offered initially. *Id.* | |
| 32. Whenever her accommodations were honored, she performed quite well on exams. Often, she set the curve in some of her classes, scoring 80 to 90% on exams when the school passing score was 60-70%. (Butler Dep. 58:20-23). | |
| 33. Dean Julianne Toohey did not believe that the Plaintiff deserved the designation of a student with a disability. She insisted the only issue Plaintiff had was a language issue because English was her second language (Interrog. Resp. # 15; Muthoka Decl. at ¶¶7, 10, 16, 17, Ex. G). | |
| 34. The Plaintiff repeatedly told Dean Toohey that this was not the case and showed her the documentation that established her disability. (Muthoka Decl. at ¶¶9, 17). | |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| 35. None of this evidence altered Dean Toohey's unreasonable position. She continued to insist that Plaintiff merely had a language issue, which was not a disability. (Muthoka Dep. Vol. I, 123:23-25; 124:1-25; 125:1-25; Muthoka Decl. at ¶¶7, 10, 16, Ex. G). | |
| 36. Dean Toohey's insistence that the Plaintiff did not have a disability created confusion within the Disability Service Center. (Muthoka Decl. at ¶¶12-16). | |
| 37. This confusion interfered with the Plaintiff receiving the benefit of accommodations. Once a student was registered as a person with a disability, he/she was supposed to receive the accommodation each time that he/she took exams (Interrog. Resp. 13; Muthoka Dep., Vol. I, 149:11-25). | |
| 38. The Plaintiff's first year at UCI was the 2016/2017 school year. Because of Dean Toohey's interference, the Plaintiff did not receive a | |

