1   Jonathan D. Miller (SBN 220848)
2   jonathan@nshmlaw.com
    Alison M. Bernal (SBN 264629)
3   alison@nshmlaw.com
    NYE, STIRLING, HALE, MILLER & SWEET, LLP
4   33 West Mission Street, Suite 201
5   Santa Barbara, California 93101
    Telephone: (805) 963-2345
6   Facsimile: (805) 284-9590
7
8   Attorney for Defendant, REGENTS OF THE
    UNIVERSITY OF CALIFORNIA
9

10              UNITED STATES DISTRICT COURT
        CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION
11

12   JACKLINE MUTHOKA,                    CASE NO.: 8:23-cv-01333-FWS-JDE
                                          *Assigned to the Hon. Fred W. Slaughter*
13          Plaintiff,
                                          **DEFENDANT THE REGENTS OF
14   v.                                   THE UNIVERSITY OF
                                          CALIFORNIA'S RESPONSE TO
15   REGENTS OF THE UNIVERSITY OF         STATEMENT OF GENUINE
     CALIFORNIA,                          DISPUTES**
16

17          Defendant.
                                          DATE:      May 29, 2025
18                                        TIME:      10:00 a.m.
                                          DEPT.:     10D
19

20                                        Compl. Filed:  July 23, 2023
                                          SAC Filed:     Jan. 22, 2024
21                                        Trial Date:    Nov. 4, 2025
22

23

24

25

26

27

28
                                    1
     **DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**TO PLAINTIFF JACKLINE MUTHOKA AND HER ATTORNEYS OF RECORD:**

Pursuant to Central District of California Local Rule 56-1, Defendant The Regents of the University of California ("Defendant" or "The Regents") hereby submits its Response to Plaintiff Jackline Muthoka's ("Plaintiff") Statement of Genuine Disputes (Dkt. 76).

## I. DEFENDANT'S RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF GENUINE DISPUTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1. UCI SOM admits 3.9% of applicants, with a median MCAT score of 516, and a median undergraduate GPA of 3.89.<br><br>Declaration of Dr. Megan Osborn ("Osborn Decl."), ¶ 3. | 1. Undisputed. |
| 2. UCI SOM has established educational objectives applicable to all students.<br><br>Osborn Decl., ¶ 4. | 2. Undisputed. |
| 3. UCI SOM requires students to achieve passing grades for all courses in the MD curriculum.<br><br>Osborn Decl., ¶ 4. | 3. Undisputed. |
| 4. UCI SOM requires students to pass the United Stated Medical Licensing Exam ("USMLE") Step 1 and Step 2CK administered by the National Board of Medical Examiners ("NBME").<br><br>Osborn Decl., ¶ 4. | 4. Undisputed. |

2

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 5.  UCI SOM requires students to pass the Clinical Performance Examination ("CPX").<br><br>Osborn Decl., ¶ 4. | 5.  Undisputed. |
| 6.  The failure to pass USMLE Step 1 or Step 2CK precludes graduation without exception.<br><br>Osborn Decl., ¶ 5. | 6.  Undisputed. |
| 7.  Students have a maximum of six academic years to complete their MD.<br><br>Osborn Decl., ¶ 5. | 7.  Disputed. The time to complete the program is extended by any approved leave of absence.<br><br>Muthoka Decl. at Ex. T. |

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact that Students have a maximum of six academic years to complete their MD, but merely adds that this maximum time of enrollment excludes "time spent on an approved leave of absence." Muthoka Decl. at Ex. T. This additional information is immaterial because, as Plaintiff asserts in her Declaration, *see* Muthoka Decl. at ¶¶ 55–57, Plaintiff did not seek an extension of time to complete her MD due to an approved leave of absence, but instead disagreed with the P&H Committee's calculation of the deadline based on Plaintiff's assertions that: (1) she was admitted to the MD and MBA program, *see id.* ¶ 56; and (2) there were "issues created by Dr. Toohey within DSC and NBME," *id.*; (3) there were "issues created by Ms. Henderson and NBME,"; (4) the "Covid-19 global pandemic"; and (5) she believed she was entitled to additional time because Dr. Forthal approved Plaintiff to take her required exam on a different date, *see* Muthoka Decl., Ex. U at Bates PL-03128.

| | |
|---|---|
| 8.  Students are considered in "good standing" if they have no unremediated course or clerkship failure, timely completed Step 1 and Step 2CK, and are not under any formal disciplinary review by the | 8.  Undisputed. |

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

3

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Committee for Promotions & Honors ("P&H"). <br><br> Osborn Decl., ¶ 6. | |
| 9.  Students may be referred to P&H for several reasons, including, (1) two clerkship failures, (2) failure to pass Step 1 within one year of the student's last day of their second year, (3) failure to pass Step 2CK by the deadlines in the UCI SOM Exam Administration and Procedures Policy, (4) two failed attempts at Step 1 or Step 2CK. <br><br> Osborn Decl., ¶ 7. | 9.  Undisputed. |
| 10.  All students receive these policies upon matriculation at UCI SOM and they are accessible on the school's website. <br><br> Declaration of Alison M. Bernal ("Bernal Decl."), Ex. 3 (University of California, Irvine, School of Medicine Student Handbook, compiled January 27, 2017, and produced as part of "Exhibit A" in Plaintiff's initial document disclosure (bates numbers PL 00129-00316)); Osborn Decl., ¶ 8. | 10.  Undisputed. |
| 11.  Plaintiff's MCAT scores and undergraduate GPA did not qualify her for admission to UCI SOM. <br><br> Bernal Decl., Ex. 2, ¶ 17 (Declaration of Jackline Muthoka in Support of Plaintiff's Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, Case No. 8:20-CV-01072-JLS-KES); Ex. 4, | 11.  Disputed: Plaintiff completed a postbaccalaureate program and Conditional program (in addition to her Bachelor's degree) at UCI and achieved a more than the average GPA for her 2016 class. Additionally, her MCAT scores were not reflective of her abilities as she was not provided reasonable accommodations and was not |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| at PL 02868 (Plaintiff's Review of OEOD Draft Investigation Report and Evidence, dated December 8, 2020, and produced as "Exhibit K" in Plaintiff's initial document disclosure (bates numbers PL 02865-02891). | tested despite being at UCI for both programs and informing the school. Muthoka Decl. at ¶44. |

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact, but rather confirms that Plaintiff's MCAT scores and undergraduate GPA did not qualify her for admission to UCI SOM. *See* Bernal Decl., Ex. 2, ¶ 17 (Plaintiff's Declaration stating Plaintiff's MCAT scores were in the 40th, 15th, and 11th percentiles). Moreover, Plaintiff's cited evidence lacks any firsthand knowledge of the admission process; whereas, the evidence Defendant cites is of a school administrator with firsthand knowledge of Plaintiff's admission criteria, or lack thereof.

| 12. Plaintiff was admitted to UCI SOM through a conditional program offered to students who did not meet the standard metrics for medical school admission. Bernal Decl., Ex. 2, ¶ 3; Bernal Decl., Ex. 4 at PL 02868; Osborn Decl., ¶ 9. | 12. Disputed: Muthoka Decl. at Ex. N, pg. 8. |

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact that Plaintiff was admitted to UCI SOM through a conditional program offered to students who did not meet the standard metrics for medical school admission. Plaintiff's cited evidence in Exhibit N, an Investigation Report from the Office of Equal Opportunity and Diversity ("OEOD"), summarizes Plaintiff's own statement to OEOD in which Plaintiff recognizes that Plaintiff participated in the conditional program that "admits students with low Medical College Admission Test (MCAT) scores" and that the UCISOM Post-Baccalaureate Program "is designed to assist disadvantaged applicants in gaining acceptance to medical school, with the ultimate goal of increasing the number of physicians in underserved areas." Muthoka Decl. at Ex. N, pg. 8. Additionally, Plaintiff's Declaration in her case against the NBME in fact recognizes that Plaintiff's MCAT scores were in the

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 40th, 15th, and 11th percentiles, which is below the UCI SOM admission requirements. *See* Bernal Decl., Ex. 2, ¶ 17. | |
| 13.  Plaintiff's grades and test scores still put her on the cusp of not getting into the school even after she was admitted to the conditional program, but a UCI SOM employee successfully lobbied for Plaintiff's admission. Bernal Decl., Ex. 2, Pages 110-111; Osborn Decl., ¶ 10. | 13.  Disputed: Objection to statement at Osborn Decl. ¶10 which contains hearsay without an exception that a colleague advocated for Plaintiff. FRE 801, 802. |

**Moving Party's Response:**

Plaintiff does not dispute the fact, but rather appears to dispute the form of the evidence.  Plaintiff provides no opposition evidence showing such a dispute. In any event, Plaintiff's objection regarding a UCI SOM employee successfully lobbying for Plaintiff's admission is immaterial as Plaintiff does not dispute that her grades and test scores still put her on the cusp of not getting into the school and there is no dispute that Plaintiff was accepted to UCI SOM, attended, and graduated.  Additionally, Plaintiff's Declaration in her case against the NBME in fact recognizes that Plaintiff's MCAT scores were in the 40th, 15th, and 11th percentiles, below the UCI SOM admission requirements.  *See* Bernal Decl., Ex. 2, ¶ 17.

| | |
|---|---|
| 14.  Plaintiff matriculated at UCI SOM in 2016. Bernal Decl., Ex. 2, ¶ 4; Osborn Decl., ¶ 10. | 14.  Undisputed. |
| 15.  Plaintiff met with a wellness officer at UCI SOM in February 2017. Henderson Decl., ¶ 2. | 15.  Undisputed. |
| 16.  Plaintiff requested the wellness officer send a form to UCI's Disability Services | 16.  Disputed: The plaintiff requested the wellness officer to submit her documentation to DSC. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Center requesting testing accommodations for Plaintiff.<br><br>Henderson Decl., ¶ 2 | Muthoka Decl. at ¶45. |

**Moving Party's Response:**

The dispute is not material, and in any event, the documentation submitted by the wellness officer to DSC was a one-page form, which is its own best evidence. *See* Henderson Decl., Ex. 1.

| 17. After the Disability Services Center received this form from Plaintiff in February 2017, the Disability Services Center sent a letter to UCI SOM stating that Plaintiff was eligible to receive accommodations in the form of time and a half on all tests.<br><br>Henderson Decl., ¶ 3; Henderson Decl., Ex. 2 | 17. Disputed: The wellness submitted Plaintiff's paperwork to the DSC, not the plaintiff. The plaintiff only requested a verification form to be sent specifically to Dr. Jullianne Toohey to stop the "Language issue" labeling by Dr. Toohey.<br><br>Muthoka Decl. at ¶¶9, 45. |

**Moving Party's Response:**

Plaintiff's response and supporting evidence do not dispute the fact that the Disability Services Center sent a letter to UCI SOM stating that Plaintiff was eligible to receive accommodations in the form of time and one half. *See* Henderson Decl., Ex. 2. Plaintiff's response provides additional irrelevant and immaterial information about Plaintiff's request, making it appear as if Plaintiff in fact did not want the accommodations UCI SOM provided.

| 18. After UCI SOM received the letter from the Disability Services Center stating Plaintiff was eligible for accommodations, Plaintiff received time and a half on all examinations at the medical-school level by UCI SOM (meaning those examinations that are not administered by third-party test providers). | 18. Disputed. The Henderson declaration does not state that Plaintiff always received her accommodations only that she was approved for accommodations. |

7

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Henderson Decl., ¶ 4; | |

**Moving Party's Response:**

Plaintiff is incorrect.  The Henderson Declaration states, "After UCI SOM received the letter from my office stating Plaintiff was eligible for accommodations, *Plaintiff received time and a half on all examinations at the medical-school level* (meaning those examinations that are not administered by third-party test providers, described in more detail below)."  Henderson Decl., ¶ 4 (emphasis added).