34

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| psychological evaluation until 2019. (Muthoka Decl. at ¶¶12-18). | |
| 39. Once the evaluation was done, she received time and a half due to her test anxiety diagnosis (Muthoka Dep., Vol. I, 150:1-25; 151:1-25). | |
| 40. UCI had a regular practice of helping students with disabilities arrange for testing accommodations with the NBME whenever they sat for Step 1 or Step 2 of USMLE. (Muthoka Decl. at ¶¶6, 8). | |
| 41. The Plaintiff reached out to Disability Service Center before sitting for the Step 1 Exam, to help her arrange accommodations for the test. However, the Defendant failed to arrange for the appropriate support for Plaintiff's requested accommodations as a result of misinformation by Dr. Toohey. (Muthoka Decl. at ¶¶16, 17, 18, 21). | |
| 42. Resultantly, she failed the Step 1 Examination. After she failed the Step 1 Examination a second time, after Dr. Toohey insisted she had language issues, Plaintiff was placed on leave and | |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| not permitted to enroll in new classes until she passed the exam. (Muthoka Decl. at ¶¶16-18) | |
| 43. The Defendant permitted other students to move forward in their studies who had not completed the step 1 exam, because the national testing facilities were closed due to Covid-19 pandemic (Muthoka Dep. Vol. I, 218:13-25). | |
| 44. At that time and several times after, Plaintiff encountered skepticism and resistance from Dean Toohey about whether she needed accommodation to take the test (Interrog. 13). | |
| 45. Dean Toohey was untruthful with Plaintiff about contacting the NBME regarding her accommodations for Plaintiff. She falsely stated that NBME told her the Plaintiff's request for accommodations was denied because it did not view language issues as a disability (Interrog. Resp. 13; Muthoka Dep., Vol. I, 165:4-23; 167:1-13; Muthoka Decl. at ¶16). | |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| 46. On January 19, 2019, Dr. Toohey advised Plaintiff that she should consider going back to her country since she felt it would be impossible for Plaintiff to get into a US medical residency program. (Muthoka decl. at ¶25). | |
| 47. The earliest Plaintiff could be put on inquiry notice that disability discrimination might be at issue was the email from Dr. Toohey on June 21, 2018 stating that Plaintiff erroneously had a "language issue." (Muthoka Decl. at ¶16). | |
| 48. At the time, Plaintiff did not know, as she subsequently discovered in October of 2019, that Dr. Toohey was lying about contacting NBME. (Muthoka Decl. at ¶27). | |
| 49. However, she did take note of the ongoing reference to a "language issue" phrasing but at the time thought it was perhaps a mistake by Dr. Toohey. (Muthoka Decl. at ¶7). | |
| 50. On May 26, 2020, Plaintiff submitted a complaint to the UCI Office | |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| of Equal Opportunity and Diversity (OEOD) regarding the race/national origin and disability discrimination that she had been subjected to as of that time. (Muthoka Decl. at ¶28, Ex. M). | |
| 51. On January 27, 2021, OEOD issued its final report on my complaint. A true and correct copy of the report. (Muthoka Decl. at ¶29, Ex. N). | |
| 52. On January 30, 2021, Plaintiff requested to appeal the findings. (Muthoka Decl. at ¶30, Ex. O). | |
| 53. On February 3, 2021, Plaintiff received a response that no appeal was available. (Muthoka Decl. at ¶31, Ex. P). | |
| 54. On July 21, 2021, Plaintiff filed a complaint with the United States Department of Education, Office of Civil Rights. (Muthoka Decl. at ¶32, Ex. Q); Request for Judicial Notice at ¶1. | |
| 55. The complaint was dismissed on September 14, 2021 as purportedly untimely. (Muthoka Decl. at ¶¶33-34). | |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| 56. On October 26, 2021, Plaintiff's attorney filed an appeal of the dismissal with OCR. (Muthoka Decl. at ¶¶34, Ex. R; Request for Judicial Notice at ¶2). | |
| 57. No decision has been received from OCR on the appeal to date. (Muthoka Decl. at ¶35). | |
| 58. Plaintiff had no knowledge that Dr. Toohey was on in a condition that she might pass away. UCI never provided notice to Plaintiff that Dr. Toohey had passed away. Plaintiff was no longer a student at UCI at the time Dr. Toohey passed away. (Muthoka Decl. at ¶36). | |
| 59. Dr. Toohey repeatedly emailed Plaintiff to meet with her, requiring multiple meetings that significantly detracted her from surgery rotation studies for the shelf examination and prep for retaking Step 1 of the USMLE. (Muthoka Decl. at ¶17). | |
| 60. Plaintiff was inundated with work for the surgery rotation and Dr. Toohey continued to insist that she had language issues – even requiring that she pay $5,225 for an unwarranted | |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| program even though Plaintiff kept pushing back on that issue. (Muthoka Decl. at ¶17). | |
| 61. The National Board of Medical Examiners has no record of contact by any of Defendant's employees regarding Plaintiff. (Convery Declaration). | |
| 62. In large part as a result of Dr. Toohey's email stating the decision from NBME was final, Plaintiff did not further press the accommodations issue at that time and took the USMLE Step 1 in October 2018 without accommodations and failed for a second time. This failure had cascading results for Plaintiff, nearly led her to be dismissed from the program, caused her to lose my housing and had other significant impacts. It also caused Plaintiff's academic record to be less competitive than her peers and denied her opportunities to more lucrative areas of medical practice like anesthesiology. (Muthoka Decl. at ¶¶17-18). | |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

63. Plaintiff suffered economic damages as a result of the delays in her schooling, the Step 1 test failures and the lowered score on the Step 2CK. Plaintiff sent out multiple applications for residencies that received no response. Some of those were for anesthesia residencies that pay a higher salary than the position Plaintiff accepted. Plaintiff has lost earning ability as a result. Plaintiff also had to pay money out of pocket as a result of the discriminatory treatment, including $5225 for a language program that Plaintiff did not require. She also had to pay rent to live to attend the program. (Muthoka Decl. at ¶38).

64. On April 9, 2023, while Plaintiff was taking the first day of the two-day Step 2CK, she received an intimidating email from Dr. Wiechmann. (Muthoka Decl. at ¶37, Ex S).

65. This email caused Plaintiff additional stress and anxiety and she received a lower score on the test than she had been receiving in her practice examinations for the Step 2CK. This

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| lower score impacted which residency programs she was competitive at and thus affected me economically. (Muthoka Decl. at ¶37). | |
| 66. The email was close in proximity to Plaintiff's advocacy that she was entitled to extended time to take the Step 2 CK exam because delays were caused in part by the actions of UCI. (Muthoka Decl. at ¶¶40, 41). | |
| 67. Defendant refused to recalculate my time to take the Step 2CK and I was forced to take it early with no dedicated study time after my classes ended as other students had the opportunity to do. As a result, I was put in unequal circumstances and failed the Step 2 CK. (Muthoka Decl. at ¶42). | |
| 68. Plaintiff then had to continue to advocate for her accommodations to be met as late as January 2023.