| | |
|---|---|
| 19.  Plaintiff passed her coursework in her first year and second year, with courses ending March 2018 prior to a seven-week study period culminating in taking the USMLE Step 1 exam.<br><br>Bernal Decl., Ex. 2, Pages 110-111; Osborn Decl., ¶ 14. | 19.  Undisputed. |
| 20.  UCI SOM does not administer or control the USMLE Step and shelf examinations.<br><br>Osborn Decl., ¶ 11. | 20.  Disputed: Muthoka Decl. at ¶46. |

**Moving Party's Response:**

Neither Plaintiff's response nor Plaintiff's proffered evidence disputes the fact. Plaintiff's response and supporting evidence are wholly irrelevant to the fact and do not dispute, or address, any of Defendant's evidence in support of the fact, a declaration from Dr. Megan Osborn, UCI SOM's Senior Associate Dean of Students based on personal knowledge. *See* Osborn Decl., ¶ 11.  Plaintiff does not have personal knowledge of the NBME's administration and control of the USMLE Step and shelf examinations.

| | |
|---|---|
| 21.  The NBME administers and controls the USMLE Step and shelf examinations. | 21.  Disputed: Muthoka Decl. at ¶46. |

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Osborn Decl., ¶ 11; Henderson Decl., ¶ 6 | |

**Moving Party's Response:**

Neither Plaintiff's response nor Plaintiff's proffered evidence disputes the fact. Plaintiff's response and supporting evidence are wholly irrelevant to the fact and do not dispute, or address, any of Defendant's evidence in support of the fact, declarations based on personal knowledge from Dr. Megan Osborn, UCI SOM's Senior Associate Dean of Students, and Rosezetta Henderson, a senior disability specialist in the Disability Services Center at the University of California, Irvine. *See* Osborn Decl., ¶ 11; Henderson Decl., ¶ 6. Plaintiff does not have personal knowledge of the NBME's administration and control of the USMLE Step and shelf examinations.

| 22. The NBME decides whether students receive testing accommodations on Step and shelf examinations. <br><br> Osborn Decl., ¶ 11. | 22. Disputed: Muthoka Decl. at ¶46. |
|---|---|

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact that the NBME decides whether students receive testing accommodations on Step and shelf examinations. Additionally, the UCI SOM Student Handbook, compiled January 27, 2017 and produced as part of Plaintiff's initial document disclosure, expressly states in a section addressing USMLE examinations: "Any special accommodations need to be requested directly from the NBME." *See* Bernal Decl., Ex. 3 at PL-00163. Furthermore, Plaintiff's proffered evidence (Plaintiff's declaration) contradicts Plaintiff's sworn declaration in Plaintiff's lawsuit against NBME, in which Plaintiff acknowledges that after she "applied for a testing modification of 50% increased time from Defendant [NBME] for Step 1 of the USMLE," "NBME denied my request for a modification . . ." Bernal Decl., Ex. 2, ¶¶ 8–9; *see also id.* ¶ 11 (" In the Spring of 2019, I again requested from [NBME] a reasonable modification of 50% additional testing time for the USMLE Step 1 examination"); ¶ 13 ("[NBME] again denied me my requested (and recommended) accommodation").

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 23.  The student is responsible for applying for accommodations with the NBME.<br><br>Osborn Decl., ¶ 11. | 23.  Disputed in that UCI assists students with applying for accommodations and told Plaintiff that requests should include testing at the disability center and then submission by the disability center to NBME.<br><br>Muthoka Decl. at ¶6-8, Ex. B. |

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact the student is responsible for applying for accommodations with the NBME.  Additionally, the UCI SOM Student Handbook, compiled January 27, 2017 and produced as part of Plaintiff's initial document disclosure, expressly states in a section addressing USMLE examinations: "Any special accommodations need to be requested directly from the NBME." *See* Bernal Decl., Ex. 3 at PL-00163.  Plaintiff's proffered evidence, in fact, recognizes that Plaintiff herself submitted her request for step 1 accommodation and that Dr. Hurria recommended that the "disability center *test* [Plaintiff] and then submit paperwork on [Plaintiff's] behalf," not that the disability center would apply for accommodations with the NBME on Plaintiff's behalf.  Furthermore, Plaintiff's cited evidence is contradicted by her sworn declaration in her lawsuit against NBME in which she states "I applied for a testing modification of 50% increased time from [NBME] for Step 1 of the USMLE based upon my disabling condition" and "NBME denied my request for a modification." Bernal Decl., Ex. 2, ¶¶ 8–9; *see also id.* ¶ 11 ("In the Spring of 2019, I again requested from [NBME] a reasonable modification of 50% additional testing time for the USMLE Step 1 examination").

| 24.  The University or Disability Services can communicate with NBME for general information but cannot discuss student specific requests.<br><br>Henderson Decl., ¶ 6 | 24.  Disputed in that Dr. Toohey claimed she had extensive discussions with NBME about Plaintiff's language issues not being a disabling condition.<br><br>Muthoka Decl. at ¶16, Ex. G. |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact that the University or Disability Services can communicate with NBME for general information but cannot discuss student specific requests.  Plaintiff's proffered evidence simply states that Dr. Toohey "spoke[] extensively to the NBME *regarding any possible recourse for additional time due to a language issue*" and "received [NBME's final word that because this is not a defined ADA disability, [the NBME is] unable to provide any assistance." (Emphasis added.) The evidence is consistent with the fact that the University or Disability Services can communicate with NBME *for general information* but cannot discuss student specific requests, as the evidence in Exhibit G simply recognizes that Dr. Toohey discussed with the NBME "additional time due to a language issue" and received NBME's final word that a language issue is not a defined ADA disability, not that Dr. Toohey discussed *Plaintiff's* language issues.

| 25.  The NBME communicate with the student directly.<br><br>Henderson Decl., ¶ 6 | 25.  Disputed in that Dr. Toohey claimed she had extensive discussions with NBME about Plaintiff's language issues not being a disabling condition.<br><br>Muthoka Decl. at ¶16, Ex. G. |
|---|---|

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact that NBME communicate with the student directly.  Plaintiff's proffered evidence simply states that Dr. Toohey "spoke[] extensively to the NBME regarding any possible recourse *for additional time due to a language issue*" and "received [NBME's final word that because this is not a defined ADA disability, [the NBME is] unable to provide any assistance." (Emphasis added.) The evidence in Exhibit G simply recognizes that Dr. Toohey discussed with the NBME "additional time due to a language issue" and received NBME's final word that a language issue is not a defined ADA disability, not that Dr. Toohey "claimed she had extensive discussions with NBME about Plaintiff's language issues not being a disabling condition."

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 26. Plaintiff applied for accommodations with the NBME in 2017.<br><br>Henderson Decl., ¶¶ 7–8 | 26. Disputed to the extent that the disability center assisted Plaintiff with the application.<br><br><br><br>Muthoka Decl. at ¶¶6,11. |

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact that Plaintiff applied for accommodations with the NBME in 2017. In fact, Plaintiff's Declaration in her lawsuit against the NBME states that she applied for accommodations: "In the fall of 2017, I applied for a testing modification of 50% increased time from Defendant for Step 1 of the USMLE." Bernal Decl., Ex. 2 at ¶ 8.

| 27. The NBME denied Plaintiff accommodations because "experiencing anxiety during a high stakes test is not evidence of a disability or a substantial limitation in a major life activity."<br><br>Henderson Decl., ¶ 8 | 27. Disputed in that Dr. Toohey claimed she had extensive discussions with NBME about Plaintiff's language issues not being a disabling condition.<br><br>Muthoka Decl. at ¶16, Ex. G. |

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact that the NBME denied Plaintiff accommodations because "experiencing anxiety during a high stakes test is not evidence of a disability or a substantial limitation in a major life activity." Plaintiff's proffered evidence simply states that Dr. Toohey "spoke[] extensively to the NBME *regarding any possible recourse for additional time due to a language issue*" and "received [NBME's final word that because this is not a defined ADA disability, [the NBME is] unable to provide any assistance." (Emphasis added.) The evidence in Exhibit G simply recognizes that Dr. Toohey discussed with the NBME "additional time due to a language issue" and received NBME's final word that a language issue is not a defined ADA disability, not that Dr. Toohey "claimed she had extensive discussions with NBME about Plaintiff's language issues not being a disabling condition."

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

12
**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 28.  On May 7, 2018, Plaintiff took the USMLE Step 1 exam for the first time and failed.<br><br>Bernal Decl., Ex. 2, ¶ 9; Ex. 4, at PL 02888; Ex. 5, at PL 01700, 01745 (UCI SOM's investigative report regarding Plaintiff by Dr. Donald Forthal, dated September 30, 2019, and produced as "Exhibit B" in Plaintiff's initial document disclosure (bates numbers PL 01692-01745)); Osborn Decl., ¶ 15. | 28.  Undisputed. |
| 29.  On July 12, 2018, Plaintiff took the Surgery shelf examination and failed.<br><br>Osborn Decl., ¶ 16. | 29.  Disputed to the extent that Dr. Toohey interfered with Plaintiff's course of study during the summer of 2018 including continuing to claim that she suffered from language issues, lying about contacting NBME and placing undue burdens on Plaintiff.<br><br>Muthoka Decl. at ¶16, Ex. G, ¶17, ¶18. |

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact that Plaintiff took the Surgery shelf examination and failed. Plaintiff's objection simply includes Plaintiff's additional characterizations as to why she failed the Surgery shelf examination she took on July 12, 2018, without changing the undisputed fact that she did, in fact, fail.

| | |
|---|---|
| 30.  From July 16, 2018, through November 4, 2018, Plaintiff was on administrative leave from UCI SOM because of her Step 1 failure, per school policy. | 30.  Disputed: Plaintiff was on administrative leave because of issues created by Dr. Julianne Toohey and the Disability Services |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Osborn Decl., ¶ 17. | Center that led her to fail the USMLE step 1 exam. |

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact that Plaintiff was on administrative leave from UCI SOM because of her Step 1 failure, per school policy.

| 31. On October 30, 2018, Plaintiff took the USMLE Step 1 examination for a second time and failed again.<br><br>Bernal Decl., Ex. 2, ¶ 10; Ex. 4, at PL 02888; Ex. 5, at PL 01700, 01745; Osborn Decl., ¶ 18. | 31. Plaintiff re-took the examination without accommodation due to misrepresentations by Dr. Toohey along with Dr. Toohey's interference with Plaintiff's studies and test preparation in the summer and fall of 2018.<br><br>Muthoka Decl. at ¶16, Ex. G, ¶17, ¶18. |

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact that Plaintiff took the USMLE Step 1 examination for a second time and failed. Plaintiff's response includes additional irrelevant information that does not dispute this fact. Additionally, Plaintiff's cited evidence from her declaration in this case contradicts Plaintiff's sworn declaration in her lawsuit against NBME in which she states, "NBME denied my request for a modification on or about January 2, 2018 *on the basis that 'experiencing anxiety during high stakes tests is not evidence of a disability or a substantial limitation in a major life activity.'" See* Bernal Decl., Ex. 2, ¶¶ 8–10 (emphasis added).

| 32. From December 3, 2018, through December 6, 2020, Plaintiff was on administrative leave for her two Step 1 failures. | 32. Disputed to the extent that Covid-19 also occurred during this time period and impacted timing. |

14

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Bernal Decl., Ex. 5, at PL 01700; Osborn Decl., ¶ 19. | |

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact but merely adds additional information.

| 33. In December 2018, after being placed on administrative leave a second time, the UCI housing office communicated to Plaintiff that she would need to re-enroll at UCI SOM to continue living in university housing.<br><br>Bernal Decl., Ex. 6, at PL 01751 (Plaintiff's response letter to Dr. Donald Forthal's investigative report, undated, and produced as part of "Exhibit C" in Plaintiff's initial document disclosure (bates numbers PL 01747-01763)); Osborn Decl., ¶ 20. | 33. Disputed.<br><br>Muthoka Decl. at ¶48. |

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact. Plaintiff's evidence simply states, "A student can live on campus under three circumstances: a.) Enrolled at UCI b.) On approved university Leave of Absence c.) If the leave of absence is more than one academic year, a letter of support is required from the student's department." Muthoka Decl. at ¶48. Additionally, Defendant's cited evidence is Plaintiff's own response letter to Dr. Donald Forthal's investigative report, in which Plaintiff quotes an email stating "With a university-approved leave of absence, you can continue living in your apartment. Our office would need the same approvals as you received before. Your intent must be to return and enroll again after the absence. If it's more than a full academic year, additional supporting documents will be required for your exception to live in student housing while not enrolled." Bernal Decl., Ex. 6, at PL 01751.