(Muthoka Decl. at ¶43, Ex. W). | |
| 69. One March 29, 2023, mere days before Dr. Wiechmann sent Plaintiff the April 3, 2023 email, Dr. Osborn emails Dr. Wiechmann with an update on | |

42

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | | |
|---|---|---|
| 1<br>2<br>3<br>4 | Plaintiff and states "Jackline Muthoka –<br>Has Step 2 scheduled for 4/3/23 – not<br>sure if she will walk this year?"<br>(Jambeck Decl. at ¶4). | |
| 5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13 | 70. According to the school policy,<br>"any student who fails Step 1<br>examination a second time will be<br>immediately removed from the third-<br>year curriculum and placed on a<br>specially tailored board preparation plan<br>as determined by the Office of Student<br>Affairs."<br>(Muthoka Decl. at ¶19). | |
| 14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23 | 71. In late 2018, Plaintiff learned for the<br>first time that she should have received<br>and submitted a psychological<br>examination to NBME in order to have<br>a good chance of obtaining an<br>accommodation. No one at UCI had<br>advised her of that previously even<br>though she was told my application<br>should go through UCI.<br>(Muthoka Decl. at ¶20). | |
| 24<br>25<br>26<br>27 | 72. In December 2018 after receiving<br>Dr. Selva-Rodriguez's email, Plaintiff<br>emailed Ms. Henderson saying: "I was<br>wondering what the process is to get | |
| 28 | | |

43

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| 1  examined regarding my exam issues. | |
| 2  Do you know how long the process | |
| 3  takes? How much does it cost? When | |
| 4  can I get it done...?" Ms. Henderson | |
| 5  replied to the Plaintiff's email saying, | |
| 6  "...I believe you are referring to a | |
| 7  comprehensive psychoeducational | |
| 8  evaluation, but I want to be clear" on | |
| 9      another email later that day, Ms. | |
| 10  Henderson emailed Plaintiff saying, | |
| 11  "... | |
| 12  You inquired about a comprehensive | |
| 13  psychoeducational evaluation. I have | |
| 14  included Dr. Toohey on this email per | |
| 15  your request. As mentioned to you over | |
| 16  the phone, DSC does not conduct | |
| 17  assessments. There are two local offices | |
| 18  that many students go to, and we have | |
| 19  had solid reports from." | |
| 20  (Muthoka Decl. at ¶22). | |
| 21  73. This email indicates that Ms. | |
| 22  Henderson knew the Plaintiff needed a | |
| 23  psychoeducational evaluation, knew | |
| 24  where she could send her for | |
| 25  assessment, and had never brought this | |
| 26  up for more than a year. According to | |
| 27  the School of Medicine policy that | |
| 28 | |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| applies to students with disabilities and seeking accommodations, it states "...DSC offers initial disability screenings to students who suspect their difficulty in the academic setting may be related to a disabling diagnosis..." (Muthoka Decl. at ¶23). | |
| 74. On April 25, 2019, Dr. Toohey sent an email referencing my language issues to UCI housing. (Muthoka Decl. at ¶61). | |
| 75. UCI's policy on supporting students traveling to foreign countries does not did not allow for the 2019 trip by the non-black students to Kenya because Kenya remaining on a travel warning list. (Jambeck Decl. at ¶5). | |

Date: March 27, 2025                         THE GIRLEY LAW FIRM, PA


                                                  /s/ Jerry Girley
                                            _____
                                            Jerry Girley
                                            Attorney for Plaintiff
                                            JACKLINE MUTHOKA

45

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

1   Date: March 27, 2025                    LEIGH LAW GROUP, P.C.

2                                            /s/ Jay T. Jambeck

3                                           _____
                                            Jay T. Jambeck
4                                           Attorney for Plaintiff
                                            JACKLINE MUTHOKA

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**