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 34.  On January 25, 2019, UCI re-sent Plaintiff the Notice of USMLE Policies. Bernal Decl., Ex. 7, at PL 02784-02785 (Email from Dr. Megan Osborn to Plaintiff regarding United Stated Medical Licensing Exam ("USMLE") testing policies, dated January 24, 2019, and produced as part of "Exhibit G" in Plaintiff's initial document disclosure (bates numbers PL 02784-02785)); Osborn Decl., ¶ 21. | 34.   Undisputed. |
| 35.  UCI reiterated to Plaintiff that she needed to pass Step 1 by March 15, 2019, to avoid academic probation, or by March 15, 2020, to avoid dismissal. Bernal Decl., Ex. 7, at PL 02784-02785; Osborn Decl., ¶ 21. | 35.   Undisputed. |
| 36.  Plaintiff did not take Step 1 by March 15, 2019. Bernal Decl., Ex. 8, at PL 02445 (Plaintiff's Office of Equal Opportunity and Diversity complaint form, dated May 26, 2020, and produced as part of "Exhibit G" in Plaintiff's initial document disclosure (bates numbers PL 02432-02452)); Osborn Decl., ¶ 22. | 36.  Disputed to the extent this was due to the delays caused by the interference of Dr. Toohey emphasizing Plaintiff's language issues. Muthoka Decl. at ¶16, Ex. G, ¶17. |
| **Moving Party's Response:** Plaintiff's proffered evidence does not dispute the fact that Plaintiff did not take Step 1 by March 15, 2019, but simply adds irrelevant additional information. | |

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

16

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

Nye, Stirling, Hale, Miller & Sweet
33 West Mission Street, Suite 201
Santa Barbara, California 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 37.  On March 21, 2019, UCI housing sent Plaintiff notice she needed to vacate by April 30, 2019.<br><br>Osborn Decl., ¶ 22. | 37.  Undisputed. |
| 38.  Dr. Julianne Toohey of UCI SOM sent a letter to the housing office in support of Plaintiff, requesting an extension of the housing deadline.<br><br>Bernal Decl., Ex. 9, at PL 01784 (Plaintiff's addendum to her letter to UCI SOM's Committee for Promotions & Honors, dated October 11th, 2019, and produced as part of "Exhibit G" in Plaintiff's initial document disclosure (bates numbers PL 01779-01789)); Osborn Decl., ¶ 23. | 38.  Disputed.<br><br>Muthoka Decl. at ¶¶49, 61. |

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact that Dr. Julianne Toohey of UCI SOM sent a letter to the housing office in support of Plaintiff, requesting an extension of the housing deadline.  The letter from Dr. Toohey unquestionably requests that the housing office provide Plaintiff with help by allowing her to remain in her apartment, despite not being enrolled.  *See* Muthoka Decl., Ex. X.

| | |
|---|---|
| 39.  The UCI housing office approved the extension to March 31, 2019.<br><br>Osborn Decl., ¶ 23. | 39.  Disputed to the extent Plaintiff was not seeking an extension but needed housing.<br><br>Muthoka Decl. at ¶50. |

**Moving Party's Response:**

Plaintiff's proffered evidence does not dispute the fact that the UCI housing office approved the extension to March 31, 2019, but simply states that Plaintiff "was not seeking an extension for housing but rather needed university housing as I

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| could not afford local housing."  Plaintiff's reason for the dispute is not clear and in any event, immaterial. | |
| 40.  In May 2019, Plaintiff appealed her denial of accommodations to the NBME, seeking: 50% additional testing time, a separate room, and additional break time.<br><br>Bernal Decl., Ex. 4, at PL 02888; Osborn Decl., ¶ 24. | 40.  Undisputed. |
| 41.  The NBME provided Plaintiff with a separate room and additional break time, but did not agree to the additional testing time.<br><br>Bernal Decl., Ex. 4, at PL 02888; Osborn Decl., ¶ 24. | 41.  Undisputed. |
| 42.  On July 12, 2019, UCI SOM notified Plaintiff that, because she had not retaken the surgery shelf exam within one year of the deadline, her grade would be changed from "incomplete" to "fail."<br><br>Bernal Decl., Ex. 5, at PL 01695, 01700, 01745; Osborn Decl., ¶ 25. | 42.  Disputed.<br><br>Muthoka Decl. at ¶51. |

**Moving Party's Response:**

Plaintiff's evidence does not dispute the fact that Plaintiff had not retaken the surgery shelf exam within one year of the deadline or that her grade would be changed from "incomplete" to "fail."  Plaintiff's cited evidence from her declaration only states that Plaintiff "made arrangements" to retake the surgery shelf exam.

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 43.  Due to Plaintiff's academic probation and failure to pass her surgery clerkship, Plaintiff received notice on September 30, 2019, that she would need to appear at a hearing before the P&H Committee.<br><br>Bernal Decl., Ex. 5, at PL 01692; Osborn Decl., ¶ 26. | 43.  Undisputed it was received but disputed as to reasons for the failure and as to probation.<br><br>Muthoka Decl. at ¶¶16, 17, 52. |

**Moving Party's Response:**

Plaintiff's cited evidence does not dispute the fact that Plaintiff received notice on September 30, 2019, that she would need to appear at a hearing before the P&H Committee due to her academic probation and failure to pass her surgery clerkship.  Plaintiff's evidence only offers immaterial information about her assertions as to why she was on academic probation and failed to pass her surgery clerkship.

| | |
|---|---|
| 44.  While waiting for her P&H hearing date, Plaintiff requested an extension to complete her pediatric clerkship, which the University granted.<br><br>Osborn Decl., ¶ 26. | 44.  Disputed to the extent that the plaintiff was requesting an extension to complete the pediatric clerkship because of the issues created by Dr. Julianne Toohey and Disability services center.<br><br>Muthoka Decl. at ¶¶16, 17. |

**Moving Party's Response:**

Plaintiff's cited evidence does not dispute the fact that while waiting for her P&H hearing date, Plaintiff requested an extension to complete her pediatric clerkship, and that the University granted the extension.  Plaintiff only disputes the reason she did not complete her pediatric clerkship.

| | |
|---|---|
| 45.  The Disability Services Center supported Plaintiff by helping her write an | 45.  Disputed to the extent that the Disability Services Center did this as a matter of course. |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| appeal of the NBME's denial of her accommodations in 2019.<br><br>Henderson Decl., ¶ 10. | Muthoka Decl. at ¶6. |

**Moving Party's Response:**

Plaintiff's evidence does not dispute the fact that the Disability Services Center supported Plaintiff by helping her write an appeal of the NBME's denial of her accommodations in 2019. Plaintiff's cited evidence simply acknowledges that the Disability Services Center "had a standard practice of facilitating the process for the medical students taking the [NBME Step 1 Exam]," but makes this statement without any support in the record, and without any personal knowledge of what the DSC's standard practice was or was not.

| 46.  Plaintiff's P&H hearing was held on March 9, 2020.<br><br>Bernal Decl., Ex. 10, at PL 01764-01765 (UCI SOM's Promotions and Honors Hearing Decision regarding Plaintiff by Dr. Donald Forthal, dated March 16, 2020, and produced as part of "Exhibit C" in Plaintiff's initial document disclosure (bates numbers PL 01764-01765)); Osborn Decl., ¶ 27. | 46. Undisputed. |
| 47.  Plaintiff was eligible for dismissal due to her failure to pass the USMLE Step 1 within two years.<br><br>Osborn Decl., ¶ 27. | 47.  Undisputed. |
| 48.  P&H committee offered Plaintiff an additional chance by placing her on academic probation, giving her a deadline to take the USMLE Step 1 by May 3, 2020, granting an extension on her surgery shelf exam to March 9, 2021 (with a grade change | 48.  Disputed as to the reasons the extensions were provided.<br><br>Muthoka Decl. at ¶¶16, 17. |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| from fail to incomplete), and a deadline to complete her pediatrics rotation by November 20, 2020.<br><br>Osborn Decl., ¶ 27. | |

**Moving Party's Response:**

Plaintiff's cited evidence does not dispute the fact that the P&H committee granted Plaintiff additional time for her exams. Plaintiff's evidence only takes issue with the reason Plaintiff did not pass her Step 1 exam.

| | |
|---|---|
| 49. In June 2020, Plaintiff sued the NBME for disability discrimination.<br><br>Osborn Decl., ¶ 28. | 49. Undisputed. |
| 50. Plaintiff sought an injunction requiring the NBME to allow her 50% additional time on the Step 1 examination.<br><br>Osborn Decl., ¶ 28. | 50. Undisputed. |
| 51. The NBME resolved the lawsuit by allowing Plaintiff the additional testing time.<br><br>Osborn Decl., ¶ 28. | 51. Undisputed. |
| 52. Plaintiff took Step 1 on October 12, 2020, and passed on this third attempt.<br><br>Bernal Decl., Ex. 4, at PL 02889; Osborn Decl., ¶ 29. | 52. Undisputed. |
| 53. After passing Step 1, Plaintiff resumed her clerkships and completed her pediatrics clerkship on December 27, 2020. | 53. Undisputed. |

21

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 54.  Plaintiff did not pass the pediatrics shelf examination, placing her back on administrative leave for two incomplete clerkships (surgery and pediatrics).<br><br>Osborn Decl., ¶ 30. | 54.  Disputed because of issues created by Dr. Toohey.<br><br>Muthoka Decl. at ¶¶16, 17, 53. |
| **Moving Party's Response:**<br><br>Plaintiff's cited evidence does not dispute the fact.  Plaintiff's evidence only takes issue with the purported reason Plaintiff did not pass her shelf exams. | |
| 55.  Plaintiff was on administrative leave from January 26, 2021, through March 21, 2021.<br><br>Osborn Decl., ¶ 30. | 55.  Undisputed. |
| 56.  Plaintiff requested an extension to complete the pediatric and surgery clerkship, which the P&H committee approved through March 9, 2021.<br><br>Osborn Decl., ¶ 31. | 56.  Undisputed. |
| 57.  On March 4, 2021, Plaintiff requested a further extension, which the committee approved through March 12, 2021, while also reminding Plaintiff of the six-year deadline for curriculum completion.<br><br>Osborn Decl., ¶ 31. | 57.  Undisputed. |
| 58.  On March 8, 2021, Plaintiff requested another extension on the surgery shelf exam, saying she was not prepared. | 58.  Disputed that Plaintiff was unprepared. Her extensions were due to dealing with the circumstances created by UCI. |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Osborn Decl., ¶ 31. | Muthoka Decl. at ¶53. |

**Moving Party's Response:**

Plaintiff's cited evidence does not dispute the fact. Plaintiff's evidence only takes issue with the purported reason Plaintiff was not prepared to take the surgery shelf exam.

| 59. The P&H Committee denied the request.<br><br>Osborn Decl., ¶ 31. | 59. Undisputed. |
|---|---|
| 60. Plaintiff did not take the surgery shelf by the deadline and took it instead on March 19, 2021.<br><br>Osborn Decl., ¶ 32. | 60. Disputed.<br><br>Muthoka Decl. at ¶54. |

**Moving Party's Response:**

Plaintiff's cited evidence does not dispute the fact that Plaintiff did not take the surgery shelf exam by the deadline or that she took the exam instead on March 19, 2021. Plaintiff's evidence only takes issue with the purported reason Plaintiff did not take the surgery shelf exam by the deadline.

| 61. Plaintiff failed the surgery shelf a second time, resulting in a final failing grade in the surgery rotation.<br><br>Bernal Decl., Ex. 11, at PL 03131 (Email between Plaintiff and Dr. Shannon Toohey, dated September 20, 2021, and produced as part of "Exhibit U" in Plaintiff's initial document disclosure (bates numbers PL 03128-03131)); Osborn Decl., ¶ 32. | 61. Undisputed. |
|---|---|

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
| --- | --- |
| 62.  On March 30, 2021, Plaintiff requested an extension on her six-year graduation timeline.<br><br>Bernal Decl., Ex. 11, at PL 03130; Osborn Decl., ¶ 33. | 62. Undisputed. |
| 63.  The P&H Committee agreed to adjust Plaintiff's six-year timeline due to the COVID-19 pandemic.<br><br>Bernal Decl., Ex. 11, at PL 03129-03130; Osborn Decl., ¶ 33. | 63.  Disputed. The P&H committee did not properly calculate the six year timeline.<br><br>Muthoka Decl. at Ex. U Bates 3128. |
| **Moving Party's Response:**<br><br>Plaintiff's evidence does not dispute the fact that the P&H Committee agreed to adjust Plaintiff's six-year timeline due to the COVID-19 pandemic. Plaintiff's evidence simply shows Plaintiff disagreed with the P&H Committee's calculation of the six-year timeline. *See* Muthoka Decl. at Ex. U Bates 3128.  In any event, the alleged dispute is immaterial as Plaintiff received an adjustment to the six-year timeline to graduate and Plaintiff did in fact graduate after seven years. | |
| 64.  On June 1, 2021, Plaintiff received notice she did not pass her internal medicine NBME shelf examination.<br><br>Osborn Decl., ¶ 34. | 64. Undisputed. |
| 65.  On July 19, 2021, Plaintiff received notice she did not pass neurology NBME shelf examination, and that she was placed on administrative leave for two incomplete clerkships.<br><br>Osborn Decl., ¶ 35. | 65. Undisputed. |

NYE, STIRLING, HALE, MILLER & SWEET<br>33 WEST MISSION STREET, SUITE 201<br>SANTA BARBARA, CALIFORNIA 93101

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 66. Plaintiff retook both exams and passed the second time, with her administrative leave ending on September 27, 2021.<br><br>Osborn Decl., ¶ 35. | 66. Undisputed. |
| 67. On January 31, 2022, Plaintiff requested an extension through December 1, 2022, for her Step 2 examination.<br><br>Osborn Decl., ¶ 36. | 67. Undisputed. |
| 68. The P&H Committee reminded Plaintiff of her modified 6-year deadline and stated that she had to complete her Step 2 by November 6, 2022.<br><br>Osborn Decl., ¶ 36. | 68. Disputed.<br><br>Muthoka Decl. at ¶55. |

**Moving Party's Response:**

Plaintiff's evidence does not dispute the fact that the P&H Committee reminded Plaintiff of her modified 6-year deadline and stated that she had to complete her Step 2 by November 6, 2022. Plaintiff's evidence simply shows Plaintiff disagreed with the P&H Committee's calculation of the six-year timeline. *See* Muthoka Decl. at Ex. U Bates 3128. In any event, the alleged dispute is immaterial as Plaintiff received an adjustment to the six-year timeline to graduate and Plaintiff did in fact graduate after seven years.

| | |
|---|---|
| 69. Plaintiff's technical six-year deadline by which she was required to graduate was May 22, 2022.<br><br>Bernal Decl., Ex. 12, at PL 03137-03140 (Email between Plaintiff and Dr. Shannon Toohey, dated July 26, 2022, and produced as part of "Exhibit U" in Plaintiff's initial | 69. Disputed.<br><br>Muthoka Decl. at ¶54-56, Ex. U at Bates 3128. |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| document disclosure (bates numbers PL 03137-03140); Osborn Decl., ¶ 37. | |

**Moving Party's Response:**

Plaintiff's evidence does not dispute the fact that Plaintiff's six-year deadline by which she was required to graduate was May 22, 2022. Muthoka Declaration Exhibit U at Bates PL-03128 states, in an email from Dr. Shannon Toohey, that Plaintiff's extension "was based on the exception circumstances surrounding COVID-19 and the extension was based on the time during which USMLE exams were completely unavailable due to closures of the Prometric Testing Centers. It was not based on the timing you selected to take your exam. Dr. Forthal approving you to take the exam on those dates was not a promise for the extended time on the 6-year graduation limit or other policies." Plaintiff's dispute as to the deadline cites only to Plaintiff's own response, *see* Muthoka Decl., Ex. U at Bates PL-03128 in which Plaintiff conveyed disagreement with Dr. Toohey and the P&H Committee's determination as to the calculations of Plaintiff's deadline to graduate. In any event, the dispute is immaterial as Plaintiff was provided a six-month extension to allow her to graduate, and she did in fact graduate.

| 70. Plaintiff did not complete her coursework and was eligible for dismissal at this point.<br><br>Bernal Decl., Ex. 12, at PL 03137-03140; Osborn Decl., ¶ 37. | 70. Disputed.<br><br>Muthoka Decl. at ¶54-56, Ex. U. |

**Moving Party's Response:**

Plaintiff's evidence does not dispute the fact that Plaintiff did not complete her coursework and was eligible for dismissal at this point. Plaintiff's evidence only takes issue with the reasons for Plaintiff's failure to complete her coursework and her disagreement as to the P&H Committee's calculation of the deadline for Plaintiff to graduate. Additionally, Plaintiff's assertion that she was entitled to seven years to graduate because of her admittance to UCI's MD and MBA program is immaterial because, as Plaintiff's evidence acknowledges, UCI rescinded Plaintiff's acceptance to the MBA program and therefore was only an MD student and therefore subject to the six-year graduation requirement. *See*

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Muthoka Decl. at ¶ 56. In any event, the dispute is immaterial as Plaintiff was provided a six-month extension to allow her to graduate. | |
| 71.  UCI SOM did not dismiss Plaintiff.<br><br>Bernal Decl., Ex. 12, at PL 03137-03140; Osborn Decl., ¶ 37. | 71.  Undisputed. |
| 72.  Instead of dismissing Plaintiff, the Committee provided Plaintiff a six-month extension to December 18, 2022.<br><br>Bernal Decl., Ex. 12, at PL 03137-03140; Osborn Decl., ¶ 37. | 72.  Disputed.<br><br>Muthoka Decl. at ¶55, Ex. U. |

**Moving Party's Response:**

Plaintiff's evidence does not dispute the fact instead of dismissing Plaintiff, the Committee provided Plaintiff a six-month extension to December 18, 2022, but simply reiterates Plaintiff's assertion that the P&H Committee did not accurately calculate her six-year graduation timeline. In any event, the dispute is immaterial as Plaintiff was provided a six-month extension to allow her to graduate.

| | |
|---|---|
| 73.  Plaintiff responded to the P&H Committee on October 13, 2022, stating she disagreed with this deadline and that she expected four additional months.<br><br>Osborn Decl., ¶ 38. | 73.  Disputed.<br><br>Muthoka Decl. at ¶¶16, 17, 55, Ex. G, U. |

**Moving Party's Response:**

Plaintiff's evidence does not dispute the fact Plaintiff responded to the P&H Committee on October 13, 2022, stating she disagreed with this deadline and that she expected four additional months. *See* Muthoka Decl. Ex. U at PL-03128. There is no dispute as Plaintiff's cited evidence unquestionably shows that Plaintiff disagreed with the P&H Committee's calculation of the deadline and expected four additional months. *See id.*

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 74.  The Committee provided additional time to January 18, 2023.<br><br>Osborn Decl., ¶ 38. | 74.  Undisputed. |
| 75.  Plaintiff took the Step 2CK examination on December 12, 2023, with the accommodations the NBME had to provide following Plaintiff's lawsuit, and she failed.<br><br>Osborn Decl., ¶ 39. | 75.  Undisputed. |
| 76.  Plaintiff took the Step 2 CK exam for the second time on April 3, 2023, and passed.<br><br>Osborn Decl., ¶ 40. | 76.  Undisputed. |
| 77.  Because Plaintiff retook the Step 2CK exam so close in time to graduation, she found out after others in the graduating class that she was eligible to graduate.<br><br>Osborn Decl., ¶ 41. | 77.  Disputed.<br><br>Muthoka Decl. at ¶59. |

**Moving Party's Response:**

Plaintiff's evidence does not dispute the fact Plaintiff retook the Step 2CK exam so close in time to graduation that she found out after others in the graduating class that she was eligible to graduate. In fact, Plaintiff's cited evidence confirms the fact that Plaintiff found out after others in the graduating class that she was eligible to graduate and acknowledges that Plaintiff was notified in April 2023 that she was qualified to graduate in May 2023 and that she "had less than 2 weeks to prepare for the graduation." Muthoka Decl. ¶ 59. Additionally, UCI SOM's Policy for Step 1 and Step 2 of the USMLE expressly provides that a student who fails Step 2 must "meet with the Associate Dean for Students, in order to devise an appropriate remediation plan. To the extent that this additional review time makes it impossible to complete other curricular requirements, *the*

28
**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *student's eligibility for graduation with his/her class may be affected*." Muthoka Decl., Ex. H (at PL-00271) (emphasis added). | |
| 78.  This resulted in Plaintiff having a handwritten graduation card versus other students, who had fulfilled the graduation requirements much earlier, having a typed graduation card.<br><br>Osborn Decl., ¶ 41. | 78.  Disputed.<br><br>Muthoka Decl. at ¶¶59. |
| **Moving Party's Response:**<br><br>Plaintiff's evidence does not dispute the fact Plaintiff's late qualification for graduation resulted in her having a handwritten graduation card versus other students, who had fulfilled the graduation requirements much earlier, having a typed graduation card. In fact, Plaintiff's cited evidence confirms the fact that Plaintiff found out after others in the graduating class that she was eligible to graduate and acknowledges that Plaintiff was notified in April 2023 that she was qualified to graduate in May 2023 and that she "had less than 2 weeks to prepare for the graduation." Muthoka Decl. ¶ 59. | |
| 79.  Plaintiff graduated from UCI SOM in June 2023.<br><br>Osborn Decl., ¶ 42. | 79.  Undisputed. |
| 80.  Plaintiff contends she was discriminated against on the basis of race on a disparate treatment theory.<br><br>Bernal Decl., Ex. 1 (Plaintiff's Responses to Interrogatories (Second Set) dated December 20, 2024 [hereinafter, "Plaintiff's Responses"]), No. 4. | 80.  Disputed in Part. The Complaint also alleges a hostile educational environment. |
| **Moving Party's Response:** | |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff does not dispute the fact that Plaintiff contends she was discriminated against on the basis of race on a disparate treatment theory but simply adds that her Complaint also alleges hostile educational environment. | |
| 81. She does not contend UCI SOM violated Title VI under a disparate impact theory.<br><br>Bernal Decl., Ex. 1, at Plaintiff's Responses, No. 3. | 81. Undisputed. |
| 82. Plaintiff planned an international ultrasound trip to Kenya for the summer of 2017.<br><br>Osborn Decl., ¶ 12; Bernal Decl., Ex. 1, at Plaintiff's Responses, No. 15. | 82. Undisputed. |
| 83. UCI SOM notified Plaintiff that UCI SOM could not sponsor the trip because Kenya was subject to a travel advisory issued by the United States Department of State.<br><br>Bernal Decl., Ex. 6, at PL 01761; Osborn Decl., ¶ 12. | 83. Undisputed. |
| 84. UCI SOM has never sponsored an international trip to a location with an active travel advisory because of safety and liability concerns.<br><br>Osborn Decl., ¶ 12. | 84. Disputed.<br><br>Muthoka Decl. at ¶60 & Ex. N at page 29, witness 22; Plaintiff's Request for Judicial Notice at ¶3. |
| **Moving Party's Response:**<br><br>Plaintiff's evidence does not dispute the fact that UCI SOM has never sponsored an international trip to a location with an active travel advisory because of safety | |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| and liability concerns. Between the time Plaintiff sought sponsorship for her trip and Michael Lo Basso's trip to Kenya in 2019, the U.S. State Department changed its system for sharing information with U.S. travelers by replacing "Travel Warnings" and "Travel Alerts" with a new "Travel Advisory System" under which the U.S. State Department assigned countries a Travel Advisory number, ranging from 1 ("Exercise Normal Precautions") to 4 ("Do Not Travel"). *See* U.S. State Department Fact Sheet, Office of the Spokesperson (Jan. 10, 2018), https://2017-2021.state.gov/new-travel-advisories-for-u-s-travelers/. Additionally, the State Department issued a travel warning for Kenya in 2017 ahead of its general elections in August 2017 (as the disputed election results in 2007 resulted in ethnic violence across the country with more than 1,200 deaths). *See, e.g.*, Kuo, Lily, Quartz (Apr. 7, 2017), https://qz.com/africa/952814/the-us-state-department-has-issued-a-travel-warning-for-kenya-ahead-of-its-election#:~:text=Some%20diplomats%20worry%20that%20the,their%20biggest%20worry%20for%202017. Accordingly, Plaintiff's evidence that another student was purportedly sponsored to attend a trip to Kenya in 2019 is immaterial because the U.S. State Department's travel advisory system assigned a "Level 2: Exercise Increased Caution" advisory and the warning systems used by the U.S. State Department in 2017–2018 differed and varied by region. *See also* Dkt. No. 70 (Defendant's Response to Plaintiff's Request for Judicial Notice). | |
| 85.  Plaintiff contends that UCI SOM's refusal to sponsor the Kenya trip constituted racial discrimination, as non-black students were allowed to take sponsored international trips.<br><br>Osborn Decl., ¶ 13. | 85.  Undisputed. |
| 86.  The other trips were not to countries subject to a travel advisory.<br><br>Osborn Decl., ¶¶ 12–13. | 86.  Disputed.<br><br>Muthoka Decl. at ¶60; RJN at ¶3. |
| **Moving Party's Response:**<br><br>Plaintiff's evidence does not dispute the fact that the other trips were not to countries subject to a travel advisory. Between the time Plaintiff sought | |

31

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| sponsorship for her trip and Michael Lo Basso's trip to Kenya in 2019, the U.S. State Department changed its system for sharing information with U.S. travelers by replacing "Travel Warnings" and "Travel Alerts" with a new "Travel Advisory System" under which the U.S. State Department assigned countries a Travel Advisory number, ranging from 1 ("Exercise Normal Precautions") to 4 ("Do Not Travel").  *See* U.S. State Department Fact Sheet, Office of the Spokesperson (Jan. 10, 2018), https://2017-2021.state.gov/new-travel-advisories-for-u-s-travelers/. Additionally, the State Department issued a travel warning for Kenya in 2017 ahead of its general elections in August 2017 (as the disputed election results in 2007 resulted in ethnic violence across the country with more than 1,200 deaths). *See, e.g.*, Kuo, Lily, Quartz (Apr. 7, 2017), https://qz.com/africa/952814/the-us-state-department-has-issued-a-travel-warning-for-kenya-ahead-of-its-election#:~:text=Some%20diplomats%20worry%20that%20the,their%20biggest%20worry%20for%202017. Accordingly, Plaintiff's evidence that another student was purportedly sponsored to attend a trip to Kenya in 2019 is immaterial because the U.S. State Department's travel advisory system assigned a "Level 2: Exercise Increased Caution" advisory and the warning systems used by the U.S. State Department in 2017–2018 differed and varied by region. *See also* Dkt. No. 70 (Defendant's Response to Plaintiff's Request for Judicial Notice). | |
| 87.  Plaintiff filed a complaint with UCI's Office of Equal Opportunity and Diversity ("OEOD") in May 2020.<br><br>Bernal Decl., Ex. 8. | 87.  Undisputed. |
| 88.  The complaint identified two purportedly racially discriminatory events: UCI SOM not sponsoring Plaintiff's trip to Kenya in 2016-2017 and Dr. Julianne Toohey purportedly telling Plaintiff in April 2019 that she should go back to her country.<br><br>Bernal Decl., Ex. 8, at PL 02436-2440. | 88.  Disputed to the extent the complaint also set forth national origin discrimination and disability discrimination.<br><br>(Muthoka Decl. at Ex. M) |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| **Moving Party's Response:**<br><br>Plaintiff's evidence does not dispute the fact that Plaintiff's complaint identified two purportedly *racially* discriminatory events, but only adds that Plaintiff's complaint also set forth national origin discrimination and disability discrimination. | |
| 89.  The OEOD office interviewed 27 witnesses before issuing its findings on January 25, 2021.<br><br>Bernal Decl., Ex 13 at Regents 000279 through 332 | 89.  Undisputed. |
| 90.  Plaintiff responded to interrogatories in this litigation by listing each discrete incident which she alleges constituted racial discrimination, as follows:<br><br>** note for ease of reading, the following table containing Plaintiff's response is reproduced below this table, and constitutes part of DF 90.**<br><br>Bernal Decl., Ex. 1, Plaintiff's Responses, No. 5. | 90.  Undisputed. |

**DF 90: Table from Plaintiff's Interrogatory Responses:

| Alleged Discriminatory Act | Dates |
|---|---|
| Dr. Toohey stated that my natural hair was "unprofessional" and that I needed to straighten it to be considered professional. | August 2016<br>September 2016<br>January-March 2017<br>March-July 2018 |

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Alleged Discriminatory Act | Dates |
|---|---|
| The defendant through Dr. Toohey denied me funding and IRB support for my work in Kenya, but fully supported and funded a non-black, non-Kenyan Male medical student to conduct their research work in Kenya. | August/September 2016-July 2017<br><br>August/September 2018-July/August 2019 |
| Dr. Toohey assumed that Faith Njoku and I, the only two black students in a class of 104 medical students, were planning ultrasound trips to Kenya and Nigerian in 2018 because we both had Nigerian and Kenyan ancestry. She asked that we be excluded from meetings based on our race and country of origin even though we were not participating in these events. | September/October 2017 |
| They brought a lawyer to my P&H hearing while I was going to have family members present. The school had not brought lawyers to other nonblack medical students' hearing if they did not have their own lawyers present. This is also against school policy. | December 2019 |
| In an all Asian team during the internal medicine rotation, Dr. Nguyen made multiple racial comments about the team looking young because of "our good Asian genes" and continued to state that "I am also Asian" during a patient encounter. Dr. Nguyen later tried to prove to me that she is not racist because her sister/brother is married to a Kenyan and showed me photos during rounds. In addition, she asked me to change my mask (no one else in the team was asked to change their masks).<br><br>She was also asking me to evaluate her in the middle of the rotation (against policy), a situation that isolated and created a toxic learning environment for me, the only black student in the team. | March- June 2021 |
| I was severely punished for making a minor grammatical error while my colleague (Asian in an all Asian team) who copied and pasted patient's information into another patient's discharge summary was not punished. I was the only black student in the entire team. | March- June 2021 |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Alleged Discriminatory Act | Dates |
|---|---|
| Refused to interview the only black woman (Kelley Butler) who travelled to Kenya with me and instead only interviewed the two Asian medical students. The rest of the students had graduated despite providing him with the list of medical students who travelled to Kenya with me. | August 2020 - January 2021 |
| Created a toxic environment for me during my graduation by providing me with a handwritten yellow card during my graduation ceremony while everyone received a professionally typed white card. My graduation gown was also from 2022 while everyone received a 2023 graduation gown. | May 2023 |
| Stated that "I should consider going back to my country" if it was difficult when I requested to keep my on-campus housing. | January, February, March, April 2019 |

## II.   RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTES OF FACT[1]

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| 1.     One of the Black students in Plaintiff's Class, Faith Njoku, did not complete medical school due in part to the extreme isolation that she felt and the hostility that she experienced from Dean Julianne Toohey<br><br>(Butler Dep. P. 86:21-23). | 1.  Disputed for lack of evidentiary support and because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. Faith Njoku was deposed in this matter, and thus Dr. Butler's statements of what she thought Ms. Njoku experienced are inadmissible hearsay. Ms. Njoku testified that she did not think Dean Toohey treated her differently because of the color of her skin: "I never thought that it was because of the color of my skin, nor did I feel like it was because of my gender. . . . But I never felt like it was |

---

[1] Defendant incorporates its Objections to Plaintiff's evidence (Dkt. 71), which it filed *before* Plaintiff filed this separate statement. To the extent any objections required further explanation in light of the new facts Plaintiff has put into this separate statement, Defendant has set forth those objections in this response.

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| | because of the color of my skin." *See* Supplemental Declaration of Alison M. Bernal ("Suppl. Bernal Decl."), Ex. 15 (Deposition of Faith Njoku) at 76:17–77:22.  Undisputed that Faith Njoku was one of the Black students in Plaintiff's Class and did not complete medical school. |
| 2.    Faith Njoku confided to the Plaintiff that Dean Toohey was treating her differently than the other non-Black students.  (Muthoka Dep. Vol. I, 160:14-25; 161:1-12). | 2.   Disputed for lack of evidentiary support and because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted.  Faith Njoku was deposed in this matter, and thus Plaintiff's statements of what she thought Ms. Njoku experienced are inadmissible hearsay. Faith Njoku testified that she did not think Dean Toohey treated her differently because of the color of her skin: "I never thought that it was because of the color of my skin, nor did I feel like it was because of my gender. . . . But I never felt like it was because of the color of my skin." Suppl. Bernal Decl., Ex. 15 at 76:17–77:22. |
| 3.    The Plaintiff's encounter with the racially hostile environment began when Associate Dean Toohey met with her to inform her that she needed to change her natural hairstyle to straight hair because natural hair was unprofessional.  (Interrog. Resp.# 5). | 3.   Disputed for lack of evidentiary support and because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. |
| 4.    The Plaintiff is a Black person who was born in the country of Kenya. Dean Julianne Toohey was a Latina | 4.  Undisputed. |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| female.<br><br>(Butler Dep. P. 52, 18, 19). | |
| 5.     Dean Toohey created a hostile environment for Black medical students at UCI. She demonstrated an animus toward Black medical students in different ways. Sometimes, the bias against Black students manifested with vague, nondescript accusations of Black students being unprofessional. Other times it manifested in more tangible ways, such as criticizing Black student support activities or Dean Toohey refusing to support or find funding for research projects that Black students were spearheading.<br><br>(Interrog. Resp.5; Muthoka Decl. at ¶2). | 5.   Disputed for lack of evidentiary support and because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. |
| 6.     Dean Toohey upheld standards of "professionalism" that were proximal to whiteness, such as how Black students wore their hair compared to White students or how they articulated during rounds.<br><br>(Butler Dep. P. 53:111-14, 54:1-9, 20-22). | 6.   Disputed for lack of evidentiary support and because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. |
| 7.     Dr. Kelley Butler met the Plaintiff during her first year of Medical School at UCI, which was the 2015/2016 school year.<br><br>(*Id*. at 15:8-25). | 7.  Undisputed. |
| 8.     Dr. Kelley Butler was enrolled at UCI at the same time the Plaintiff was enrolled there. She identifies as a Black | 8.  Undisputed that Dr. Butler testified to this, but the information is immaterial to Plaintiff's claims, and |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| female. Shortly after enrolling she was confronted by Dean Julianne Toohey about the style of her hair. She claimed that her hair was unprofessional.<br><br>(*Id*. at 42:11-20). | further demonstrates the untimeliness of the claims, as Dr. Butler's statements of what she experienced occurred seven to eight years before Plaintiff filed this lawsuit. |
| 9.    Butler recalled that Dean Toohey generally treated Black students less favorably than other students, especially Latino/Latina students. The Plaintiff and Dr. Butler were members of a student group named SNMA. SNMA stands for the Student National Medical Association.<br><br>(*Id*. at 40:22-25; 41:1-2). | 9.  Undisputed. |
| 10.   The SMNA was founded to support Black medical students who were traditionally underrepresented in medical schools (Id. at 88:2-20). Later, the organization expanded its mission to include all historically underrepresented populations, such as indigenous people and Asian Pacific Islanders.<br><br>(*Id*). | 10.  Undisputed. |
| 11.    Dean Julianne Toohey did not have high regard for the SNMA. She believed that the Black students' participation in the organization was a distraction to their studies.<br><br>(*Id*. at 44:2-10). | 11.  Disputed for lack of evidentiary support and because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. Dr. Toohey is dead, and there is no way to know what she had high regard for or not, without constituting hearsay, further demonstrating the issues of timeliness in this lawsuit. |
| 12.    By contrast, Dean Toohey gave unwavering support to the LSMA. | 12.  Disputed for lack of evidentiary support and because the statement is |

NYE, STIRLING, HALE, MILLER & SWEET<br>33 WEST MISSION STREET, SUITE 201<br>SANTA BARBARA, CALIFORNIA 93101

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| LSMA is an acronym for Latin Students Medical Association. The group was founded to provide support to Latin medical students.<br><br>(*Id*. at 51:19-24). | based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. The cited deposition transcript does not state that Dean Toohey gave "unwavering support to the LSMA" but rather that Butler remembered Dr. Toohey "really wanting to uplift and pour into certain student causes and not others; namely, she was really happy to be at the helm of all things for the Latina Medical Student Association, but not the Student National Medical Association. Now, that wouldn't have come in the form of, you know, being outright problematic." *See* Butler Depo. at 51:19–52:1. |
| 13.    When SNMA wanted to hold a function at a facility on campus, such as the MedEd building, it was always a problem to obtain authorization. (Butler Depo. at 89:15-24). However, whenever LSMA attempted to use the same facilities, it was never a problem (*Id*. at 52:11-14). The only time SNMA did not encounter a problem using the University's facilities is when they were partnered with LSMA.<br><br>(*Id*). | 13.    Disputed for lack of evidentiary support and because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted.  The cited deposition transcript does not state that SNMA "always" encountered problems obtaining authorization but only that Dr. Butler remembered "running into some barriers around trying to schedule those events[.]" Butler Depo. at 89:15–19.  Nor does the deposition state that LSMA "never" encountered problems, but only that when SNMA partnered with LMSA "we didn't run into those issues." *Id.* at 89:20–22; *see also id.* at 52:11–14 ("we had no issue with that for LMSA, but *sometimes* did for SNMA") (emphasis added). Moreover, this is immaterial. |

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| 14.    Dr. Toohey found money to support LSMA events, but she did not assist SNMA in the same manner.<br><br>(*Id*). | 14.    Disputed for lack of evidentiary support and because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. The cited deposition transcript does not state that SNMA "always" encountered problems obtaining authorization but only that Dr. Butler remembered "running into some barriers around trying to schedule those events[.]" Butler Depo. at 89:15–19. Nor does the deposition state that LSMA "never" encountered problems, but only that when SNMA partnered with LMSA "we didn't run into those issues." *Id.* at 89:20–22; *see also id.* at 52:11–14 ("we had no issue with that for LMSA, but *sometimes* did for SNMA") (emphasis added). Moreover, this is immaterial. |
| 15.    Defendant refused to fund Plaintiff's ultrasound trip to Kenya, ostensibly because there was a travel advisory connected to that nation. Still, it funded a similar trip to Kenya when a non-Black student sought IRB and financial support. At the time that the non-Black student traveled to Kenya, there was a travel advisory in effect as well.<br><br>(Interrog. 15; Muthoka Dep. Vol. I, 98:4-10; 106:105:25; 106:1-25; 107:1-5); Muthoka Decl. at Ex. N, Page 29, Witness 22). | 15.    Undisputed that Defendant did not fund Plaintiff's ultrasound trip to Kenya.  Disputed but immaterial because the trip occurred at a different time, after the U.S. State Department changed its travel advisory system in 2018. *See* U.S. State Department Fact Sheet, Office of the Spokesperson (Jan. 10, 2018), https://2017-2021.state.gov/new-travel-advisories-for-u-s-travelers/.  Also disputed because a lack in evidentiary support that Defendant funded a trip to Kenya for a different student under the same travel advisory, when in fact the evidence demonstrates Defendant did not fund any other trips under the |

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| | same travel advisory that existed in Kenya during Plaintiff's trip. |
| 16.     UCI had a long-standing practice of funding student trips worldwide to conduct research (Butler Dep. at 21:18-25; 22:1-7). The Plaintiff was seeking financial support for a four-week trip. The university refused to provide the requested financial support.<br><br>(*Id*. at 32:1-25). | 16.  Undisputed. |
| 17.     The university funded an ultrasound trip to Panama that involved students. The trip lasted for the entire summer. The university covered most of the costs involved. Dean Toohey did not offer the same pushback for the Panama trip as she did for the Kenyan trip.<br><br>(*Id*. at 39:23-25; 78:10-16). | 17.  Disputed because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. |
| 18.     The ultrasound trip to Kenya involved six students and the participants were required to fundraise for essentially all related expenses. The Plaintiff obtained money from her church. The group also set up a GoFundMe account to raise money as well.<br><br>(*Id*. at 23:18-21). | 18.  Undisputed. |
| 19.     Dr. Butler accompanied Plaintiff on the Kenyan ultrasound trip.<br><br>(Butler Dep. 19:5-15; 24:1-4). | 19.  Undisputed. |
| 20.     One of the push backs Plaintiff received regarding the trip to Kenya is that it wasn't an established trip. | 20.  Disputed for lack of evidentiary support as to the phrase "Generally, the university favored trips to Europe |

41

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| However, the university funded an ultrasound-related student trip to Switzerland. The trip was the first of its kind. There were no established contacts with a medical clinic there before this student-coordinated trip. Generally, the university favored trips to Europe more than trips to other places.<br><br>(*Id*. 84:15-24). | more than trips to other places." There is no evidentiary support for that statement. |
| 21.   The University funded the ultrasound trip to Kenya the very next year that was coordinated by, Michael Lobasso, a non-Black/Non-African. There was a travel advisory during that time period as well.<br><br>(Interrog. 5; RJN at ¶3). | 21.  Disputed for lack of evidentiary support that the travel advisory in effect during the 2019 ultrasound trip to Kenya was the same travel advisory in effect at the time Plaintiff sought funding, when in fact the evidence demonstrates otherwise. |
| 22.   The University funded the ultrasound trip to Kenya the very next year (2019) that was coordinated by, Michael Lobasso, a non-Black/Non-African. There was a travel advisory during that time period as well<br><br>(Interrog. 5). | 22.   Disputed for lack of evidentiary support that the travel advisory in effect during the 2019 ultrasound trip to Kenya was the same travel advisory in effect at the time Plaintiff sought funding. |
| 23.   Associate Dean Toohey also told the Plaintiff that she should consider going back to Africa.<br><br>(Muthoka Decl. at ¶25). | 23.   Disputed because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. |
| 24.   She never made such a comment to other non-Black or non-African students.<br><br>(Interrog. 5). | 24.  Disputed to the extent this implies Associate Dean Toohey made such a comment to Plaintiff, and as the statement constitutes hearsay. |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| 25.    Dr. Butler was aware of an incident wherein Dean Toohey suggested that the Plaintiff should go back to Kenya to practice medicine after she graduated. Dr. Butler stated that she was not aware of Dean Toohey making a similar request of Mexican medical students enrolled at UCI.<br><br>(Interrog. Resp. #15, Butler Dep. 71:25; 72:1-9). | 25.    Disputed because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. |
| 26.    After enduring a hostile environment for an extended period, the Plaintiff decided to file an internal complaint of discrimination with the Office of Equality Opportunity and Diversity, OEOD. This office investigates claims of harassment and discrimination within the UCI system.<br><br>(Muthoka Decl. at Ex. M). | 26. Disputed for lack of evidentiary support that Plaintiff endured a hostile environment, but undisputed as to Plaintiff's decision to file an internal complaint of discrimination with OEOD and that the OEOD investigates claims of harassment and discrimination within the UCI system. |
| 27.    The Plaintiff's last experience at UCI was tainted by an intentional slight. The Plaintiff was provided a handwritten yellow card during her graduation ceremony. However, the non-Black graduates received a professionally typed white card. She was also given a 2022 graduation gown that differed in appearance from the gown the other 2023 graduates were wearing.<br><br>(Interrog. 5). | 27.    Disputed for lack of evidentiary support that the handwritten graduation card and 2022 gown were "an intentional slight." Plaintiff retook the Step 2CK exam so close in time to graduation that she found out she was eligible to graduate after other students and this resulted in Plaintiff having a handwritten graduation card versus other students, who had fulfilled the graduation requirements much earlier, having a typed graduation card.  *See* Osborn Decl. ¶ 41.<br><br>Additionally, due to Plaintiff's late qualification for graduation, Plaintiff |

43

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| | confirms in her declaration that she found out after others in the graduating class that she was eligible to graduate. Plaintiff's declaration confirms the fact that Plaintiff was notified in April 2023 that she was qualified to graduate in May 2023 and accordingly, she "had less than 2 weeks to prepare for the graduation." Muthoka Decl. ¶ 59.<br><br>Furthermore, UCI SOM's Policy for Step 1 and Step 2 of the USMLE expressly provides that a student who fails Step 2 must "meet with the Associate Dean for Students, in order to devise an appropriate remediation plan. To the extent that this additional review time makes it impossible to complete other curricular requirements, *the student's eligibility for graduation with his/her class may be affected*." Muthoka Decl., Ex. H (at PL-00271) (emphasis added). |
| 28.   The Plaintiff was a qualified student with two separate disabilities. She suffers from testing anxiety and a Neurodevelopmental disorder related to visual processing.<br><br>(Interrog. Resp. # 10; Muthoka Dep., Vol. I, 120:14-18; 121:5-7). | 28.  Undisputed that UCI SOM provided Plaintiff with accommodations based on claimed disabilities set forth in this fact. |
| 29.   The school policy and the law required UCI to offer reasonable accommodations to students. UCI Disability Service Center is responsible for, and has undertaken, assisting students in assembling the requisite | 29.  Undisputed that UCI SOM is generally required to provide qualifying students with disabilities reasonable accommodations. But disputed as to the characterization of |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| documentation and registering as students with disabilities who require accommodation.<br><br>(Muthoka Decl. at ¶¶6, 8, 11). | UCI SOM's and/or the DSC's responsibilities. |
| 30.    The Plaintiff registered with the Center early in her medical school career. She was designated as a person with a disability and ultimately awarded accommodations.<br><br>(Muthoka Decl. at ¶¶3-5). | 30.  Undisputed that Plaintiff received reasonable accommodations from UCI SOM for her claimed disabilities. |
| 31.    One of the main accommodations she received was time and a half to take exams, but this accommodation was not offered initially.<br><br>*Id.* | 31.  Plaintiff's characterization of the accommodation being "not offered initially" is immaterial, argumentative, and improper. Undisputed that Plaintiff was offered reasonable accommodations in the form of time and a half to take exams. |
| 32.    Whenever her accommodations were honored, she performed quite well on exams. Often, she set the curve in some of her classes, scoring 80 to 90% on exams when the school passing score was 60-70%.<br><br>(Butler Dep. 58:20-23). | 32.  Disputed because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. |
| 33.    Dean Julianne Toohey did not believe that the Plaintiff deserved the designation of a student with a disability. She insisted the only issue Plaintiff had was a language issue because English was her second language<br><br>(Interrog. Resp. # 15; Muthoka Decl. at ¶¶7, 10, 16, 17, Ex. G). | 33.  Disputed because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| 34. The Plaintiff repeatedly told Dean Toohey that this was not the case and showed her the documentation that established her disability.<br><br>(Muthoka Decl. at ¶¶9, 17). | 34. Disputed because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. |
| 35. None of this evidence altered Dean Toohey's unreasonable position. She continued to insist that Plaintiff merely had a language issue, which was not a disability.<br><br>(Muthoka Dep. Vol. I, 123:23-25; 124:1-25; 125:1-25; Muthoka Decl. at ¶¶7, 10, 16, Ex. G). | 35. Disputed because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. Plaintiff does not know, and cannot know because Dr. Toohey is deeased, what Dr. Toohey's position was and what she communicated or did not communicate to others. |
| 36. Dean Toohey's insistence that the Plaintiff did not have a disability created confusion within the Disability Service Center.<br><br>(Muthoka Decl. at ¶¶12-16). | 36. Disputed for lack of evidentiary support, and because the statement is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. Plaintiff does not know, and cannot know because Dr. Toohey is deeased, what Dr. Toohey insisted on or did not insist on, nor does Plaintiff have support fo the imapct of anything Dr. Toohey said on the Disability Service Center. |
| 37. This confusion interfered with the Plaintiff receiving the benefit of accommodations. Once a student was registered as a person with a disability, he/she was supposed to receive the accommodation each time that he/she took exams.<br><br>(Interrog. Resp. 13; Muthoka Dep., Vol. I, 149:11-25). | 37. Disputed for lack of evidentiary support as to the claim that Dean Toohey was confused or otherwise interfered with Plaintiff receiving the benefit of accommodations. Further, it is based on inadmissible hearsay that Dr. Toohey created confusion. Furthermore, the evidence demonstrates that once Plaintiff's accommodations were approved, Plaintiff *did* receive the |

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| | accommodations on all UCI SOM-administered exams. *Henderson Declaration* (Dkt. 54, ¶ 4.) |
| 38.    The Plaintiff's first year at UCI was the 2016/2017 school year. Because of Dean Toohey's interference, the Plaintiff did not receive a psychological evaluation until 2019.<br><br>(Muthoka Decl. at ¶¶12-18). | 38. Disputed as to Plaintiff's assertion that Plaintiff did not receive a psychological evaluation until 2019 "[b]ecause of Dean Toohey's interference," which is argumentative, based on improper hearsay, and lacks evidentiary support. Undisputed that Plaintiff's first year at UCI was the 2016/2017 school year. |
| 39.    Once the evaluation was done, she received time and a half due to her test anxiety diagnosis.<br><br>(Muthoka Dep., Vol. I, 150:1-25; 151:1-25). | 39.  Undisputed. |
| 40.    UCI had a regular practice of helping students with disabilities arrange for testing accommodations with the NBME whenever they sat for Step 1 or Step 2 of USMLE.<br><br>(Muthoka Decl. at ¶¶6, 8). | 40.  Disputed. The evidence establishes that the NBME administers the USMLE Step exams, and that while UCI can communication with the NBME for general information, it cannot discuss student-specific information. *Henderson Declaration* (Dkt. 54, ¶ 6.) Undisputed that the University could help a student put together a request or appeal, as UCI did in this case. *Henderson Declaration* (Dkt. 54, ¶¶ 7, 10.) |
| 41.    The Plaintiff reached out to Disability Service Center before sitting for the Step 1 Exam, to help her arrange accommodations for the test. However, the Defendant failed to arrange for the appropriate support for Plaintiff's requested accommodations as a result of | 41.  Disputed for lack of evidentiary support as to Plaintiff's characterization of the Disability Service Center's obligations and as to Plaintiff's characterization of "misinformation by Dr. Toohey." Moreover, disputed that it was UCI |

47

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| misinformation by Dr. Toohey.<br><br>(Muthoka Decl. at ¶¶16, 17, 18, 21). | SOM's obligation to arrange for Plaintiff to obtain accommodations on her Step 1 Exam, as that is the student's obligation. *Henderson Declaration* (Dkt. 54, ¶¶ 6, 10.) |
| 42. Resultantly, she failed the Step 1 Examination. After she failed the Step 1 Examination a second time, after Dr. Toohey insisted she had language issues, Plaintiff was placed on leave and not permitted to enroll in new classes until she passed the exam.<br><br>(Muthoka Decl. at ¶¶16-18) | 42. Disputed. There is no evidentiary support for the statement that UCI caused Plaintiff to fail her Step 1, nor for the statements attributed to Dr. Toohey, which constitute improper hearsay. It is undisputed that Plaintiff was placed on leave, per UCI SOM policy, until she passed the exam. |
| 43. The Defendant permitted other students to move forward in their studies who had not completed the step 1 exam, because the national testing facilities were closed due to Covid-19 pandemic.<br><br>(Muthoka Dep. Vol. I, 218:13-25). | 43. Disputed as to Plaintiff's statement that "Defendant permitted other students to move forward in their studies who had not completed the step 1 exam, because the national testing facilities were closed due to Covid-19 pandemic" to the extent Plaintiff contends there were no other differences in the step 1 failures between such students and Plaintiff, such as Plaintiff's multiple failures. Moreover, this statement lacks evidentiary support, such as any statements from other students who received this purported accommodation, or an administrator testifying that this in fact occurred. Plaintiff herself has no firsthand knowledge of this occurring or not. |
| 44. At that time and several times after, Plaintiff encountered skepticism and resistance from Dean Toohey about whether she needed accommodation to | 44. Plaintiff's characterization of Dean Toohey as reflecting "skepticism and resistance" is argumentative and improper, and based on hearsay as to |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| take the test.<br><br>(Interrog. 13). | any statements attributed to Dr. Toohey. |
| 45.    Dean Toohey was untruthful with Plaintiff about contacting the NBME regarding her accommodations for Plaintiff. She falsely stated that NBME told her the Plaintiff's request for accommodations was denied because it did not view language issues as a disability.<br><br>(Interrog. Resp. 13; Muthoka Dep., Vol. I, 165:4-23; 167:1-13; Muthoka Decl. at ¶16). | 45.   Plaintiff's characterization of Dean Toohey as being "untruthful about contacting the NBME" and that she "falsely stated that NBME told her Plaintiff's request for accommodations was denied because it did not view language issues as a disability" are argumentative and improper hearsay.<br><br>Plaintiff's own Declaration from her lawsuit against NBME also contradicts Plaintiff's asserted fact:<br><br>Plaintiff's proffered evidence simply states that Dr. Toohey "spoke[] extensively to the NBME regarding any possible recourse for additional time due to a language issue" and "received [NBME's final word that because this is not a defined ADA disability, [the NBME is] unable to provide any assistance." (Emphasis added.) The evidence is consistent with the fact that the University or Disability Services can communicate with NBME for general information but cannot discuss student specific requests, as the evidence in Exhibit G simply recognizes that Dr. Toohey discussed with the NBME "additional time due to a language issue" and received NBME's final word that a language issue is not a defined ADA disability, not that Dr. Toohey discussed Plaintiff's language issues |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| 46.    On January 19, 2019, Dr. Toohey advised Plaintiff that she should consider going back to her country since she felt it would be impossible for Plaintiff to get into a US medical residency program.<br><br>(Muthoka decl. at ¶25). | 46.   Disputed for lack of supporting evidence. Hearsay. This statement also highlights the statute of limitation issue, as this statement was purportedly made over four years before Plaintiff filed suit, and in the years that followed, key witnesses, in this case Dr. Toohey, passed away. |
| 47.    The earliest Plaintiff could be put on inquiry notice that disability discrimination might be at issue was the email from Dr. Toohey on June 21, 2018 stating that Plaintiff erroneously had a "language issue."<br><br>(Muthoka Decl. at ¶16). | 47.   Disputed for lack of supporting evidence. Plaintiff's own facts in this statement say that Dr. Toohey purportedly interfered with Plaintiff receiving accommodations during the 2016/2017 school year (Fact 38). While Defendant disputes that, Fact 38 of Plaintiff disputed Plaintiff's Fact 47. |
| 48.    At the time, Plaintiff did not know, as she subsequently discovered in October of 2019, that Dr. Toohey was lying about contacting NBME.<br><br>(Muthoka Decl. at ¶27). | 48.   Disputed. First, this is based on hearsay statements purportedly attributed to Dr. Toohey, who is not here to say what she did or did not say to the NBME. Second, this is immaterial as the undisputed facts demonstrate it is the student's responsibility to obtain NBME accommodation. *Henderson Declaration* (Dkt. 54, ¶¶ 6, 10.) |
| 49.    However, she did take note of the ongoing reference to a "language issue" phrasing but at the time thought it was perhaps a mistake by Dr. Toohey.<br><br>(Muthoka Decl. at ¶7). | 49.   Undisputed. |
| 50.    On May 26, 2020, Plaintiff submitted a complaint to the UCI Office of Equal Opportunity and Diversity | 50.   Disputed as to the statement that Plaintiff was subject to race/national |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| (OEOD) regarding the race/national origin and disability discrimination that she had been subjected to as of that time.<br><br>(Muthoka Decl. at ¶28, Ex. M). | origin and disability discrimination, but otherwise undisputed. |
| 51. On January 27, 2021, OEOD issued its final report on my complaint. A true and correct copy of the report.<br><br>(Muthoka Decl. at ¶29, Ex. N). | 51. Undisputed. |
| 52. On January 30, 2021, Plaintiff requested to appeal the findings.<br><br>(Muthoka Decl. at ¶30, Ex. O). | 52. Undisputed. |
| 53. On February 3, 2021, Plaintiff received a response that no appeal was available.<br><br>(Muthoka Decl. at ¶31, Ex. P). | 53. Undisputed. |
| 54. On July 21, 2021, Plaintiff filed a complaint with the United States Department of Education, Office of Civil Rights.<br><br>(Muthoka Decl. at ¶32, Ex. Q); Request for Judicial Notice at ¶1. | 54. Disputed. This complaint was not provided to UCI SOM, and thus UCI SOM had no knowledge of this complaint, or its contents. *See, e.g.,* Ex. R to Plaintiff's declaration, copying several entities, but not the Regents; Ex. Q, not copying the Regents. |
| 55. The complaint was dismissed on September 14, 2021 as purportedly untimely.<br><br>(Muthoka Decl. at ¶¶33-34). | 55. Disputed. This complaint was not provided to UCI SOM, and thus UCI SOM had no knowledge of this complaint, or its contents. *See, e.g.,* Ex. R to Plaintiff's declaration, copying several entities, but not the Regents; Ex. Q, not copying the Regents. |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| 56. On October 26, 2021, Plaintiff's attorney filed an appeal of the dismissal with OCR.<br><br>(Muthoka Decl. at ¶¶34, Ex. R; Request for Judicial Notice at ¶2). | 56. Disputed. This complaint and the appeal were not provided to UCI SOM, and thus UCI SOM had no knowledge of this complaint, the appeal, or its contents. *See, e.g.,* Ex. R to Plaintiff's declaration, copying several entities, but not the Regents; Ex. Q, not copying the Regents. |
| 57. No decision has been received from OCR on the appeal to date.<br><br>(Muthoka Decl. at ¶35). | 57. Disputed. This complaint and the appeal were not provided to UCI SOM, and thus UCI SOM had no knowledge of this complaint, the appeal, or its contents, nor any knowledge of the outcome. *See, e.g.,* Ex. R to Plaintiff's declaration, copying several entities, but not the Regents; Ex. Q, not copying the Regents. |
| 58. Plaintiff had no knowledge that Dr. Toohey was on in a condition that she might pass away. UCI never provided notice to Plaintiff that Dr. Toohey had passed away. Plaintiff was no longer a student at UCI at the time Dr. Toohey passed away.<br><br>(Muthoka Decl. at ¶36). | 58. Disputed insomuch as it implies UCI SOM owed Plaintiff an obligation to provide her notice of Dr. Toohey's health conditions. Otherwise, undisputed. |
| 59. Dr. Toohey repeatedly emailed Plaintiff to meet with her, requiring multiple meetings that significantly detracted her from surgery rotation studies for the shelf examination and prep for retaking Step 1 of the USMLE.<br><br>(Muthoka Decl. at ¶17). | 59. Plaintiff's argumentative characterizations concerning Dr. Toohey's emails constitute inadmissible hearsay. |

52
**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| 60.    Plaintiff was inundated with work for the surgery rotation and Dr. Toohey continued to insist that she had language issues – even requiring that she pay $5,225 for an unwarranted program even though Plaintiff kept pushing back on that issue.<br><br>(Muthoka Decl. at ¶17). | 60.  Plaintiff's argumentative characterizations concerning Dr. Toohey's statements constitute inadmissible hearsay. |
| 61.    The National Board of Medical Examiners has no record of contact by any of Defendant's employees regarding Plaintiff.<br><br>(Convery Declaration). | 61.  Disputed as incomplete because the Convery Declaration states that NBME's "general policy and general practice has been to make a record of any telephonic communications that NBME *has with or regarding a USMLE candidate*, and to maintain a reliable record of such telephonic communications." Convery Decl. ¶ 4 (emphasis added). The fact that NBME has no record of contact regarding Plaintiff is not material because the "University or Disability Services can communicate with NBME for *general information but cannot discuss student specific requests*" and the "NBME communicate with the *student* directly."  Henderson Decl. ¶ 6 (emphasis added). Accordingly, Defendant's employees who communicated with NBME were not permitted to discuss student-specific requests and therefore there would be no record of communications between Defendant and NBME regarding Plaintiff. |
| 62.    In large part as a result of Dr. Toohey's email stating the decision | 62.  Undisputed that Plaintiff's second failure of the USMLE Step 1 had |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| from NBME was final, Plaintiff did not further press the accommodations issue at that time and took the USMLE Step 1 in October 2018 without accommodations and failed for a second time. This failure had cascading results for Plaintiff, nearly led her to be dismissed from the program, caused her to lose my housing and had other significant impacts. It also caused Plaintiff's academic record to be less competitive than her peers and denied her opportunities to more lucrative areas of medical practice like anesthesiology. (Muthoka Decl. at ¶¶17-18). | negative consequences for Plaintiff. Disputed as to the statement that Dr. Toohey caused Plaintiff's failures, as (1) it is based on hearsay statements purportedly attributed to Dr. Toohey, and (2) the undisputed evidence demonstrates it was Plaintiff's obligation, nor Dr. Toohey or UCI SOM's, to obtain NBME accommodation. *See,* Henderson Declaration (Dkt. 54, ¶¶ 6, 10.) |
| 63.    Plaintiff suffered economic damages as a result of the delays in her schooling, the Step 1 test failures and the lowered score on the Step 2CK. Plaintiff sent out multiple applications for residencies that received no response. Some of those were for anesthesia residencies that pay a higher salary than the position Plaintiff accepted. Plaintiff has lost earning ability as a result. Plaintiff also had to pay money out of pocket as a result of the discriminatory treatment, including $5225 for a language program that Plaintiff did not require. She also had to pay rent to live to attend the program. (Muthoka Decl. at ¶38). | 63.  Disputed. Additionally, UCI SOM's Policy for Step 1 and Step 2 of the USMLE expressly provides that a student who fails Step 2 must "meet with the Associate Dean for Students, in order to devise an appropriate remediation plan. To the extent that this additional review time makes it impossible to complete other curricular requirements, *the student's eligibility for graduation with his/her class may be affected.*" Muthoka Decl., Ex. H (at PL-00271) (emphasis added). |
| 64.    On April 9, 2023, while Plaintiff was taking the first day of the two-day Step 2CK, she received an intimidating email from Dr. Wiechmann. | 65.  Plaintiff's characterization of the email from Dr. Weichmann being "intimidating" is argumentative and improper.  Dr. Weichmann's email |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| (Muthoka Decl. at ¶37, Ex S). | speaks for itself and is its own best evidence. |
| 65.   This email caused Plaintiff additional stress and anxiety and she received a lower score on the test than she had been receiving in her practice examinations for the Step 2CK. This lower score impacted which residency programs she was competitive at and thus affected me economically.  (Muthoka Decl. at ¶37). | 65.  Disputed as to the cause of Plaintiff's lower score, but immaterial. |
| 66.   The email was close in proximity to Plaintiff's advocacy that she was entitled to extended time to take the Step 2 CK exam because delays were caused in part by the actions of UCI.  (Muthoka Decl. at ¶¶40, 41). | 66.  Disputed for lack of evidentiary support that delays were caused in part by the actions of UCI. |
| 67.   Defendant refused to recalculate my time to take the Step 2CK and I was forced to take it early with no dedicated study time after my classes ended as other students had the opportunity to do. As a result, I was put in unequal circumstances and failed the Step 2 CK.  (Muthoka Decl. at ¶42). | 67.  Disputed as to Plaintiff's argumentative characterizations that Defendant refused to recalculate Plaintiff's time to take the Step 2CK.  Additionally, UCI SOM's Policy for Step 1 and Step 2 of the USMLE expressly provides that a student who fails Step 2 must "meet with the Associate Dean for Students, in order to devise an appropriate remediation plan. To the extent that this additional review time makes it impossible to complete other curricular requirements, *the student's eligibility for graduation with his/her class may be affected*." Muthoka Decl., Ex. H (at PL-00271) (emphasis added). |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| 68.    Plaintiff then had to continue to advocate for her accommodations to be met as late as January 2023.<br><br>(Muthoka Decl. at ¶43, Ex. W). | 68.  Disputed for lack of evidentiary support to the extent Plaintiff claims that students do not need to advocate for their own accommodations. For one, these are medical students who should not expect others to complete forms for them, but more importantly, the evidence demonstrates it is the student's obligation to obtain NBME accommodations (Henderson Dec. (Dkt 54), at ¶¶ 6, 10), and that the students should seek out help from wellness officers should they need help. |
| 69.    One March 29, 2023, mere days before Dr. Wiechmann sent Plaintiff the April 3, 2023 email, Dr. Osborn emails Dr. Wiechmann with an update on Plaintiff and states "Jackline Muthoka – Has Step 2 scheduled for 4/3/23 – not sure if she will walk this year?"<br><br>(Jambeck Decl. at ¶4). | 69.  Undisputed, as the email speaks for itself. |
| 70.    According to the school policy, "any student who fails Step 1 examination a second time will be immediately removed from the third-year curriculum and placed on a specially tailored board preparation plan as determined by the Office of Student Affairs."<br><br>(Muthoka Decl. at ¶19). | 70.  Undisputed, as the school policy speaks for itself. |
| 71.    In late 2018, Plaintiff learned for the first time that she should have received and submitted a psychological examination to NBME in order to have | 71.  Disputed for lack of evidentiary support.  Plaintiff did not object to or dispute Henderson Decl. ¶ 7 ("When I met with Plaintiff in late 2017, we |

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| a good chance of obtaining an accommodation. No one at UCI had advised her of that previously even though she was told my application should go through UCI.<br><br>(Muthoka Decl. at ¶20). | discussed Plaintiff's preparation for initial submission to the NBME requesting accommodations. I reviewed Plaintiff's file and told Plaintiff that what she had would not be enough for accommodations from the NBME because while the school can accept informal requests for accommodation, the NBME requires formal documentation, such as a neuropsychology or psycho-education evaluation. I explained this to Plaintiff and told her she would need more documentation of the need for her accommodations. . . ."). |
| 72.    In December 2018 after receiving Dr. Selva-Rodriguez's email, Plaintiff emailed Ms. Henderson saying: "I was wondering what the process is to get examined regarding my exam issues. Do you know how long the process takes? How much does it cost? When can I get it done...?" Ms. Henderson replied to the Plaintiff's email saying, "...I believe you are referring to a comprehensive psychoeducational evaluation, but I want to be clear" on another email later that day, Ms. Henderson emailed Plaintiff saying, "... You inquired about a comprehensive psychoeducational evaluation. I have included Dr. Toohey on this email per your request. As mentioned to you over the phone, DSC does not conduct assessments. There are two local offices that many students go to, and we have had solid reports from."<br><br>(Muthoka Decl. at ¶22). | 72.   Undisputed, as the email in Muthoka Decl., Ex. J speaks for itself. |

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| Plaintiff's Additional Disputed Facts | Defendant's Response |
|---|---|
| 73.    This email indicates that Ms. Henderson knew the Plaintiff needed a psychoeducational evaluation, knew where she could send her for assessment, and had never brought this up for more than a year. According to the School of Medicine policy that applies to students with disabilities and seeking accommodations, it states "...DSC offers initial disability screenings to students who suspect their difficulty in the academic setting may be related to a disabling diagnosis..."<br><br>(Muthoka Decl. at ¶23). | 73.  Disputed for lack of evidentiary support as to Ms. Henderson's knowledge, but immaterial. The fact that DSC offers "initial disability screenings" does not mean DSC conducts comprehensive psychoeducational evaluations.  The email in Muthoka Decl., Ex. J speaks for itself. |
| 74.    On April 25, 2019, Dr. Toohey sent an email referencing my language issues to UCI housing.<br><br>(Muthoka Decl. at ¶61). | 74.  Undisputed, as the email speaks for itself. |
| 75.    UCI's policy on supporting students traveling to foreign countries does not did not allow for the 2019 trip by the non-black students to Kenya because Kenya remaining on a travel warning list.<br><br>(Jambeck Decl. at ¶5). | 75.  Undisputed that UCI's policy provides that UCI SOM "is unable to grant academic credit, educational resource support, Medical Education sponsorship, or institutional endorsement for any course, rotation, or extramural activity that takes place in a country listed on the United States Department of State Travel Warnings List." |

Dated: May 8, 2025              NYE, STIRLING, HALE & MILLER, LLP


                                By:  _/s/ Alison M. Bernal_

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jonathan D. Miller, Esq.
Alison M. Bernal, Esq.
Attorneys for Defendants, THE
REGENTS OF THE UNIVERSITY OF
CALIFORNIA

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**DEFENDANT'S RESPONSE TO STATEMENT OF DISPUTED FACTS**